Exhibit A          Notice of Violation and Intend to File Suit
                   Under the Clean Water Act (CWA) on September 8, 2006.

Exhibit B          Notice of Violation and Intend to File Suit Under the Resource
                   Conservation and Recovery Act (RCRA) on September 8, 2006.

Exhibit C          Photographs of Defendants Site on January 29, 2006.

Exhibit D          California Regional Water Quality Control Board North Coast
                   Region Clean Up and Abatement Order on March 29, 2006.
                   No. R1-2006-0036.

Exhibit E          Pinoleville Band of Pomo Indians Letter of Notice to Rick
                   Mayfield from Nathan A. Rich on January 22, 2002.

# **BIGGS LAW P.C.**

A CALIFORNIA PROFESSIONAL CORPORATION

Michael S. Biggs
Attorney At Law
Post Office Box 454
Petaluma, CA 94953-0454

(707) 763-8000 Office
(415) 883-0110 S.F. Bay Area
(866) 991-4529 Toll Free
(707) 765-8010 Facsimile

September 8, 2006

## *VIA CERTIFIED MAIL*
## *RETURN RECEIPT REQUESTED*

Wayne Hunt
Isabel B. Lewright
Owners and/or Operators
Ukiah Auto Dismantlers
500-D Pinoleville Road
Ukiah, CA 95482

Richard J. Mayfield, President
Warrior Industries, Inc.
500-E Pinoleville Road
Ukiah, CA 95482

Kenneth Hunt, President
U.S. Alchemy Corporation
277 North Lenore Avenue
Willits, CA 95490

Ross Junior Mayfield
Paula Mayfield
500-C Pinoleville Road
Ukiah, CA 95482

### **Re:    Notice of Violations and Intent to File Suit Under the Clean Water Act**

Dear Sirs, Madam and Business Entities:

On behalf of the Pinoleville Pomo Nation Environmental Association and Leona Williams ("PPNEA") and Northern California River Watch ("River Watch"), I am providing statutory notification to each and all of you (collectively referred to hereinafter as "DISCHARGERS") as to

the ongoing unlawful discharge of pollutants from the auto dismantling, retail part sales and other industrial operations of Ukiah Auto Dismantlers, Warrior Industries, Inc. and U.S. Alchemy Corporation into waters of the United States, in violation of the Clean Water Act.

This letter addresses DISCHARGERS' failure to comply with the terms and conditions of California's General Industrial Storm Water Permit for Industrial Storm Water Discharges (WDID 228S003380), their un-permitted discharges of contaminated stormwater from these facilities, their discharges of non-stormwater pollutants from these facilities in violation of effluent limitations, and their violations of the procedural requirements of National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 97-03-DWQ and Water Quality Order No. 91-13-DWQ (as amended by Water Quality Order 92-12-DWQ) issued pursuant to Clean Water Act § 402(p), 33 U.S.C. § 1342(p) (hereafter, "General Permit").

PPNEA and River Watch also place DISCHARGERS on notice that following the expiration of sixty (60) days from the date of this **NOTICE**, PPNEA and River Watch intend to bring suit against DISCHARGERS in the United States District Court for DISCHARGERS' continuing violations of "an effluent standard or limitation," permit condition or requirement and/or "an order issued by the Administrator or a State with respect to such standard or limitation" under Clean Water Act § 505(a)(1), 33 U.S.C. § 1365(a)(1), the Code of Federal Regulations, and the Basin Plan, as exemplified by their illegally discharging into waters of the United States without an NPDES permit for point source as opposed to non-point source discharges [See CWA § § 402(a) & (b)].

Clean Water Act § 505(b) requires that sixty (60) days prior to the initiation of a civil action under Clean Water Act § 505(a), a citizen must give notice of his/her intent to sue. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, the State in which the violations occur, and the registered agent of the alleged violator. PPNEA and River Watch believe this **NOTICE** provides proper notice of violations to DISCHARGERS as required by the Clean Water Act.

## THE FACILITIES

Ukiah Auto Dismantlers is an auto dismantling facility including retail parts sales and car crushing, located at 520 Pinoleville Road, approximately one mile west of Ukiah. The facility is operated by Wayne Hunt. The real property on which the facility is located, Assessor's Parcel Number 169-190-48, is owned by Wayne Hunt and Isabel B. Lewright. Warrior Industries, Inc. operates on the adjacent parcel immediately to the east of the dismantling facility, Assessor's Parcel Number 169-190-47. This real property is owned by Richard Mayfield, Warrior Industries, Inc., Ross Junior Mayfield and Paula Mayfield. U.S. Alchemy Corporation is auto repair and/or towing facility owned and/or operated by Wayne Hunt at 277 North Lenore Avenue in Ukiah. These three operations are referred to collectively hereafter as "the Facilities".

On March 30, 2006 the Regional Water Quality Control Board - Region 1 issued Cleanup and Abatement Order No. R1-2006-0036, which is attached to this **NOTICE** and fully incorporated herein.

In addition to the information contained in Cleanup and Abatement Order No. R1-2006-0036, information currently available to PPNEA and River Watch, including photographs taken during site visits and eye witness accounts, indicates that pollutants such as oil, grease, anti-freeze, brake fluid, gasoline, transmission fluid, and other toxic substances are discharged from the Facilities into the watershed during rain events. Auto parts can be seen strewn throughout the Facilities leaking chemicals and fluids onto the ground. Only a small portion of the Facilities are paved, and elsewhere toxic fluids simply leak onto the soil. The borders of the Facilities are not adequately bermed, and there is no effective control of storm water runoff. Substantial portions of the Facilities are surrounded only with a fence. DISCHARGERS have no treatment system for any of the storm water flowing over and across the autos, auto parts, or spills at the Facilities. Auto parts, including transmissions, blocks, and batteries, and entire body shells, lay in the dirt where storm water washes the pollutants directly into water of the United States. The soil is discolored from oil, and other unidentifiable contaminants.

## VIOLATIONS

### Failure to Adequately Develop or Implement a Storm Water Pollution and Prevention Plan and Monitoring and Reporting Program

The Clean Water Act prohibits stormwater discharges associated with industrial activity without a NPDES permit (Clean Water Act § 402(p); 40 C.F.R. § 122.26). The General Permit prohibits the discharge of material other than stormwater to waters of the nation, unless such discharges are regulated under a NPDES permit; and, prohibits the discharge of stormwater which causes or threatens to cause pollution, contamination, or nuisance. The General Permit prohibits the discharge of stormwater to surface or ground water which adversely impacts human health or the environment.

The General Permit requires stormwater dischargers to comply with its terms, including the filing of a Notice of Intent ("NOI") to be covered under the General Permit; the development and implementation of a Storm Water Pollution and Prevention Plan ("SWPPP"); and, the development and implementation of a Monitoring and Reporting Program.

The Facilities and DISCHARGERS are subject to stormwater effluent limitations, new source performance standards, and toxic pollutant effluent standards (40 CFR Subchapter N) as well as effluent limitation guidelines specified by 40 CFR Parts 411, 436, 440 and 443. DISCHARGERS are required to develop Best Management Practices ("BMP") using Best Available Technology ("BAT") and best conventional technology ("BCT") to control and/or eliminate pollution.

PPNEA and River Watch contend that DISCHARGERS have failed to adequately develop or implement a SWPPP and Monitoring Program and Reporting Program for the Facilities and have failed to file annual reports for the Facilities as required by law.

DISCHARGERS have failed to perform visual observations of stormwater discharges and authorized stormwater discharges; have failed to collect and analyze samples of stormwater discharges for pH, total suspended solids ("TSS"), total organic carbon ("TOC"), specific

conductance, toxic chemicals, and other pollutants which are likely to be present in stormwater discharges in significant quantities, and those parameters listed in Table D of the General Permit as well as those constituents listed in the CFR sections referenced above; and, have failed to report the results of required sampling in an Annual Report.

Each and every day from September 8, 2001 through September 8, 2006, DISCHARGERS been in violation of the Clean Water Act for their failure to: 1) adequately develop and implement a SWPPP; 2) adequately develop and implement a Monitoring and Reporting Program as required by the General Permit and/or Clean Water Act § 402(p); 3) make and record the required observations concerning stormwater discharges as required; and, 4) file an annual report describing their observations and monitoring. All these violations are continuing.

PPNEA and River Watch contend that DISCHARGERS have not implemented BMP by not using BAT or BCT to control or eliminate their storm water discharges from the Facilities. DISCHARGERS are violating the General Permit by:

(1)     allowing materials other than storm water (non-storm water discharges) to discharge either directly or indirectly to waters of the United States;

(2)     causing or threatening to cause pollution, contamination, or nuisance, exceeding the specified effluent limitations identified above;

(3)     discharging storm water containing a hazardous substance equal to or in excess of a reportable quantity listed in 40 CFR Part 117 and/or 40 CFR Part 302;

(4)     failing to reduce or prevent pollutants associated with industrial activity in storm water discharges and authorized non-storm water discharges through implementation of BAT for toxic and non-conventional pollutants and BCT for conventional pollutants;

(5)     failing to develop and implement a SWPPP which complies with the requirements in Section A of the General Permit and includes BMPs that achieve BAT/BCT constituting compliance with this requirement;

(6)     discharging storm water and non-storm water to surface or ground water which adversely impacts human health or the environment;

(7)     causing or contributing to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Water Board's Basin Plan as discussed above;

(8)     failing to submit a report to the Regional Water Quality Control Board describing the BMPs currently being implemented and additional BMPs which will be implemented to prevent or reduce any pollutants causing or contributing to the exceedance of water quality standards;

(9)     failing to update their SWPPP and Monitoring and Reporting Program to reflect changes in BMPs, BATs and BCTs; and,

(10)    failing to make required visual observations and maintain records of visual observations.

### SWPPP

The General Permit requires dischargers in operation prior to October 1, 1992, to have developed and implemented a SWPPP no later than that date. If DISCHARGERS began industrial activities after October 1, 1992, they must develop and implement a SWPPP at the start of operations.

The SWPPP must be designed to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges and authorized non-storm water discharges from the Facilities; and, to identify and implement specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water discharges and authorized non-storm water discharges. The General Permit details the specific requirements for preparing and implementing a SWPPP.

Information available to PPNEA and River Watch indicates that DISCHARGERS have not fully developed and/or adequately implemented a SWPPP for industrial operations at the Facilities. In addition, DISCHARGERS have failed to eliminate non-storm water discharges from the Facilities. DISCHARGERS have been and will continue to be in violation every day they discharge unauthorized non-storm water and every day they discharge storm water containing pollutants without adequately implementing a SWPPP for the Facilities.

DISCHARGERS have inadequately identified and inadequately assessed all potential sources of pollutants and have failed to describe the appropriate BMPs necessary to reduce or prevent these potential pollutants in their SWPPP. One of the major elements of the SWPPP is the elimination of unauthorized non-storm water discharges to the Facilities' storm drain system. Unauthorized non-storm water discharges at the Facilities are generated from a wide variety of pollutant sources including waters from the rinsing or washing of vehicles, equipment, buildings, or pavement; materials that have been improperly disposed of or dumped, and spilled; or, leaked materials. Unauthorized non-storm water discharges can contribute a significant pollutant load to receiving waters.

Measures to control spills, leakage, and dumping must be addressed through BMPs. DISCHARGERS' BMP's fail to adequately address the specific sources of pollution found at the Facilities. DISCHARGERS' SWPPPs do not evaluate all potential pollution conveyances to determine whether they convey unauthorized non-storm water discharges to the storm drain system. As a result DISCHARGERS have been in continuous violation of the monitoring and reporting requirements every day from at least September 8, 2001 through September 8, 2006. Furthermore, DISCHARGERS will continue to be in violation of the SWPPP requirements every day they discharge non-storm water and storm water containing pollutants without developing and implementing an adequate SWPPP for the Facilities.

Page 5 of 8

## Monitoring and Reporting Program

The General Permit requires dischargers in operation prior to October 1, 1992, to have developed and implemented a Monitoring Program no later than that date. DISCHARGERS began industrial activities after October 1, 1992, and must develop and implement a Monitoring Program at the start of operations.

The Monitoring Program must be designed to ensure that storm water discharges are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the General Permit; and, must include visual observations and comprehensive sampling and analysis, and reporting.

Information available to PPNEA and River Watch indicates DISCHARGERS have not adequately developed and/or implemented a Monitoring Program for the Facilities. DISCHARGERS have failed to:

(1) perform visual observations of storm water discharges and authorized storm water discharges;

(2) collect and analyze samples of storm water discharges for pH, TSS, TOC, specific conductance, toxic chemicals, and other pollutants which are likely to be present in storm water discharges in significant quantities, and those parameters listed in Table D of the General Permit as well as those constituents listed in the CFR sections referenced above; and ,

(3) report the results of required sampling in its Annual Report.

As a result, DISCHARGERS have been in continuous violation of the monitoring and reporting requirements every day since September 8, 2001 through September 8, 2006. Furthermore, DISCHARGERS will continue to be in violation of the monitoring and reporting requirements every day they discharge non-storm water and storm water containing pollutants without developing and implementing an adequate Monitoring Program and Reporting Program for the Facilities.

## Discharging Without a NPDES Point Source Permit

This **NOTICE** also addresses DISCHARGERS' failure to obtain a point source NPDES permit for their discharges of pollutants from a point source to waters of the United States. 33 U.S.C § 1362(6) defines the term "pollutant" to mean "dredged spoil, solid waste . . . chemical wastes, biological materials . . . rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." The equipment used by DISCHARGERS to distribute materials, build and tear down temporary river crossings are point sources under the Clean Water Act.

The Facilities are point sources from which pollutants, as defined above, are discharged off into waters of the United States in violation of Clean Water Act § 402 point source discharge permit

requirements. DISCHARGERS have illegally disposed of chemicals such as oils, solvents, gasoline, anti-freeze, detergents and like pollutants known to be associated with dismantling operations into or near waters of the United States.

Clean Water Act § 301 and § 402 prohibit the discharge of any pollutant from a point source to waters of the United States without a NPDES permit. DISCHARGERS have no NPDES permit allowing them to discharge from a point source to these waters of the United States and are therefore in violation of the Clean Water Act for each day they so discharge.

DISCHARGERS have no Clean Water Act § 402 direct discharge permit for the Facilities or for their operations on the Facilities. Each and every day since September 8, 2001through September 8, 2006, on which DISCHARGERS have operated the Facilities and discharged pollutants from equipment, stock piles or the production operations into waters of the United States without a Clean Water Act § 402 direct discharge permit, is a violation of the Clean Water Act. These violations are continuing.

## CONTACT INFORMATION

PPNEA's address is 300 Pinoleville Drive, Ukiah, CA 95482.

PPNEA has retained legal counsel to represent them in this matter. All communications should be addressed to:

Michael S. Biggs, Esquire
Biggs Law P.C.
P.O. Box 454
Petaluma, CA 94953-0454
Tel. 707-763-8000
Fax 707-763-8010

River Watch's address is 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA 95472, telephone number 707-824-4371.

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Office of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. 707-528-8175
Fax 707-542-7139

PPNEA and River Watch believe this **NOTICE** sufficiently states grounds for filing suit. At the close of the 60-day notice period or shortly thereafter, PPNEA and River Watch intend to file

a citizen suit under Section 505(a) of the Clean Water Act against DISCHARGERS for violations at the Facilities as set forth in this **NOTICE.**

During the 60-day notice period, PPNEA and River Watch are willing to discuss effective remedies for these violations. However, if DISCHARGERS wish to pursue such discussions in the absence of litigation, it is suggested those discussions be initiated within the next twenty (20) days so that they may be completed before the end of the 60-day notice period.  PPNEA and River Watch do not intend to delay the filing of a lawsuit if discussions are continuing when that period ends.

Very truly yours,

Michael S. Biggs

cc:

Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Mail Code 3213A
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency Region 9
75 Hawthorne Street
San Francisco, CA 94105

Celeste Cantú, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

Wayne Hunt, Registered Agent
U.S. Alchemy Corporation
500-D Pinoleville Road
Ukiah, CA 95482

Brent W. Mayfield, Registered Agent
Warrior Industries, Inc.
500-E Pinoleville Road
Ukiah, CA 95482

**Receipt 1**

Registered No. RB457331907US

| | | Date Stamp |
|---|---|---|
| Reg. Fee | $7.90 | |
| Handling Charge | $0.00 | Return Receipt | $1.85 |
| Postage | $0.87 | Restricted Delivery | $0.00 |
| Received by | | |

Domestic insurance up to $25,000 is included in the fee. International Indemnity is limited. (See Reverse).

Customer Must Declare Full Value $ $0.00
☐ With Postal Insurance
☐ Without Postal Insurance

**OFFICIAL USE**

FROM
Biggs \ Silver
P O Box 494
Petaluma, CA 94953

TO
Ross Junior Mayfield
Ukiah CA 95__ Mayfield
500-C Pinoleville Rd
Ukiah CA 95482

PS Form 3806, Receipt for Registered Mail   Copy 1 - Customer
May 2004 (7530-02-000-9051)   (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com ®

**Receipt 2**

Registered No. RB457331884US

| | | Date Stamp |
|---|---|---|
| Reg. Fee | $7.90 | |
| Handling Charge | $0.00 | Return Receipt | $1.85 |
| Postage | $0.87 | Restricted Delivery | $0.00 |
| Received by | | |

Domestic insurance up to $25,000 is included in the fee. International Indemnity is limited. (See Reverse).

Customer Must Declare Full Value $ $0.00
☐ With Postal Insurance
☐ Without Postal Insurance

**OFFICIAL USE**

FROM
Biggs Law PC
Jack Silver
P.O. Box 494
Petaluma CA 94953

TO
Kenneth Hunt, President
US Alchamy Corp
277 No. Lenore Ave
Willits CA 95490

PS Form 3806, Receipt for Registered Mail   Copy 1 - Customer
May 2004 (7530-02-000-9051)   (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com ®

**Receipt 3**

Registered No. RB457331915US

| | | Date Stamp |
|---|---|---|
| Reg. Fee | | |
| Handling Charge | | Return Receipt | |
| Postage | | Restricted Delivery | |
| Received by RB457331915US | | |

$9.00 $0.82 $0.00

Domestic insurance up to $25,000 is included in the fee. International Indemnity is limited. (See Reverse).

Customer Must Declare Full Value $
☐ With Postal Insurance
☒ Without Postal Insurance

**OFFICIAL USE**

FROM
Biggs \ Silver
P.O. Box 494
Petaluma, CA 94953

TO
Wayne Hunt / Isabel Laughn
Ukiah Arts Dismantlers
500-D Pinoleville Drive
Ukiah CA 95482

PS Form 3806, Receipt for Registered Mail   Copy 1 - Customer
May 2004 (7530-02-000-9051)   (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com ®

**Receipt 4**

Registered No. RB457331898US

| | | Date Stamp |
|---|---|---|
| Reg. Fee | $7.90 | |
| Handling Charge | $0.00 | Return Receipt | $1.85 |
| Postage | $0.87 | Restricted Delivery | $0.00 |
| Received by | | |

Domestic insurance up to $25,000 is included in the fee. International Indemnity is limited. (See Reverse).

Customer Must Declare Full Value $ $0.00
☐ With Postal Insurance
☐ Without Postal Insurance

**OFFICIAL USE**

FROM
Biggs Law PC
Jack Silver
P O Box 494
Petaluma CA 94953

TO
Richard J Mayfield Pres
Ukiah Arts? Industries Inc
500-E Pinoleville Rd
Ukiah CA 95482

PS Form 3806, Receipt for Registered Mail   Copy 1 - Customer
May 2004 (7530-02-000-9051)   (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com ®

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

UKIAH CA 95482
OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $1.11 |
| Certified Fee | | $2.40 |
| Return Reciept Fee (Endorsement Required) | | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $5.36 |

Postmark Here
SEP 17 2006
USPS
09/08/2006

7004 1350 0001 3790 5722

Sent To: Mayfield Ross J + Paula
Street, Apt. No.; or PO Box No. 500-C Pinleville Road
City, State, ZIP+4 Ukiah CA 95482

PS Form 3800, June 2002          See Reverse for Instructions





**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

WILLITS CA 95490
OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $1.11 |
| Certified Fee | | $2.40 |
| Return Reciept Fee (Endorsement Required) | | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $5.36 |

Postmark Here
09/08/2006

7004 1350 0001 3790 5746

Sent To: U.S. Alchemy Corp
Street, Apt. No.; or PO Box No. 277 No Lenore Ave
City, State, ZIP+4 Willits CA 95490

PS Form 3800, June 2002          See Reverse for Instructions

# BIGGS LAW P.C.

A CALIFORNIA PROFESSIONAL CORPORATION

Michael S. Biggs
Attorney At Law
Post Office Box 454
Petaluma, CA 94953-0454

(707) 763-8000 Office
(415) 883-0110 S.F. Bay Area
(866) 991-4529 Toll Free
(707) 765-8010 Facsimile

September 8, 2006

## *VIA REGISTERED MAIL*
## *RETURN RECEIPT REQUESTED*

Wayne Hunt
Isabel B. Lewright
Owners and/or Operators
Ukiah Auto Dismantlers
500-D Pinoleville Road
Ukiah, CA 95482

Richard J. Mayfield, President
Warrior Industries, Inc.
500-E Pinoleville Road
Ukiah, CA 95482

Kenneth Hunt, President
U.S. Alchemy Corporation
277 North Lenore Avenue
Willits, CA 95490

Ross Junior Mayfield
Paula Mayfield
500-C Pinoleville Road
Ukiah, CA 95482

## Re:   Notice of Violations and Intent to File Suit under the Resource Conservation and Recovery Act

Dear Sirs, Madam and Business Entities

On behalf of the Pinoleville Pomo Nation Environmental Association and Leona Williams ("PPNEA") and Northern California River Watch ("River Watch"), I am providing statutory

Page 1 of 6

notification to each and all of you (collectively referred to hereinafter as "DISCHARGERS") of continuing and ongoing violations of the Federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq., in conjunction with the continuing auto dismantling and other industrial operations located on Ukiah Auto Dismantlers, and U.S. Alchemy Corporation which facilities are operated and/or owned by any one of the DISCHARGERS.

PPNEA and River Watch hereby notify DISCHARGERS that at the expiration of the appropriate notice periods under RCRA, PPNEA and River Watch intend to commence a civil action in the United States District Court against DISCHARGERS on the following grounds:

1.  DISCHARGERS' use and storage of hazardous waste and other pollutants at the facilities identified in this **NOTICE** has and continues to violate permits, standards, regulations, conditions, requirements and/or prohibitions effective pursuant to RCRA regarding storage of waste and pollutants. [42 U.S.C. § 6972(a)(1)(A)];

2.  DISCHARGERS' operations at the facilities identified in this **NOTICE** have caused contamination of soil and groundwater which present an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

On March 30, 2006 the Regional Water Quality Control Board - Region 1 issued Cleanup and Abatement Order No. R1-2006-0036 which is attached to this **NOTICE** and fully incorporated herein.

## THE FACILITIES

Ukiah Auto Dismantlers is an auto dismantling facility including retail parts sales and car crushing, located at 520 Pinoleville Road, approximately one mile west of Ukiah. The facility is operated by Wayne Hunt. The real property on which the facility is located, Assessor's Parcel Number 169-190-48, is owned by Wayne Hunt and Isabel B. Lewright. Warrior Industries, Inc. operates on the adjacent parcel immediately to the east of the dismantling facility, Assessor's Parcel Number 169-190-47. This real property is owned by Richard Mayfield, Warrior Industries, Inc., Ross Junior Mayfield and Paula Mayfield. U.S. Alchemy Corporation is auto repair and/or towing facility owned and/or operated by Wayne Hunt at 277 North Lenore Avenue in Ukiah. These three operations are referred to collectively hereafter as "the Facilities".

In addition to the information contained in Cleanup and Abatement Order No. R1-2006-0036, information currently available to PPNEA and River Watch, including photographs taken during site visits and eye witness accounts, indicates that pollutants such as oil, grease, anti-freeze, brake fluid, gasoline, transmission fluid, and other toxic substances are discharged from the Facilities into or near the waters of the United States. The dismantling of vehicles also causes the discharge and disposition of heavy metals such as lead, mercury, chromium, zinc, nickel, copper and the like. Auto parts can be seen strewn throughout the Facilities, leaking chemicals and fluids onto the ground. During rains these chemicals are washed from the Facilities. Only a small portion of the Facilities are paved, and elsewhere toxic fluids leak onto the soil. The borders of the Facilities are not adequately bermed, and there is no effective control of storm water runoff. Substantial portions of the Facilities are surrounded with only a fence.

DISCHARGERS have no treatment system for any of the storm water flowing over and across the autos, auto parts, or spills at the Facilities. Auto parts, including transmissions, blocks, batteries, and entire body shells lay in the dirt where storm water washes the pollutants directly into waters of the United States. The soil is discolored from oil, and other unidentifiable contaminants.

## REGULATORY STANDARDS

Water Quality Objectives exist to ensure protection of the beneficial uses of water. Several beneficial uses of water exist, and the most stringent water quality objectives for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions need to be considered which evaluate the feasibility of, at a minimum: (1) cleanup to background levels, (2) cleanup to levels attainable through application of best practicable technology, and (3) cleanup to protective water quality criteria levels. Existing and potential beneficial uses of area groundwater include domestic, agricultural, industrial and municipal water supply.

The Regional Water Quality Control Board has adopted a Water Quality Control Plan ("Basin Plan") which designates all surface and groundwater within the North Coast regions as capable of supporting domestic water supply. It has adopted Maximum Contaminant Levels ("MCLs") and/or Water Quality Objectives ("WQOs") for constituents in surface and groundwater within the region of 50 ug/l for TPHg, 1 ug/l for benzene, 150 ug/l for toluene and 13 ug/l for MTBE. In addition to heavy metals and solvents, petroleum and petroleum constituents have been characterized as "hazardous waste" and "solid waste" within the meaning of RCRA provisions. Accordingly, all regulatory mandates applicable to hazardous or solid waste apply to the use, storage and disposal of petroleum and petroleum constituents and products.

## VIOLATIONS
### 1. Violations of Permits, Standards and Regulations
### [42 U.S.C. § 6972(a)(1)(A)]

Provisions of RCRA govern the use and disposal of hazardous waste. Between September 8, 2001 and September 8, 2006, DISCHARGERS have caused or permitted, cause or permit, or threaten to cause or permit, petroleum contaminants, petroleum constituents, solvents, heavy metals and other hazardous waste to be discharged or deposited where it is, or probably will be, discharged into waters of the State and now creates, or threatens to create, conditions of pollution or nuisance. The discharges and threatened discharges of such pollution are deleterious to the beneficial uses of water, and are creating and threaten to create various conditions of pollution and nuisance which will continue unless the discharges and threatened discharges are permanently abated.

Between September 8, 2001 and September 8, 2006, DISCHARGERS' use and storage of petroleum and petroleum contaminants at the Facilities have allowed significant quantities of hazardous pollutants to be released or discharged into soil and groundwater beneath the Facilities and beneath adjacent properties in violation of provisions of RCRA and of California regulatory programs including, but not limited to, release detection and prevention requirements, release reporting and investigation requirements, and release response and corrective action requirements.

## 2.   Imminent and Substantial Endangerment
### [42 U.S.C. § 6972(a)(1)(B)]

Between September 8, 2001 and September 8, 2006, DISCHARGERS used and stored, and continue to use and store, petroleum products at the Facilities in a manner which has allowed significant quantities of hazardous pollutants to be discharged to soil and groundwater beneath the Facilities and beneath adjacent properties.

The contaminant levels of TPHg, benzene, toluene, MTBE, heavy metals and solvents in groundwater at the Facilities are significantly greater than the allowable MCL and/or WQO for said constituents. Benzene, MTBE, TAME, TBA, lead, mercury, and chromium are known or suspected carcinogens. Toluene is a reproductive toxin. Ethylbenzene, methanol and xylene are live toxins. All are known to harm both plants and animals. In their concentrations at the Facilities, these pollutants are creating an imminent and substantial endangerment to public health and the environment.

Violations of RCRA of the type alleged herein are a major cause of the continuing decline in water quality and pose a continuing threat to existing and future drinking water supplies of Northern California. With every discharge, groundwater supplies are contaminated. These discharges can and must be controlled in order for the groundwater supply to be returned to a safe source of drinking water.

In addition to the violations set forth above, this **NOTICE** is intended to cover all violations of RCRA evidenced by information which becomes available after the date of this **NOTICE**.

The violations of DISCHARGERS as set forth in this **NOTICE** affect the health and enjoyment of PPNEA and River Watch who use the affected watershed areas, which include Ackerman Creek and the Russian River, for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, shellfish harvesting, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource are specifically impaired by these violations of RCRA. In some cases the economic interests of individual members of PPNEA and of River Watch have been impaired by the violations of DISCHARGERS as set forth in this **NOTICE.**

## CONTACT INFORMATION

PPNEA's address is 300 Pinoleville Drive, Ukiah, CA 95482.

PPNEA has retained legal counsel to represent them in this matter. All communications should be addressed to:

Michael S. Biggs, Esquire
Biggs Law P.C.
P.O. Box 454
Petaluma, CA 94953-0454
Tel. 707-763-8000
Fax 707-763-8010

River Watch's address is 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA 95472, telephone 707-824-4371.

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Office of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. 707-528-8175
Fax 707-542-7139

RCRA requires that sixty (60) days prior to the initiation of an action for violation of a permit, standard, regulation, condition, requirement, prohibition or order effective under RCRA, a private party must give notice of the violation to the alleged violator, the Administrator of the U.S. Environmental Protection Agency and the State in which the violation is alleged to have occurred (42 U.S.C. § 6972(b)(1)(A)). RCRA also requires that a private party provide ninety (90) days prior notice to the alleged violator, the Administrator of the Environmental Protection Agency and the State in which the violation is alleged to have occurred before initiating an action for an imminent and substantial endangerment to human health or the environment. (42 U.S.C. § 6972(b)(2)(A)).

PPNEA and River Watch believe this **NOTICE** sufficiently states the grounds for filing suit under the statutory and regulatory provisions of RCRA as to the Facilities. At the close of the notice periods or shortly thereafter, PPNEA and River Watch intend to file a suit against DISCHARGERS under the provisions of RCRA for each of the violations as alleged herein, and with respect to the existing conditions at the Facilities.

During the notice period, however, PPNEA and River Watch are willing to discuss effective remedies for the violations referenced in this **NOTICE.** However, if DISCHARGERS wish to pursue such discussions in the absence of litigation, it is suggested those discussions be initiated within the next twenty (20) days so that they may be completed before the end of the notice period. PPNEA and River Watch do not intend to delay the filing of a lawsuit if discussions have not commenced by the time the 90-day notice period ends.

Very truly yours,

Michael S. Biggs

cc:

Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Mail Code 3213A
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency, Region 9
75 Hawthorne St.
San Francisco, CA 94105

Celeste Cantü, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

Mark Leary, Executive Director
Calif. Integrated Waste Mgmt. Board
1001 "I" Street
Sacramento, CA 95814

Wayne Hunt, Registered Agent
U.S. Alchemy Corporation
500-D Pinoleville Road
Ukiah, CA 95482

Brent W. Mayfield, Registered Agent
Warrior Industries, Inc.
500-E Pinoleville Road
Ukiah, CA 95482

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kenneth Hunt, Pres
US Alchemy Corp.
277 No. Lenore Ave
Willits, CA
95490

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
9-4-06

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

2. Article Numbe
(Transfer fron

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kenneth Hunt, Pres
US Alchemy Corp.
277 No. Lenore Ave
Willits, CA
95490

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
9-4-06

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7DB 4573I 8840I

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ukiah Auto Dismantlers
500-D Pinoleville Dr.
Ukiah CA
95482

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
9/11/06

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☒ Registered      ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    KB 45 331 9/15 US

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Wayne Hunt
Isabel Lourigin
Ukiah Auto Dismantlers
500-D Pinoleville Dr.
Ukiah CA
95482

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
7/11/06

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered      ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7004 1350 0001 3790 5715

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Richard J Mayfield
Pres
Warrior Industries Inc
500-E Pinoleville Rd
Ukiah CA
95482

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
/06

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered      ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from serv

PS Form 3811, Fe

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

Loss Junior Mayfield
Paula Mayfield
500-C Pinoleville Rd
Ukiah CA
95482

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                □ Agent
                                 □ Addressee

B. Received by (Printed Name)    C. Date of Delivery
                                 9/11/06

D. Is delivery address different from item 1? □ Yes
If YES, enter delivery address below:        □ No

3. Service Type
□ Certified Mail      □ Express Mail
■ Registered          □ Return Receipt for Merchandise
□ Insured Mail        □ C.O.D.

4. Restricted Delivery? (Extra Fee)          □ Yes

2. Article Number
(Transfer from service label)
RB 457 331 907 US

PS Form 3811, February 2004    Domestic Return Receipt         102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

Richard Mayfield, Pres.
Warrior Industries Inc
500-E Pinoleville Rd
Ukiah, CA 95482

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                □ Agent
                                 □ Addressee

B. Received by (Printed Name)    C. Date of Delivery
                                 9/11/06

D. Is delivery address different from item 1? □ Yes
If YES, enter delivery address below:        □ No

3. Service Type
☒ Certified Mail      □ Express Mail
☒ Registered          □ Return Receipt for Merchandise
□ Insured Mail        □ C.O.D.

4. Restricted Delivery? (Extra Fee)          □ Yes

2. Article Number
(Transfer from service label)
RB 457 331 £48 US

PS Form 3811, February 2004    Domestic Return Receipt         102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

Ross Junior Mayfield
Paula Mayfield
500-C Pinoleville Rd
Ukiah CA
95482

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                □ Agent
                                 □ Addressee

B. Received by (Printed Name)    C. Date of Delivery
                                 9/11/06

D. Is delivery address different from item 1? □ Yes
If YES, enter delivery address below:        □ No

3. Service Type
☒ Certified Mail      □ Express Mail
□ Registered          □ Return Receipt for Merchandise
□ Insured Mail        □ C.O.D.

4. Restricted Delivery? (Extra Fee)          □ Yes

2. Article Number
(Transfer from service label)
7004 1350 0001 3790 5722

PS Form 3811, February 2004    Domestic Return Receipt         102595-02-M-1540

Exhibit C Pic. 1 of 20

Exh. C  Pic. 2 of 20

Exh. C  Pic. 3 of 20



Exh. C  Pic 4 of 20



Exh.C   Pic 5 of 20



Exh C Pic. 6 of 20

Exh. C Pic. 7 of 20

Exh C    Pic. 8 of 30



Exh C Pic 9 of 20

Exh.C. Pic 10 of 20



Exh. C Pic. 11 of 22



Exh.C. Pic 12 of 30

Exh.C  Pic. 13 of 20



Exhc Pic 14 of 20

Exh.C  Pic 15 of 20



Exh.C   Pic 16 of 20

Exh.Q, Pic 17 of 20

ExhC. Pic 18 of 20



Exh.C Pic 19 of 20

Exh. C  Pic. 2C of 20



# California Regional Water Quality Control Board
## North Coast Region
### William R. Massey, Chairman



**Alan C. Lloyd, Ph.D.**
*Agency Secretary*

www.waterboards.ca.gov/northcoast
5550 Skylane Boulevard, Suite A, Santa Rosa, California 95403
Phone: (877) 721-9203 (toll free) • Office: (707) 576-2220 • FAX: (707) 523-0135

**Arnold
Schwarzenegger**
*Governor*

March 29, 2006

Mr. Wayne Hunt
Ms. Isabel Lewright
Ukiah Auto Dismantlers
500 D Pinoleville Drive
Ukiah, CA 95482

Mr. Richard Mayfield
Mr. Ross Mayfield Junior
500-C Pinoleville Road
Ukiah, CA 95482

Subject:    Order to Cleanup and Abate Discharges

File:    Storm Water - Ukiah Auto Dismantler

On January 19 and February 6, 2006, staff from our office inspected the Ukiah Auto Dismantlers in response to the recent flood events and OES notification regarding offsite discharge of storm water containing oily waste.

Observations during the inspections noted that a majority of the Facility's activities are conducted on bare soil with no storm water treatment or Best Management Practices to contain and treat oil and petroleum products. A considerable amount of oil and grease was noted in areas of standing water. In fact, the February 6, 2006 inspection noted an increase in the amount of oil seen at the Facility.

Based on our inspection, operations at the Facility are such that petroleum products and other automotive-related pollutants may be entrained in storm water and then discharged offsite. Discharge of waste has caused, or threatened to cause, pollution of soil and groundwater. Considering the proximity of the Facility to Ackerman Creek, there is a concern that any ground water pollution would flow toward and impact the Creek.

To address these issues, our office is issuing the enclosed Cleanup and Abatement Order No. R1-2006-0036 for this facility. This Order is effective upon receipt and addresses three major topics at the Facility:

1. Immediate cleanup of material contributing to discharge of petroleum wastes and automotive-related pollutants.

2. Requirement for upgrades to the Facility's infrastructure and operations to avoid future discharges.

*California Environmental Protection Agency*