66265.193.txt
Such additional capacity shall be sufficient to contain run-on and
infiltration of precipitation from a 25-year, 24-hour rainfall event;

(C) constructed with chemical-resistant water stops in place at all joints
(if any);

(D) provided with an impermeable interior coating or lining that is
compatible with the waste being transferred, stored or treated and that
will prevent migration of waste into the concrete;

(E) provided with a means to protect against the formation of and ignition
of vapors within the vault, if the waste being transferred, stored or
treated:

1. meets the definition of ignitable waste under section 66262.21 of this
division, or

2. meets the definition of reactive waste under section 66261.23 of this
division and may form an ignitable or explosive vapor; and

(F) provided with an exterior moisture barrier or be otherwise designed or
operated to prevent migration of moisture into the vault if the vault is
subject to hydraulic pressure.

(3) Double-walled tanks shall be:

(A) designed as an integral structure (i.e., an inner tank within an outer
shell) so that any release from the inner tank is contained by the outer
shell;

(B) protected, if constructed of metal, from both corrosion of the primary
tank interior and the external surface of the outer shell; and

(C) provided with a built-in, continuous leak detection system capable of
detecting a release within 24 hours or at the earliest practicable time,
if the owner or operator can demonstrate to the Department, and the
Department concurs, that the existing leak detection technology or site
conditions will not allow detection of a release within 24 hours.

(f) Ancillary equipment shall be provided with full secondary containment
(e.g., trench, jacketing, double-walled piping) that meets the
requirements of subsections (b) and (c) of this section except for:

(1) aboveground piping (exclusive of flanges, joints, valves, and
connections) that are visually inspected for leaks on a daily basis;

(2) welded flanges, welded joints, and welded connections that are
visually inspected for leaks on a daily basis;

(3) sealless or magnetic coupling pumps and sealless valves, that are
visually inspected for leaks on a daily basis; and

(4) pressurized aboveground piping systems with automatic shut-off devices
(e.g., excess flow check valves, flow metering shutdown devices, loss of
pressure actuated shut-off devices) that are visually inspected for leaks
on a daily basis.

(g) The owner or operator may obtain a variance from the requirements of
this section for existing above-ground tanks in place, if the Department
finds, as a result of a demonstration by the owner or operator, either
that alternative design and operating practices, together with location
characteristics, will prevent the migration of hazardous waste or
hazardous constituents into the ground water or surface water at least as

Page 5

66265.193.txt
effectively as secondary containment during the active life of the tank
system, or that in the event of a release that does migrate to ground
water or surface water, no substantial present or potential hazard will be
posed to human health or the environment.

(1) In deciding whether to grant a variance based on a demonstration of
equivalent protection of ground water and surface water, the Department
will consider:

(A) the nature and quantity of the waste;

(B) the proposed alternate design and operation;

(C) the hydrogeologic setting of the facility, including the thickness of
soils between the tank system and ground water; and

(D) all other factors that would influence the quality and mobility of the
hazardous constituents and the potential for the constituents to migrate
to ground water or surface water.

(2) In deciding whether to grant a variance, based on a demonstration of
no substantial present or potential hazard, the Department will consider:

(A) the potential adverse effects on ground water, surface water, and land
quality taking into account:

1. the physical and chemical characteristics of the waste in the tank
system, including its potential for migration,

2. the hydrogeological characteristics of the facility and surrounding
land,

3. the potential for health risks caused by human exposure to waste
constituents,

4. the potential for damage to wildlife, crops, vegetation, and physical
structures caused by exposure to waste constituents, and

5. the persistence and permanence of the potential adverse effects;

(B) the potential adverse effects of a release on ground-water quality,
taking into account:

1. the quantity and quality of ground water and the direction of
ground-water flow,

2. the proximity and withdrawal rates of water in the area,

3. the current and future uses of ground water in the area, and

4. the existing quality of ground water, including other sources of
contamination and their cumulative impact on the ground-water quality;

(C) the potential adverse effects of a release on surface water quality,
taking into account:

1. the quantity and quality of ground water and the direction of
ground-water flow,

2. the patterns of rainfall in the region,

3. the proximity of the tank system to surface waters,

66265.193.txt
4. the current and future uses of surface waters in the area and any water quality standards established for those surface waters, and

5. the existing quality of surface water, including other sources of contamination and the cumulative impact on surface-water quality; and

(D) the potential adverse effects of a release on the land surrounding the tank system, taking into account:

1. the patterns of rainfall in the region, and

2. the current and future uses of the surrounding land.

(3) The owner or operator of a tank system, for which a variance from secondary containment has been granted in accordance with the requirements of subsection (g)(1) of this section, at which a release of hazardous waste has occurred from the primary tank system but has not migrated beyond the zone of engineering control (as established in the variance), shall:

(A) comply with the requirements of section 66265.196, except subsection (e); and

(B) decontaminate or remove contaminated soil to the extent necessary to:

1. enable the tank system, for which the variance was granted, to resume operation with the capability for the detection of and response to releases at least equivalent to the capability it had prior to the release, and

2. prevent the migration of hazardous waste or hazardous constituents to ground water or surface water; and

(C) if contaminated soil cannot be removed or decontaminated in accordance with subsection (g)(3)(B) of this section, comply with the requirements of section 66265.197(b);

(4) The owner or operator of a tank system, for which a variance from secondary containment has been granted in accordance with the requirements of subsection (g)(1) of this section, at which a release of hazardous waste has occurred from the primary tank system and has migrated beyond the zone of engineering control (as established in the variance), shall:

(A) comply with the requirements of section 66265.196(a), (b), (c), (d) and (e); and

(B) prevent the migration of hazardous waste or hazardous constituents to ground water or surface water, if possible, and decontaminate or remove contaminated soil. If contaminated soil cannot be decontaminated or removed, or if ground water has been contaminated, the owner or operator shall comply with the requirements of section 66265.197(b);

(C) if repairing, replacing, or reinstalling the tank system, provide secondary containment in accordance with the requirements of subsections (a) through (f) of this section or reapply for a variance from secondary containment and meet the requirements for new tank systems in section 66265.192 if the tank system is replaced. The owner or operator shall comply with these requirements even if contaminated soil can be decontaminated or removed, and ground water or surface water has not been contaminated.

(h) The following procedures shall be followed in order to request a variance from secondary containment:

Page 7

66265.193.txt

(1) The Department shall be notified in writing by the owner or operator
that the facility intends to conduct and submit a demonstration for a
variance from secondary containment as allowed in subsection (g) of this
section at least 24 months prior to the date that secondary containment is
required to be provided in accordance with subsection (a) of this section.

(2) As part of the notification, the owner or operator shall also submit
to the Department a description of the steps necessary to conduct the
demonstration and a timetable for completing each of the steps. The
demonstration shall address each of the factors listed in subsection
(g)(1) or subsection (g)(2) of this section.

(3) The demonstration for a variance shall be completed and submitted to
the Department within 180 days after notifying the Department of intent to
conduct the demonstration.

(4) The Department will inform the public, through a newspaper notice, of
the availability of the demonstration for a variance. The notice shall be
placed in a daily or weekly major local newspaper of general circulation
and shall provide at least 30 days from the date of the notice for the
public to review and comment on the demonstration for a variance. The
Department also will hold a public hearing, in response to a request or at
the Department's own discretion, whenever such a hearing might clarify one
or more issues concerning the demonstration for a variance. Public notice
of the hearing will be given at least 30 days prior to the date of the
hearing and may be given at the same time as notice of the opportunity for
the public to review and comment on the demonstration. These two notices
may be combined.

(5) The Department will approve or disapprove the request for a variance
within 90 days of receipt of the demonstration from the owner or operator
and will notify in writing the owner or operator and each person who
submitted written comments or requested notice of the variance decision.
If the demonstration for a variance is incomplete or does not include
sufficient information, the 90-day time period will begin when the
Department receives a complete demonstration, including all information
necessary to make a final determination. If the public comment period in
subsection (h)(4) of this section is extended, the 90-day time period will
be similarly extended.

(i) All tank systems, until such time as secondary containment meeting the
requirements of this section is provided, shall comply with the following:

(1) for non-enterable underground tanks, a leak test that meets the
requirements of section 66265.191(b)(5) shall be conducted at least
annually;

(2) for other than non-enterable underground tanks and for all ancillary
equipment, an annual leak test, as described in paragraph (i)(1) of this
section, or an internal inspection or other tank integrity examination by
an independent, qualified, professional engineer, registered in
California, that addresses cracks, leaks, corrosion, and erosion shall be
conducted at least annually. The owner or operator shall remove the stored
waste from the tank, if necessary, to allow the condition of all internal
tank surfaces to be assessed.

(3) The owner or operator shall maintain on file at the facility a record
of the results of the assessments conducted in accordance with subsections
(i)(1) and (i)(2) of this section.

(4) If a tank system or component is found to be leaking or unfit for use
as a result of the leak test or assessment in subsections (i)(1) and

Page 8

66265.193.txt
(i)(2) of this section, the owner or operator shall comply with the
requirements of section 66265.196.

(j)(1) Notwithstanding subsections (a) through (c) of this section,
secondary containment that meets the requirements of subsection (l) shall
be provided for tank systems used to manage hazardous wastes generated
onsite, and which meet the criteria specified in subsection (j)(2) of this
section:

(A) prior to the tank system or component being placed in service for new
tank systems or components; or

(B) by January 24, 1998 for existing tank systems.

(2) The provisions of subsection (j)(1) of this section apply only to:

(A) onground or aboveground tank systems containing only non-RCRA
hazardous wastes generated onsite, and tank systems authorized under
Permit-by-Rule pursuant to Chapter 45 of this division, Conditional
Authorization pursuant to HSC 25200.3, and Conditional Exemption pursuant
to HSC 25201.5, and

(B) onground or aboveground tank systems containing RCRA hazardous wastes
generated onsite, if:

1. the owner or operator is a conditionally exempt small quantity
generator as defined in 40 CFR section 261.5, or a small quantity
generator of more than 100 kg but less than 1000 kg per month as defined
in 40 CFR section 265.201, or

2. the owner or operator is not subject to regulation in 40 CFR part 265
pursuant to an exemption in 40 CFR section 265.1, but the owner or
operator is subject to the standards of this article.

(k) A generator or owner or operator authorized pursuant to Permit-by-Rule
pursuant to Chapter 45 of this division, Conditional Authorization
pursuant to HSC 25200.3, or Conditional Exemption pursuant to HSC 25201.5,
operating a non-RCRA underground tank system or an underground tank system
otherwise exempt from permitting requirements pursuant to the federal act,
shall comply with the applicable standards of Title 23 of the California
Code of Regulations relating to underground tank systems.

(l) Secondary containment for onground or aboveground generator and onsite
tier (Permit-by-Rule Conditional Authorization, and Conditional
Exemption), non-RCRA tank systems or tank systems otherwise exempt from
permitting requirements pursuant to the federal act, shall consist of any
of the devices listed in subsection (d) and satisfy the requirements of
(e) of this section or consist of any device or combination of devices as
approved in writing by the CUPA, or the Department if there is no CUPA or
the CUPA requests that the Department make a determination, which would
satisfy the following minimum requirements:

(1) designed, installed, and operated to prevent any migration of wastes
or accumulated liquid out of the system to the soil, ground water, surface
water, or air at any time during the use of the tank system; and

(2) capable of detecting and collecting releases and accumulated liquids
until the collected material is removed.

(m) Ancillary equipment shall be provided with secondary containment as
specified in subsection (f) of this section or an alternative device or
devices as approved in writing by the CUPA, or Department if there is no
CUPA or the Department if the CUPA requests that the Department make a

Page 9

66265.193.txt
determination, which would prevent and/or detect any release of wastes out of the tank system before such wastes could migrate to the soil, ground water, or surface water at any time during the use of the tank system. The following are examples of tank system and ancillary equipment secondary containment alternatives or options that may be proposed for review and approval by the CUPA:

(1) traditional containment of entire system within a bermed containment area with visual and/or electronic leak detection monitoring;

(2) troughs or pipe runs with impermeable liners that incorporate the following:

(A) visual monitoring during hours of operation or;

(B) continuous electronic leak detection monitoring for releases or;

(C) sumps located at low elevations with leak detection monitors.

(3) double-walled piping with continuous interstitial monitoring or monitoring intervals located at low elevation points along pipeline;

(4) Double-walled piping with translucent or transparent sections located at low points or low endpoints so that visual monitoring is possible.

(n) A generator or owner or operator authorized pursuant to Permit-by-Rule pursuant to Chapter 45 of this division, Conditional Authorization pursuant to HSC 25200.3, and Conditional Exemption pursuant to HSC 25201.5, operating an onground or aboveground, non-RCRA tank system or a tank system otherwise exempt from permitting requirements pursuant to the federal act, that has 18 months or less remaining in service prior to planned closure of the tank system, may propose alternatives to retrofitting the tank system with secondary containment. Local agency requirements must be considered when proposing alternatives to secondary containment. The owner or operator shall provide the following information in writing to the CUPA, or the Department if there is no CUPA or the CUPA requests that the Department make a determination, so that a determination can be made whether the proposed alternative would be acceptable:

(1) name, address, and EPA identification number of the facility;

(2) date of planned closure;

(3) description of tank system to be closed and form of current authorization for the tank system;

(4) description of how the proposed alternative would provide adequate environmental protection such that the design, installation, and operation will be capable of detecting a release and preventing any migration of wastes or accumulated liquid out of the system to the soil, ground water, surface water, or air at any time during the remaining life of the tank system.

Note: Authority cited: Sections 25150 and 25159, Health and Safety Code. Reference: Sections 25143, 25159 and 25159.5, Health and Safety Code; 40 CFR Section 265.193.

HISTORY

1. New section filed 5-24-91; operative 7-1-91 (Register 91, No. 22).

66265.193.txt
2. Amendment of section and Notefiled 6-19-95 as an emergency; operative 6-19-
95 (Register 95, No. 25). A Certificate of Compliance must be transmitted to
OAL by 10-17-95 or emergency language will be repealed by operation of law on
the following day.

3. Amendment of section and Noterefiled 10-16-95 as an emergency;
operative 10-
16-95 (Register 95, No. 42). A Certificate of Compliance must be transmitted
to OAL by 2-13-96 or emergency language will be repealed by operation of law on
the following day.

4. Amendment of section and Noterefiled 2-16-96 as an emergency; operative 2-
16-96 (Register 96, No. 7). A Certificate of Compliance must be transmitted
to OAL by 6-15-96 or emergency language will be repealed by operation of law on
the following day.

5. Amendment of section and Noterefiled 6-17-96 as an emergency; operative 6-
17-96 (Register 96, No. 25). A Certificate of Compliance must be transmitted
to OAL by 10-15-96 or emergency language will be repealed by operation of law
on the following day.

6. Amendment of section and Noterefiled 10-15-96 as an emergency;
operative 10-
15-96 (Register 96, No. 42). A Certificate of Compliance must be transmitted
to OAL by 2-12-97 or emergency language will be repealed by operation of law on
the following day.

7. Amendment of section and Noterefiled 2-11-97 as an emergency, including
additional amendment of Note; operative 2-11-97 (Register 97, No. 7). A
Certificate of Compliance must be transmitted to OAL by 6-11-97 or emergency
language will be repealed by operation of law on the following day.

8. Certificate of Compliance as to 2-11-97 order transmitted to OAL 6-10-97;
disapproved by OAL and order of repeal as to 2-11-97 filed on 7-24-97 (Register
97, No. 30).

9. Certificate of Compliance as to 2-11-97 order, including amendment of
section, resubmitted to OAL and approved on 7-24-97 (Register 97, No. 30).

10. Change without regulatory effect amending subsection (1) filed 7-1-2004
pursuant to section 100, title 1, California Code of Regulations (Register
2004, No. 27).
22 CA ADC s 66265.193

END OF DOCUMENT

66265.193.txt
(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.
Term
Cite List     Docs In Sequence     Table of Contents

This site is provided by West.
© 2006 West | Privacy | Accessibility

66265.54.txt
California Code of Regulations California Office of Administrative Law
    Home    Most Recent Updates    Search    Help    ☺
     Welcome to the online source for
    California Code of Regulations

22 CA ADC § 66265.54

Term

22 CCR s 66265.54

Cal. Admin. Code tit. 22, s 66265.54

BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS
TITLE 22. SOCIAL SECURITY
DIVISION 4.5. ENVIRONMENTAL HEALTH STANDARDS FOR THE MANAGEMENT OF
HAZARDOUS
WASTE
CHAPTER 15. INTERIM STATUS STANDARDS FOR OWNERS AND OPERATORS OF HAZARDOUS
WASTE TRANSFER, TREATMENT, STORAGE, AND DISPOSAL FACILITIES
ARTICLE 4. CONTINGENCY PLAN AND EMERGENCY PROCEDURES
This database is current through 01/20/2006, Register 2006, No. 3.

s 66265.54. Amendment of Contingency Plan.

The contingency plan shall be reviewed, and immediately amended, if
necessary, whenever:

(a) applicable regulations are revised;

(b) the plan fails in an emergency;

(c) the facility changes in its design, construction, operation,
maintenance, or other circumstances in a way that materially increases the
potential for fires, explosions, or releases of hazardous waste or
hazardous waste constituents, or changes the response necessary in an
emergency;

(d) the list of emergency coordinators changes; or

(e) the list of emergency equipment changes.

Note: Authority cited: Sections 208, 25150 and 25159, Health and Safety
Code. Reference: Sections 25159 and 25159.5, Health and Safety Code; 40
CFR Section 265.54.

HISTORY

1. New section filed 5-24-91; operative 7-1-91 (Register 91, No . 22).
22 CA ADC s 66265.54

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. works.
  Term
Cite List    Docs In Sequence    Table of Contents

66265.54.txt

This site is provided by West.
© 2006 West | Privacy | Accessibility

66265.53.txt
California Code of Regulations California Office of Administrative Law
   Home   Most Recent Updates   Search   Help   ©
   Welcome to the online source for
California Code of Regulations

22 CA ADC § 66265.53


Term

22 CCR s 66265.53

Cal. Admin. Code tit. 22, s 66265.53

BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS
TITLE 22. SOCIAL SECURITY
DIVISION 4.5. ENVIRONMENTAL HEALTH STANDARDS FOR THE MANAGEMENT OF
HAZARDOUS
WASTE
CHAPTER 15. INTERIM STATUS STANDARDS FOR OWNERS AND OPERATORS OF HAZARDOUS
WASTE TRANSFER, TREATMENT, STORAGE, AND DISPOSAL FACILITIES
ARTICLE 4. CONTINGENCY PLAN AND EMERGENCY PROCEDURES
This database is current through 01/20/2006, Register 2006, No. 3.

s 66265.53. Copies of Contingency Plan.

A copy of the contingency plan and all revisions to the plan shall be:

(a) maintained at the facility; and

(b) submitted to all local police departments, fire departments,
hospitals, and state and local emergency response teams that may be called
upon to provide emergency services.

Note: Authority cited: Sections 208, 25150 and 25159, Health and Safety
Code. Reference: Sections 25159 and 25159.5, Health and Safety Code; 40
CFR Section 265.53.

HISTORY

1. New section filed 5-24-91; operative 7-1-91 (Register 91, No. 22).
22 CA ADC s 66265.53

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.
 Term
Cite List   Docs In Sequence   Table of Contents

This site is provided by West.
© 2006 West | Privacy | Accessibility

66265.52.txt
California Code of Regulations California Office of Administrative Law
    Home    Most Recent Updates    Search    Help    ©
    Welcome to the online source for
    California Code of Regulations

22 CA ADC § 66265.52


    Term

22 CCR s 66265.52

Cal. Admin. Code tit. 22, s 66265.52


BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS
TITLE 22. SOCIAL SECURITY
DIVISION 4.5. ENVIRONMENTAL HEALTH STANDARDS FOR THE MANAGEMENT OF
HAZARDOUS
WASTE
CHAPTER 15. INTERIM STATUS STANDARDS FOR OWNERS AND OPERATORS OF HAZARDOUS
WASTE TRANSFER, TREATMENT, STORAGE, AND DISPOSAL FACILITIES
ARTICLE 4. CONTINGENCY PLAN AND EMERGENCY PROCEDURES
This database is current through 01/20/2006, Register 2006, No. 3.

s 66265.52. Content of Contingency Plan.

(a) The contingency plan shall describe the actions facility personnel
shall take to comply with sections 66265.51 and 66265.56 in response to
fires, explosions, or any unplanned sudden or non-sudden release of
hazardous waste or hazardous waste constituents to air, soil, or surface
water at the facility.

(b) If the owner or operator has already prepared a Spill Prevention,
Control, and Countermeasures (SPCC) Plan in accordance with 40 CFR Part
112, or 40 CFR Part 1510, or some other emergency or contingency plan, the
owner or operator need only amend that plan to incorporate hazardous waste
management provisions that are sufficient to comply with the requirements
of this chapter.

(c) The plan shall describe arrangements agreed to by local police
departments, fire departments, hospitals, contractors, and State and local
emergency response teams to coordinate emergency services, pursuant to
section 66265.37.

(d) The plan shall list names, addresses, and phone numbers (office and
home) of all persons qualified to act as emergency coordinator (see
section 66265.55), and this list shall be kept up to date. Where more than
one person is listed, one shall be named as primary emergency coordinator
and others shall be listed in the order in which they will assume
responsibility as alternates.

(e) The plan shall include a list of all emergency equipment at the
facility (such as fire extinguishing systems, spill control equipment,
communications and alarm systems (internal and external), and
decontamination equipment), where this equipment is required. This list
shall be kept up to date. In addition, the plan shall include the location
and a physical description of each item on the list, and a brief outline
of its capabilities.

(f) The plan shall include an evacuation plan for facility personnel where

Page 1

66265.52.txt
there is a possibility that evacuation could be necessary. This plan shall
describe signal(s) to be used to begin evacuation, evacuation routes, and
alternate evacuation routes (in cases where the primary routes could be
blocked by releases of hazardous waste or fires).

(g) The plan shall include the current telephone number of the State
Office of Emergency Services.

Note: Authority cited: Sections 208, 25150 and 25159, Health and Safety
Code. Reference: Sections 25159 and 25159.5, Health and Safety Code; 40
CFR Section 265.52.

HISTORY

1. New section filed 5-24-91; operative 7-1-91 (Register 91, No . 22).
22 CA ADC s 66265.52

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.
 Term
Cite List     Docs In Sequence    Table of Contents

 This site is provided by West.                                    •
© 2006 West | Privacy | Accessibility

66265.51.txt
California Code of Regulations California Office of Administrative Law
     Home    Most Recent Updates    Search    Help    ©
      Welcome to the online source for
     California Code of Regulations

     22 CA ADC § 66265.51

        Term

     22 CCR s 66265.51

     Cal. Admin. Code tit. 22, s 66265.51

     BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS
     TITLE 22. SOCIAL SECURITY
     DIVISION 4.5. ENVIRONMENTAL HEALTH STANDARDS FOR THE MANAGEMENT OF
     HAZARDOUS
     WASTE
     CHAPTER 15. INTERIM STATUS STANDARDS FOR OWNERS AND OPERATORS OF HAZARDOUS
     WASTE TRANSFER, TREATMENT, STORAGE, AND DISPOSAL FACILITIES
     ARTICLE 4. CONTINGENCY PLAN AND EMERGENCY PROCEDURES
     This database is current through 01/20/2006, Register 2006, No. 3.

     s 66265.51. Purpose and Implementation of Contingency Plan.

     (a) Each owner or operator shall have a contingency plan for the facility.
     The contingency plan shall be designed to minimize hazards to human health
     or the environment from fires, explosions, or any unplanned sudden or
     non-sudden release of hazardous waste or hazardous waste constituents to
     air, soil, or surface water.

     (b) The provisions of the plan shall be carried out immediately whenever
     there is a fire, explosion, or release of hazardous waste or hazardous
     waste constituents which could threaten human health or the environment.

     Note: Authority cited: Sections 208, 25150 and 25159, Health and Safety
     Code. Reference: Sections 25159 and 25159.5, Health and Safety Code; 40
     CFR Section 265.51.

      HISTORY

     1. New section filed 5-24-91; operative 7-1-91 (Register 91, No. 22).
     22 CA ADC s 66265.51

     END OF DOCUMENT

     (C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.
      Term
     Cite List    Docs In Sequence    Table of Contents

      This site is provided by West.
     © 2006 West | Privacy | Accessibility

Ukiah Auto Dismantler                    -9-

## REGIONAL WATER BOARD PHOTO'S
## FEBRUARY 6, 2006 INSPECTION

Attachment

K:/Ukiah Auto/2-06 Ukiah Auto Inspect.doc

















F2060018.JPG





P2060017.JPG

# PINOLEVILLE INDIAN RESERVATION

**367 N. State St., Suite 204 Ukiah, CA 95482 Ph: 707-463-1454 FAX: 707-463-6601**



January 22, 2002

Mr. Rick Mayfield
R&M Backhoe
500 Pinoleville Drive
Ukiah, CA 95482

      Subject:     Notice of Violation of Tribal Ordinances
                    Dated: January 19, 2003
                    Violation Location: 500 Pinoleville Drive, Ukiah 95482
                                     NE corner of Mendocino
                                     APN #169-190-047

The Pinoleville Band of Pomo Indians is issuing this violation notice to you for illegally diverting storm water run-off from your property onto adjacent lands. This action is a direct violation of The Pinoleville Indian Reservation's Nuisance Ordinance, Section 5 (Nuisance Prohibited), actions defined in Section 3 (Acts Constituting Nuisance) part (a) & part (a)(4), and the Water Quality Ordinance, Section 4 (Prohibited Activities) part (a).

Violation of these Ordinances obligates the Tribe to exercise its duty to protect the environmental quality within Reservation boundaries under the Pinoleville Band of Pomo Indians Environmental Policy Act, Section 102 part (c). We have included the sections pertaining to your violations and their corresponding penalties.

On December 5th, 2001, the Tribe's Environmental Coordinator responded to a complaint that a trench had been dug on the northeast corner of your property that directly led to flooding on two adjacent parcels to the east of yours. The Tribe's Environmental Coordinator observed a large trench, approximately 5 feet across and 5feet high at the mouth of the trench (where it opened up onto adjacent land). A steady flow of polluted water 2 to 3 inches deep and 3 to 6 feet wide was observed at this time. The trench ran back (SW) through the Mayfield property approximately 100 feet and curved to the right around a pile of cars.

Nuisance Ordinance, Section 5 (Nuisance Prohibited) part (a) of the Pinoleville Indian Reservation requires:

(a)    "...No person shall cause or maintain a nuisance, whether a public or private nuisance, within the Reservation or other territory over which the Tribe has jurisdiction."

Mr. Rick Mayfield                       Page 2                       January 2002

Nuisance Ordinance, Section 3 (Acts Constituting Nuisance) part (a) & part (a)(4) of the Pinoleville Indian Reservation states:

(a)      "…Anything which is injurious to health or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property…"

(a)(4)  "…unlawful dredge or discharge, which means any surface or groundwater to be diverted, obstructed, or impeded, or discharging any material into any waters without legal authority."

Water Quality Ordinance, Section 4 (Prohibited Activities) part (a) of the Pinoleville Indian Reservation requires:

(a)      "…No person shall discharge any pollutant into the waters or wetlands of the Reservation or other territory over which the Tribe has jurisdiction."

The evidence observed by the Tribe's Environmental Coordinator, as described above, clearly indicates that a violation of these regulations has taken place.

These violations are subject to legal action. Pinoleville Indian Reservation's Nuisance Ordinance, Section 8 (Penalties) provides that any person violating any provision of this Ordinance is subject to a civil fine up to **$1,000.00 per violation**.

The Pinoleville Indian Reservation's Water Quality Ordinance, Section 6 (Civil Penalty) provides that any person engaging in any activity prohibited under this Ordinance is subject to a civil fine up to **$5,000.00 for each day in which the violation occurs**.

Water Quality Ordinance Section 8 (Clean Up and Abatement) part (a) of the Pinoleville Indian Reservation's requires:

"…Any person who discharges any pollutant into the waters of the Reservation or other territory over which the Tribe has jurisdiction shall be liable for all costs associated with or necessary to clean up, abate, or remove said pollutants from the waters of the Reservation or other territory over which the Tribe has jurisdiction and restore the quality of the waters of the Reservation or other territory over which the Tribe has jurisdiction to their condition as they existed immediately prior to the discharge."

Mr. Rick Mayfield                       Page 3                       January 2002

Under the authority of the PBPI's Environmental Policy Act (Section 205.1), the Chairperson of the Pinoleville Environmental Protection Agency (PEPA) will be issuing an Emergency Restraining Order for any action associated with diversion of storm water on your property until further notice. Your adherence to this Order will significantly influence how your case will be handled in the future.

It is the policy of The Tribe, whenever possible, to settle matters like this outside of court in lieu of filling civil action. Prior to filing any legal action, the Tribe would like to offer you the opportunity to rectify these violations. If you would like to explore this option, please contact Don Rich, Tribal Administrator, at the Tribal Office at 707-463-1454.

Please be aware that if you do not respond to this notice within ten days as specified above, and by either contacting the Tribe for further discussion or paying the civil penalty, the case will be turned over to the District Attorney for further action.

The California Regional Water Quality Control Board (North Coast Region) has been informed of these violations and will be conducting an investigation of their own.


Sincerely,


Nathan A. Rich
Environmental Coordinator
Pinoleville Band of Pomo Indians
367 N. State St., #204
Ukiah CA, 95482

Cc:    John Short, California Regional Water Quality Control Board, North Coast
       Region, 5550 Skylane Boulevard, Suite A, Santa Rosa, California 95403

       Wayne Briley, Mendocino County Division of Environmental Health
       501 Low Gap Road, Ukiah CA 95482

       Eugene Bromley, US EPA, Region 09
       75 Hawthorne St. San Francisco, CA 94105-3901