CHRISTOPHER J. NEARY
Attorney at Law, #69220
110 South Main Street, Suite C
Willits, CA  95490

(707) 459-5551

Attorney for defendants, U.S. ALCHEMY CORPORATION,
dba UKIAH AUTO DISMANTLERS and WAYNE HUNT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINOLEVILLE POMO NATION, PINOLEVILLE POMO NATION ENVIRONMENTAL ASSOCIATION and LEONA WILLIAMS,<br><br>Plaintiffs,<br><br>v.<br><br>UKIAH AUTO DISMANTLERS, WAYNE HUNT, ISABEL LEWRIGHT, WARRIOR INDUSTRIES, INC., RICHARD MAYFIELD, ROSS JUNIOR MAYFIELD, PAULA MAYFIELD, KENNETH HUNT, U.S. ALCHEMY CORPORATION and DOES 1-50, Inclusive,<br><br>Defendants. | Case No. C 07-02648 EMC<br><br>REPLY TO OPPOSITION TO MOTION TO DISMISS |

## I.  INTRODUCTION

The notices sent by Plaintiffs read like pleadings rather than notices under the Clean Water Act (the "CWA") and the Resource Conservation and Recovery Act (the "RCRA").  Both of those acts contemplate that citizen notices be sufficiently specific to allow the recipient to determine the nature of the alleged violations and to impart notice to the regulatory agencies as to the nature of the alleged violations.

- 1 -

It is urged here that Plaintiffs' notices were so broad and all-encompassing of all possible violations of the two Acts that they can be distilled down to nothing more than the simple conclusion that at sometime during the statute of limitations period there were alleged violations of the Acts.

The salutary purpose of citizen enforcement is not furthered by permitting notices such as these to confer jurisdiction when the notices do not tell the recipients what wrongs have been committed so that they know how to bring their conduct into conformity.

## II. ASCERTAINMENT STANDARD NOT MET

Two types of specificity have been analyzed in Plaintiffs' Opposition: (1) specificity of dates and (2) specificity of the violated CWA standard. It is urged here that even under the most liberal standard, the Plaintiffs' notices failed to provide notice to the Defendant under either standard.

It is true that there are two lines of cases on the specificity of dates: one line requiring strict specificity of the dates[1]; and a newer line of cases adopting an "Ascertainment Notice Standard" holding that the notice must be sufficient for the recipient to ascertain the dates.[2]

However, even under the Ascertainment Standard Notice line of cases cited by Plaintiffs, the subject notices are deficient in that they merely reference all possible dates within the statute of limitations, without more.

As to the practice of giving notice as to all dates within the statute of limitations, without further information, there is a split in district court cases. In a 1996 Southern

---

[1] *Washington Trout v. McCain Foods*, Inc. 45 F3d 1351 (9th Cir. 1995); *California Sport Fishing Protection Alliance v. City of West Sacramento* 905 F.Supp. 792 (Ed. Cal. 1995) (hereinafter "*California Sport Fishing*").

[2] *Friends of Frederick Seig Grove* 124 F.Supp.2d 1161 (N.D. Cal. 2000) (hereinafter "*Seig Grove*"); *Community Association for Restoration of the Environment v. Henry Bosma Dairy* 305 F.3d 943 (9th Cir. 2002) (hereinafter "*Bosma*"); *San Francisco Baykeeper v. Tosco Corp.* 309 F.3d 1153 (9th Cir. 2002) (hereinafter "*Tosco*"); and *NRDC v. Southwest Marine* 945 F.Supp. 1330 (S.D. Cal. 1996) (hereinafter "*Southwest I*").

District case, the court had no problem with a notice alleging all dates within the statute of limitations for an alleged violation of improperly implementing a SWPP under a general permit because the violations occurred each and every day. (See *Southwest I* at p. 1333). In *Seig Grove*, a 2000 Northern District case, the court disapproved the practice of alleging the violations in terms of a broad range of dates (see *Seig Grove* p. 1168).

In *Seig Grove*, the court followed *Calfiornia Sport Fishing* disapproving the practice of alleging violations over a broad range of dates without more, although there it found the notice in that case provided sufficient information for the defendant to ascertain the dates. (See *Seig Grove* at 1168). The Court stated:

> "A plaintiff may not simply allege the violations occurred within a broad period of time with no additional information."

In *Tosco*, a notice was examined which specified fourteen specific dates and then identified other potential dates when ship loading operations were conducted by defendants coalescing with sufficient winds to blow a specified pollutant into the waterway. (See *Tosco* at 1157).

In *Bosma*, the court reviewed a citizen notice listing forty-four specific dates of alleged violations identifying the nature of the violations. (See *Bosma* 951-952). The *Bosma* court upheld the notice, finding that the specification of dates was sufficient to impart notice both to the recipient and to the regulatory agencies.

In *Southwest 1*, the court approved a notice alleging that the deficiencies were ongoing so that the violation happened on all possible days during a range of dates. (See *Southwest I* at 1332). The court of appeals reviewed *Southwest I* in a published decision at 236 F.3d 985 (9th Cir. 2000) (hereinafter *Southwest II*) without addressing the findings in *Southwest I* regarding the failure to identify the dates, but did comment that the notice in the *Southwest* case specifically specified:

> "that defendant had failed to prepare an SWPP that complied with the specific requirements of defendant's storm water

> permit, identified the source of the requirements that defendants prepare an adequate SWPP and explained the ways defendant's then existing SWPP did not comply with the storm water permit."

Here, the CWA notice sent by Plaintiffs at pages 4-5 merely outline all possible violations that can occur under a SWPP without identifying the violations defendants are alleged to have violated.

1. In Allegation No. 1, the Notice refers to materials without identifying the materials;

2. In Allegation No. 1, defendants are alleged of "causing or threatening to cause . . . " Surely, had defendants done both, the Notice would have been stated in the conjunctive rather than the disjunctive. Instead, the recipient is left guessing which of the two applies. In essence, the Notice refers to all possible violations cognizable under the CWA without identifying those violations;

3. In Allegation No. 3, defendant is charged with discharging stormwater containing a hazardous substance, the substance being defined as "all possible substances listed in the Code of Federal Regulations;"

4. In Allegation No. 4, defendant is charged with "failing to reduce *or* prevent pollutants which are associated with industrial discharges." Again, the allegation is presented in the disjunctive and is incomprehensible in that the pollutants are described as being those commonly associated with industrial discharges without any individualization as to defendant's facility.

5. In Allegation No. 5, defendant is charged with failing to develop and implement a SWPP complying with the general permit, but this allegation is nothing more than a naked conclusion.

      6.      In Allegation No. 6, defendant is charged with discharging two "surface *or* ground water." This again is stated in the disjunctive and is insufficient to impart any notice at all. The Defendant could be doing both, doing either, or doing neither. The investigation of Plaintiff was apparently inadequate and insufficient to even determine the appropriate allegation. If Plaintiff does not know, how can ascertainment notice be imparted to the recipient and the regulatory agencies?

      7.      In Allegation 7, defendant is charged with "causing or contributing to an excedence." Again, this is in the disjunctive. Again, the excedence must have occurred at some specific time. Plaintiff cannot be left with the option of merely referencing a range of possible dates with the hope that evidence can be found of an excedence at one particular time. It would be less objectionable if Plaintiff had to prove the excedence occurred on every day as alleged. The question remains, what does this notice impart to recipient so that the recipient can correct the deficiencies allegedly identified by the Plaintiff. The answer is nothing.

      8.      In Allegations 8 and 9, Plaintiffs allege that the reports were not submitted without identifying the source of the requirement to do so.

      9.      In Allegation No. 10, Plaintiffs allege that the failure to make the visual observations and failure to record the visual observations, without identifying the source of the obligation to do so.

The Notice here, unlike the notice examined by the court in *Southwest I* does not, save for a passing reference to the "General Permit," identify the source of the requirements allegedly violated. Furthermore, the Notice did not explain the ways the defendant's SWPP was deficient, but merely identified the ways in which any given SWPP could be deficient. This does not meet the standard of imparting notice so that Plaintiff

may ascertain what is being alleged, and what can be done to cure the alleged violations.

Plaintiffs' Opposition identifies the foregoing as the "factual statements regarding each and every activity it believes constitutes a violation."  (Opp. 8:2-3).

### III.  CONCLUSION

Both notices received here are at the farmost edge of non-specificity.  If there is any standard at all, it was violated here where the notices do not impart anything other than a laundry list of possible violations of the CWA and RCRA.

While private enforcement plaintiffs were anticipated by Congress to be a major force in achieving compliance, the notices here were nothing more than a formalistic approach to notice compliance.  If the standard is Ascertainment, review of these notices will demonstrate that the recipient reasonably would have ascertained nothing.

DATED: November 26, 2007

_____
CHRISTOPHER J. NEARY
Attorney for Defendants
U.S. ALCHEMY CORPORATION dba UKIAH
 AUTO DISMANTLERS and WAYNE HUNT