IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINOLEVILLE POMO NATION, et al., | No. C 07-02648 SI |
| Plaintiffs, | **ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |
| v. | |
| UKIAH AUTO DISMANTLERS, et al., | |
| Defendants. | |

Defendants Ukiah Auto Dismantlers, Wayne Hunt, and U.S. Alchemy Corporation have filed a motion to dismiss for lack of subject matter jurisdiction. The motion is scheduled for hearing on December 18, 2007. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. Having considered the arguments of the parties and the papers submitted, the Court hereby DENIES defendants' motion to dismiss.

**BACKGROUND[1]**

Plaintiffs in this case are Pinoleville Pomo Nation, Pinoleville Pomo Nation Environmental Association, and Leona Williams, a member of Pinoleville Pomo Nation. The organizational plaintiffs have members who reside and own property near the site of defendants' businesses, at least one of which is an auto-dismantling operation. Plaintiffs' members also use the waters in the area for drinking, swimming, and other recreational uses. Plaintiffs allege that defendants have been discharging

---

[1] The following background facts are taken from the allegations of plaintiffs' complaint, which for purposes of this motion, must be taken as true.

pollutants into the water of the United States in violation of the Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA"). Because defendants' facilities are generally unpaved, auto parts and other objects associated with dismantling operations sit directly on the dirt and discharge pollutants into the ground when it rains and at other times. As a result, pollutants such as oil, gasoline, anti-freeze, brake fluid, and other toxic substances associated with the dismantling business are discharged from defendants' facilities directly and indirectly into the waters of the United States.

On March 29, 2006, the California Regional Water Quality Control Board issued an "Order to Cleanup and Abate Discharges" to defendants Ukiah Auto Dismantlers and other individual defendants who operate businesses on defendants' property. The order stated that "a majority of the Facility's activities are conducted on bare soil with no storm water treatment or Best Management Practices to contain and treat oil and petroleum products." Complaint ex. D at 1. The order concluded that "[d]ischarge of waste has caused, or threatened to cause, pollution of soil and groundwater," and ordered an immediate cleanup of material discharging pollutants, among other measures. *Id.*

On September 8, 2006, plaintiffs sent a "Notice of Violations and Intent to File Suit Under the Clean Water Act" to defendants, as well as a similar notice related to the RCRA. *See* Complaint exs. A and B. Both notices explicitly incorporated and attached the California Regional Water Quality Control Board order. The CWA notice stated that plaintiffs intended to file suit 60 days after the date of notice for continuing violations of the CWA based on defendants' discharge of pollutants into the waters of the United States. The notice described the location of defendants' property and operations, the pollutants that were discharged as a result of the operations, and the reasons why the discharges occurred. It also alleged that defendants failed to develop or implement a Storm Water Pollution and Prevention Plan ("SWPPP") and a Monitoring and Reporting Program, failed to use the best practices and technology to prevent the discharge of pollutants, and failed to obtain a National Pollutant Discharge Elimination System ("NPDES") permit for the discharge of pollutants from a point source to waters of the United States. The RCRA notice alleged that defendants have caused or threatened to cause hazardous waste to be discharged where it will likely enter the waters of the United States.

Plaintiffs filed this complaint on May 18, 2007. The complaint states various claims for relief for violations of the CWA, the RCRA, and the California Unfair Trade Practices statute. It also states

causes of action arising under the common law for negligence per se, intentional violation of statutory duty, and negligence, all based on defendants' violations of the aforementioned statutes. In addition, the complaint states freestanding common law causes of action for public and private nuisance, intentional nuisance, trespass, intentional infliction of emotional distress, and negligent infliction of emotional distress. Currently before the Court is defendants' motion to dismiss the complaint for lack of subject matter jurisdiction.

## LEGAL STANDARD

"It is a fundamental principle that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 969 (9th Cir. 1981). Accordingly, the burden rests on the party asserting federal subject matter jurisdiction to prove its existence. *California ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979).

Under Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss a complaint if the court lacks jurisdiction over the subject matter. Similarly, under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In answering this question, the Court must assume the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

## DISCUSSION

Defendants argue that plaintiffs' complaint must be dismissed for lack of subject matter

1 jurisdiction because plaintiffs failed to follow the notice procedures of the CWA and the RCRA by filing
2 notices that were too general and lacked specificity as to the dates of violation, the identity of pollutants,
3 and the location of the pollutants. Plaintiffs argue in response that the notices they filed were not
4 overly-general but instead were specific enough to permit defendants to identify and rectify the
5 violations prior to the filing of plaintiffs' lawsuit.

6       The CWA and RCRA allow citizen suits against alleged violators of the acts, as long as the
7 plaintiff has provided specific notice to the suspected polluter, the Environmental Protection Agency
8 ("EPA"), and state regulatory agencies at least 60 days before filing suit in federal court. 33 U.S.C. §
9 1365(b); 42 U.S.C. § 6972(b). Under the EPA's regulations, notice under the CWA must include
10 sufficient information to "permit the recipient to identify the specific standard, limitation, or order
11 alleged to have been violated, the activity alleged to constitute a violation, the persons or person
12 responsible for the alleged violation, the location of the alleged violation, the date or dates of such
13 violation, and the full name, address, and telephone number of the person giving notice." 40 C.F.R. §
14 135.3(a). Notice under the RCRA must include "sufficient information to permit the recipient to
15 identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly
16 been violated, the activity alleged to constitute a violation, the person or persons responsible for the
17 alleged violation, the date or dates of the violation, and the full name, address, and telephone number
18 of the person giving notice." 40 C.F.R. § 254.3(a).

19       The purposes of the 60-day notice requirement are to provide an alleged violator with the
20 opportunity to negotiate a resolution to the dispute and to give state and federal agencies an opportunity
21 to enforce their laws and regulations. *See Wash. Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354 (9th
22 Cir. 1995). This 60-day notice requirement is "a mandatory, not optional condition precedent for suit,"
23 *Hallstrom v. Tillamook County*, 493 U.S. 20, 29 (1989), and is jurisdictional in nature, *see Sw. Center*
24 *for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998). In
25 *Washington Trout*, the Ninth Circuit held that the Clean Water Act's notice provisions must be strictly
26 construed and therefore rejected the plaintiffs' argument that the omission of two plaintiffs from the
27 notice was a "technical deficienc[y]," reasoning that this omission had undermined the purpose of such
28 notice by rendering resolution of the dispute prior to filing an action in federal court impossible. *Id.* at

4

1354-55.

Defendants argue that the Ninth Circuit's strict construction rule renders plaintiffs' CWA notice insufficient to confer jurisdiction because its discussion of the SWPPP is too general. The Court disagrees. First, plaintiffs' notice explicitly incorporated the Regional Water Quality Control Board cleanup and abatement order, which contained a great deal of specific information about discharges from defendants' facilities. Complaint ex. A at 2 ("CWA Notice"). Second, plaintiffs' notice itself, read as a whole, contained sufficiently detailed information to put defendants on notice of how they could correct the problem. The notice alleged that defendants had been polluting on a continual basis by permitting auto parts and other items related to the dismantling business to sit directly in the dirt, where storm water washed over them and carried pollutants, such as oil, grease, brake fluid, and transmission fluid, directly into the water of the United States, *id.* at 3; that this pollution occurred in part because very little of defendants' facilities were paved, such that any water ran directly into the soil and into the water supply without any controls or treatment system, *id.*; and that defendants polluted by failing to eliminate non-storm water discharges that occurred, among other times, when water was used in the washing or rinsing of vehicles, *id.* at 5. The notice can be fairly read to state that as a result of these violations, defendants had not fully developed or adequately implemented a SWPPP. Contrary to defendants' suggestion, there is no problem per se with plaintiffs' allegation that defendants failed to implement a discharge plan. *See NRDC v. Sw. Marine, Inc.*, 236 F.3d 985, 997 (9th Cir. 2000) ("Plaintiffs' notice letter sufficiently alleged that Defendant had failed to prepare *and implement* such a plan.") (emphasis in original). Moreover, rather than being "naked conclusions," as defendants argue, plaintiffs' notice provided sufficient information to permit defendants to identify how they violated the General Industrial Permit, i.e. by failing to develop and implement a SWPPP that would account for and correct the various instances of pollution alleged in the notice. *See S.F. BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1155 (9th Cir. 2002) ("[A]s long as a notice letter is reasonably specific as to the nature and time of the alleged violations, the plaintiff has fulfilled the notice requirement. The letter does not need to describe every detail of every violation; it need only provide enough information that the defendant can identify and correct the problem.").

Next, defendants contend that the notice of violation failed to identify the location of the alleged

5

violation of the CWA and the "point source" of the violation. As plaintiffs point out, most of plaintiffs' claims concern the entire operation of defendants' properties, such as defendants' failure to implement an adequate SWPPP or failure to acquire a permit for discharges. These general allegations addressing defendant's failure to follow the proper procedures apply to the way defendants run their facilities, and thus plaintiffs' identification of defendants' facilities was sufficient to permit defendants to identify the location of the alleged violation. 40 C.F.R. § 135.3(a). The Court also agrees with plaintiffs that they provided sufficient notice to permit defendants to identify the specific point sources from which pollutants may have been discharged. The notice describes the equipment used by defendants, as well as the defendants' facilities themselves, as point sources. CWA Notice at 6. Given the complete context of plaintiffs' notice and the allegations that many different objects located throughout defendants' property were discharging pollutants into United States waters due to the lack of a system for preventing pollutant discharge into the groundwater, defendants were on notice how to correct the problem and could have identified the point sources. *Tosco*, 309 F.3d at 1158 ("The key language in the notice regulation is the phrase 'sufficient information to permit the recipient to identify' the alleged violations and bring itself into compliance. . . . Notice is sufficient if it is specific enough to give the accused company the opportunity to correct the problem.") (internal quotation marks omitted). This is all the regulations require.

Defendants also argue that the notice of violation failed to state the dates of the alleged violations. Plaintiffs' notice alleged that defendants were in continuous violation from September 8, 2001, through September 8, 2006. CWA Notice at 4,5,6,7. Plaintiffs argue this provided sufficient notice because they alleged an ongoing violation occurring throughout the time defendants did not possess the proper NPDES permit and were not adequately implementing their discharge plans. The Court agrees with plaintiffs that their complaint alleges ongoing violations, such that the notice was not required to allege specific dates and the five-year period was appropriate. *See Tosco*, 309 F.3d at 1158 (where ongoing violation is alleged, notice need not provide specific dates); *Sw. Marine*, 236 F.3d at 996 (same). To the extent plaintiffs' complaint also rests on specific instances of pollution, the Court also holds that it was sufficient to allege in the notice that defendants discharged pollutants into United States water sources anytime it rained and anytime defendants undertook washing or rinsing activities

on their property. The frequency with which such events occurred would amount to a continuing violation, and provided sufficient information for defendants to identify the dates of specific violations. *See Tosco*, 309 F.3d at 1159 (notice was sufficient where the plaintiffs alleged a violation each day the wind was sufficiently strong because defendant had notice of what it was doing wrong and how it could correct the problem); *see also Friends of Frederick Seig Grove #94 v. Sonoma County Water Agency*, 124 F. Supp. 2d 1161, 1169 (N.D. Cal. 2000) ("[A] plaintiff is not required to provide in the notice letter itself an exhaustive list of each and every violation and the corresponding dates. Instead, a plaintiff must do what the CWA regulation requires: provide enough information for a defendant to identify the dates of claimed violations.").

Defendants argue that plaintiffs failed to provide notice of the identity of pollutants. Notably, the regulations do not state that plaintiffs must provide notice of the identity of the pollutants, only that plaintiffs must provide sufficient information to permit defendants to identify the activity alleged to constitute a violation. 40 C.F.R. § 135.3(a). Defendants instead cite a Second Circuit decision holding that plaintiffs must specify each pollutant unlawfully discharged by defendants. *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 488 (2d Cir. 2001). Defendants do not suggest that the Ninth Circuit has adopted this standard, but even assuming the Ninth Circuit would follow the Second Circuit, plaintiffs sufficiently notified defendants of the particular pollutants at issue when plaintiffs alleged that defendants have discharged "pollutants such as oil, grease, anti-freeze, brake fluid, gasoline, transmission fluid, and other toxic substances," CWA Notice at 3, and "oils, solvents, gasoline, anti-freeze, detergents and like pollutants known to be associated with dismantling operations," *id.* at 7. This is sufficient to permit defendants to identify the activity alleged to constitute a violation, 40 C.F.R. § 135.3(a), and defendants are in a far better position than plaintiffs to know what other pollutants are discharged during automobile dismantling operations, *see Tosco*, 309 F.3d at 1158 ("Tosco is obviously in a better position than [the plaintiffs] to identify the exact dates, or additional dates, of its own ship loading."). The Court therefore DENIES defendants' motion to dismiss the CWA claims for lack of subject matter jurisdiction.

Finally, defendants argue that plaintiffs' RCRA claims also must be dismissed for insufficient notice. For the reasons discussed above, the Court DENIES defendants' motion to dismiss the RCRA

7

1 claims for lack of subject matter jurisdiction. Although it is unclear exactly how defendants are
2 challenging the RCRA claims, to the extent they also argue that plaintiffs' RCRA claims should be
3 dismissed for failure to state a claim, the Court holds that plaintiffs' complaint states a claim for
4 violations of the RCRA and that plaintiffs are entitled to put forth facts regarding solid and hazardous
5 waste.

## CONCLUSION

For all of the foregoing reasons, the Court DENIES defendants' motion to dismiss for lack of subject matter jurisdiction [Docket No. 3].

**IT IS SO ORDERED.**

Dated: December 3, 2007

SUSAN ILLSTON
United States District Judge

8