Michael S. Biggs (SBN. 237640)
BIGGS LAW PC
PO Box 454
Petaluma, CA 94953-0454
Telephone: (707) 763-8000
Facsimile: (707) 763-8010

Attorney for Plaintiffs
Pinoleville Pomo Nation, Pinoleville Pomo Nation
Environmental Association and Leona Williams

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pinoleville Pomo Nation, Pinoleville Pomo Nation Environmental Association, and Leona Williams, <br><br> Plaintiffs, <br><br> and <br><br> Ukiah Auto Dismantlers, Wayne Hunt, Isabel Lewright, Warrior Industries, Inc., Richard Mayfield, Ross Junior Mayfield, Paula Mayfield, Kenneth Hunt, U.S. Alchemy Corporation, and DOES 1-50, Inclusive. <br><br> Defendants. | Case No.:   C 07-2648 SI <br><br> **Plaintiffs Case Management Statement and Proposed Order** |

PLAINTIFF in the above-entitled action submits this Case Management Statement and

Proposed Order and requests the Court to adopt it as its Case Management Order in this case.

PLAINTIFF has met and conferred with DEFENSE COUNSEL, on Friday December 7, 2007

and understood that parties would exchange drafts and electronicly file a joint case management

conference statement by December 11, 2007.  DEFENSE COUNSEL contacted PLAINTIFFS

COUNSEL via email to advise that DEFENSE COUNSEL had already elected to electronicly

file a 'unilateral' case management conference statement as of 11:42 AM on December 11, 2007.

PLAINTIFFS COUNSEL advised DEFENSE COUNSEL via telephone on December 10, 2007,

that DEFENSE COUNSEL would be contacted by PLAINTIFFS COUNSEL as soon as finished

with appearance in MARIN County Superior Court for purpose of exchanging drafts and

subsequent filing of required "joint case management conference statement".  Herewith

PLAINTIFFS COUNSEL submits its case management conference statement and Proposed

Order.

## DESCRIPTION OF THE CASE

1.     **A brief description of the events underlying the action:**
       **Plaintiffs contend:**

       Plaintiffs PINOLEVILLE POMO NATION, PINOLEVILLE POMO NATION

ENVIRONMENTAL ASSOCIATION and LEONA WILLIAMS (hereinafter collectively

"PLAINTIFFS") bring this action against   Defendants U.S. ALCHEMY   CORPORATION, dba

UKIAH AUTO DISMANTLERS and WAYNE HUNT (hereinafter collectively "Defendants").

       This action arises from long-term, gross, and on-going, violations of federal and state law

as detailed in Plaintiffs original complaint filed on May 18, 2007.

       Moreover evidence indicates Defendants and/or previous owners of Ukiah Auto

Dismantlers (UAD) have deliberately ignored applicable regulations, statutes, and tribal

ordinances as far back as 1997.  Evidence indicates Defendants place their 'business operations"

and "financial bottom-line" above the law, all the while defendants have engaged in a pattern of

"stonewalling" intending and hoping "regulators and authorities" would fade away.

Moreover Defendants have fully taken advantage of having run their operations illegally and in a lazy fare manner on fee-land within the boundaries of an Indian reservation whereas California is a Public Law 280 state.

Public Law 280 since the 1950's has presented serious and systemic problems in "Indian Lands" or lands otherwise known as "Indian Country".

State and local authorities have either been confused or outright deliberately indifferent to state and local governments' responsibilities under Public Law 280 to enforce the state penal code and public health and safety civil statutes and environmental laws both civil and criminal.

This case presents important public policy issues as Indian Country all over the western United States suffers from lack of local enforcement on public health and safety matters. Pollution 'and' Indian lands is unfortunately regarded as "synonymous".

The local Mendocino County authorities namely the recently resigned (2/06) Sheriff Tony Craver and recently deceased District Attorney Norman Vroman for five years ignored PPN's Tribal Government's annual requests to remove marijuana grows and houses operating as centers of methamphetamine production and distribution. The deceased ex-District Attorney formerly convicted of tax evasion who served time in federal prison prior to being elected the District Attorney of Mendocino county ran on a platform in conjunction with former Sheriff Craver on well documented extreme and radical politics calling for minimal or no government regulation and legalization of drugs.

In fact during the reign of Vroman and Craver virtually no environmental cases were prosecuted in Mendocino County and the PPN government after five years of requests to Vroman/Craver to remove major marijuana grows situated all out in the open around properties nearby the UAD site, had to request assistance from main justice in Washington D.C., resulting

1   in eight DEA warrants where finally large quantities of drugs, money and guns were seized and

2   removed from view of families and children and in one case nearby a school bus stop.

3       By way of illustration, the failure of local authorities "under recent previous

4   administrations" to enforce law at PPN with regard to "drugs, money and guns" carries over to

5   the local authority's failure to also enforce environmental laws, leading to the ongoing present

6

7   situation, and thereby legitimizing and explaining how a "rogue" operator such as Defendants

8   could persist with little to no over-site and regulation.

9       For example PLAINTIFFS exhibit 'D' in its original complaint contains emails between

10  Wayne Briley of the Mendocino County Division of Environmental Health and Officer Karen

11
    Maurer of the California Department of Fish and Game.
12

13      In reply to Officer Maurer, Briley insists there are no problems with "UAD". Briley had

14  been previously contacted by PLAINTIFFS counsel in mid-January 2006. Counsel requested

15  Briley look into reports by PPN government that oil had been observed on and off UAD

16
    premises. Briley subsequently never followed up and ignored counsels follow up phone calls.
17

18      PLAINTIFFS counsel also contacted the California Department of Fish and Game and

19  filed a report with the California office of emergency services (OES) as to the non-contained

20  "oil".

21      Subsequently PLAINTIFS counsel contacted a senior EPA official in Washington D.C. on

22
    behalf of the PPN government and requested assistance.
23

24      Shortly thereafter in spite of Briley's "insistence that there were no "problems" with

25  UAD…, a combined inspection and follow up unannounced inspections took place at UAD

26  consisting of representatives of EPA, California Department of Fish and Game and the California

27
    Regional Water Quality Control Board.
28

---

1

2          UAD has also been in violation of its operating permit since 1997.

3   TO WIT:   -Ordered to build privacy fence as permit required by planning office –ignored

4             -Ordered to provide operating plan for storage and disposal of hazardous waste-

5              ignored

6             -Prohibited from altering landscape such that it endangers surrounding properties-

7              violation of permit

8

9

10          In 1997 the CALIFORNIA REGIONAL WATER QUALITY CONTRIOL BOARD

11  (CWRQCB) noted in a report that the "site" meaning UAD "appeared to be filled beyond its

12  normal capacity".  The same report went on to state: " The Ackerman Creek flood control dike

13  prevents erosion at this site, but the site operators ignorance of the SWPP is evidence of an

14  inadequate employee training program".

15          In 2001 the California Integrated Waste Management Board (CIWMB) issued Cleanup

16  and Abatement Order # 2001-010055 concerning UAD.

17          In 2003 according to Mr. Dale Hawley, Code Enforcement Officer for Mendocino

18  County, "Ukiah Auto Dismantlers" is presumed to be in violation of the current zoning laws for

19  storing excess scrap automobiles on the subject parcel".

20          In 2003 EBA   Wastetechnologies  (EBA) in a report prepared for the Pinolville  Pomo

21  Nation government, stated in part;

22   "An auto crusher (UAD) was observed to be located on the west side of the concrete pad. At the time of the
    property inspection there was a layer of dirt and sludge-type materials that covered a majority of the pad surface….
23   The area surrounding the crushing area and concrete pad was observed to have localized oil staining at the time of
    the site investigation….Approximately 200 automobiles were observed in a pile on the northeast corner of the parcel
    that are to be crushed."

(The numbers on the left run 1 through 28 in the margin)

In the same report mentioned above EBA conducted a review of local agency records

which stated in part:

> EBA conducted a file review at the Mendocino County Division of Environmental Health on August 3, 1999, regarding Ukiah Auto Dismantlers. EBA reviewed a Hazardous Materials Business Plan (HMBP), dated November 10, 1997, and a Unified Program Inspection Report (UPIR), dated October 29, 1998. Based on the HMBP, hazardous materials located on this property include diesel fuel, waste unleaded gasoline, used oil, car batteries, compressed oxygen, and propylene gas. Based on the UPIR, issues that needed to be addressed at that time included the need for proper labeling and record keeping of hazardous waste, releases of oil onto the ground in several areas, and improper storage of hazardous waste. EBA spoke with a representative at the Division of Environmental Health stated that these issues remain unresolved at Ukiah Auto Dismantlers and that it is considered a problem site from a regulatory standpoint.
> Based on an October 29, 1998 UPIR, conducted by Roger Foote of the Division of Environmental Health, it was recommended that Ukiah Auto Dismantlers produce completed waste disposal records for the last three years and properly label waste containers, including waste filters and waste coolant. It was also noted that releases of oil or other product were occurring in several places, and that open containers of waste products were observed, and otherwise improperly stored. Based on the UPIR, proper labeling and storage of all containers of hazardous waste was to occur by November 2, 1998.

Moreover, Defendants have been in violation of Division of Environmental Health – Certified Unified Program Agency (CUBA) HAZARDOUS MATERIALS REGULATORY PROGRAMS CUBA   permits at minimum each year 2002 through 2007.

Here said permits are issued based on certification and condition that the applicant and the facility is in compliance with all applicable rules, regulations and laws pertaining to those permitted programs. Clearly DEFENDANTS have not been in compliance with aforesaid conditions.

In light of the breadth of history and facts and potential for public corruption issues and local government indifference,  PLAINTIFFS expect to amend its complaint and raise additional causes of action and name additional defendants and therefore seeks "fast track" and "broad" discovery.

///

**2.    The principal factual issues which the parties' dispute:**
**Plaintiffs:**

DEFENDANTS   position on the factual issues is less than clear as DEFENDANTS have not filed an answer instead choosing 12B (6) motion practice recently before the Court. PLAINTIFFS' position per all of the reasons in the above description of the case, and its original complaint, is that DEFENDANTS made conscious "business" decisions to evade the law, and otherwise was reckless and intentionally  failed to be in compliance with their General Permit and pertinent rules and regulations concerning their operations of UAD.

PLAINTIFFS expect DEFENDANTS to assert they are in compliance with the March 2006 Cleanup and Abatement Order of March 2006.

PLAINTIFF disputes that DEFENDANT is in compliance the March 2006 Cleanup and Abatement Order.

PLAINTIFF contends DEFENDANTS have failed to install asphalt working surfaces to prevent soil and groundwater impacts, and install oil filter equipment and percolation ponds to treat surface water runoff, encourage onsite percolation and minimize offsite discharges.

PLAINTIFF contends DEFENDANTS have re-graded and "pushed soil around but have not taken soil out that has been impacted by hydro-carbons and other materials.

**3.    The principal legal issues which the parties dispute:**
**Plaintiffs:**

A.  All issues raised by DEFENDANTS are in dispute.

---

B. Contemporaneously at hand is the issue of injunctive relief. PLAINTIFF seeks injunctive relief in the form of an order on UAD to cease and desist operations unless in full compliance with all laws, statutes, regulations, codes, and orders.

**The other factual issues which remain unresolved for the reason stated below and how the parties propose to resolve those issues:**

None known at present

**4.    The parties which have not been served and the reasons:**

PLAINTIFF expects to dismiss DEFENDANT ISABEL LEWRIGHT, who has not been served and may be the ex-wife of DEFENDANT WAYNE HUNT.

**5.    The additional parties which the below-specified parties intend to join and the intended time frame for such joinder:**

Plaintiff requires initial fact discovery prior to making determination on joinder of additional defendants.

**6.    The PLAINTIFFS do not consent to assignment of this case to a United States Magistrate Judge for jury trial:**

**7.    The parties have already agreed to the following court ADR process:**

The PARTIES are agreeable to mediation.

**8.    The ADR process to which the parties jointly request referral:**

PLAINTIFF is agreeable to non-binding ADR to conclude by February 8, 2008.

## DISCLOSURES

**9.    The parties certify that they have made the following disclosures:**

**A.    Plaintiffs Initial Disclosure of persons:**

1       1.   All persons currently contemplated are either named plaintiffs or defendants and

2   individuals named in regulatory reports, orders and abatement, and named State, Tribal, and

3   Federal agencies identified in PLAINTIFFS original complaint.

4       2.   PLAINTIFF expects to provide DEFENDANTS with supplemental disclosures

5   arising out of fact discovery.

6

7   **10.    Plaintiffs Initial Disclosure of documents:**
                 **Documents/Things Supporting Plaintiff's Claims:**

8

9       PLAINTIFF has provided DEFENDANTS with documents concerning public agencies

10  reports and investigations of UAD of which are also available in the public domain or referenced

11  in PLAINTIFFS original complaint.

12

13  **11.    Plaintiff's Initial Disclosures of damage computations:**

14    Disclosing plaintiff is making damage claims according to proof at the present time, and

15  therefore has no computations/material related thereto at the present time.

16  **12.    Plaintiff's Initial Disclosures of insurance agreements:**

17

18    Disclosing plaintiffs have no copies of insurance agreements to offer at the present time.

19  **13.    Defendant Initial Disclosure of insurance agreements:**

20  Defendants have not offered copies of insurance agreements concerning the present claims

21

22  **14.**                                   **DISCOVERY**

23

24       Parties are in complete disagreement as to scope and duration of discovery.

25  In light of the time-line on facts relevant to PLAINTIFFS complaint on damages and relief-

26  which preliminary evidence shows goes back to at least 1997, combined with the complexity of

27  the case PLAINTIFF requires enlargement on number of interrogatories, enlargement on number

28

on requests for admissions and depositions. Moreover  DEFENDANTS site requires extensive physical testing and evaluations frequent in number to be determined by engineers and other experts.

Additionally the state Business and Professions § 17200 "unfair –trade" practices has broad discovery provisions afforded PLAINTIFF.

PLAINTIFF's case requires:

One Hundred (100) Interrogatories of each Defendant in any sequence as determined by PLAINTIFF.

One Hundred (100)   Requests for admissions of each Defendant in any sequence as determined by PLAINTIFF.

Thirty (30) Depositions collectively on DEFENDANTS and UAD employees and the employees of business entities related to DEFENDANTS financially or logistically involved with UAD operations, in any sequence as determined by PLAINTIFF.

PLAINTIFFS plan to take depositions of employees of state, local and federal agencies and departments with percipient knowledge of UAD operations, actions and omissions and business practices.

PLAINTIFFS plan to take depositions of former and existing consultants with percipient knowledge of UAD operations, actions and omissions and business practices.

PLAINTIFFS plan to subpoena, from third parties  or otherwise request for production from DEFENDANTS  any and all documents relating to UAD and DEFENDANT'S business practices pursuant to state Business and Professions § 17200 .

PLAINTIFFS plan to issue subpoenas to government agencies and departments concerning production of documents relating to UAD operations, actions and omissions and business practices.

PLAINTIFF requires upwards to ten (ten) business days of unfettered physical access to UAD site, of which to arrange and conduct testing, sampling and engineer's evaluation of UAD site. Fact discovery should begin immediately and fact discovery cut-off should be June 1, 2008.

## TRIAL SCHEDULE

**15.     The plaintiff request a trial date as follows:**

**A. DAMAGES**

This case brings serious environmental issues and public issues. Fact discovery should begin immediately and fact discovery cut-off should be June 1, 2008.

Pending fact discovery cut-off proposed at June, 1, 2008, PLAINTIFF defers to the Court in its discretion to set trial on damages at its earliest convenience but no latter than September 2008.

**B. INJUNCTIVE RELIEF**

PLAINTIFF requests hearing on injunctive relief at Courts earliest convenience but no latter than February 8, 2008 –cease and desist order to be sought by PLAINTIFFS against UAD operations until UAD demonstrates full compliance with all applicable regulations, statutes and orders and agency mandates. Irreparable harm to environment is substantially certain to occur in the event of winter/spring storm conditions resulting in surface water runoff containing hydro-carbons and other hazardous materials   into streams and watershed and adjacent lands presenting risk of harm to fish, wildlife, human habitation and health.  Post-injury damages likely to occur

present inadequate relief thereby necessitating injunctive relief. DEFENDANTS have had since MARCH 2006, to bring UAD into compliance and failed to do so aside from "deminimus" subsequent remedial measures of little significance.

**12.     The parties expect that the trial will last for the following number of days:**

A. Plaintiff expects trial on damages to last 12 to 25 days.

B. Plaintiff expects hearing on injunctive relief to last 3 to 5 days.


Dated:  December 11, 2007

_____     Attorney for Plaintiffs
Michael S. Biggs (SBN. 237640)       Pinoleville Pomo Nation, Pinoleville Pomo Nation
BIGGS LAW PC                          Environmental Association and Leona Williams
PO Box 454
Petaluma, CA 94953-0454
Telephone:  (707) 763-8000
Facsimile:  (707) 763-8010


## CASE MANAGEMENT ORDER

The Case Management Statement and Proposed Order is hereby adopted by the court as the Case Management Order for the case and the parties are ordered to comply with this Order. In addition the court orders:




Dated: _____     _____
                                 Honorable Susan Illston
                                 United States District Judge