Hans W. Herb, Esq. SBN 136018
LAW OFFICES OF HANS W. HERB
P. O. Box 970
Santa Rosa, CA 95402
707/576-0757
707/575-0364 Fax
hans@tankman.com

Attorney for Defendant and
Cross-Claimant, Rick Mayfield

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINOLEVILLE POMO NATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UKIAH AUTO DISMANTLERS, *et al.*,<br><br>Defendants. | Case No.: C-07-2648 SI<br><br>**DECLARATION OF RICK MAYFIELD IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| RICHARD MAYFIELD<br><br>Cross-Claimant,<br><br>v.<br><br>PINOLEVILLE POMO NATION;<br>PINOLEVILLE POMO NATION ENVIRONMENTAL ASSOCIATION;<br>LEONA WILLIAMS; and, UKIAH AUTO DISMANTLERS,<br><br>Cross-Defendants. | Date: June 25, 2008<br>Time: 1:30 p.m.<br>Dept: C, 15th Floor<br><br>Hon, Susan Illston |

I, RICK MAYFIELD, declare:

1. I am a defendant and cross-complainant in the above-referenced matter. I am competent to testify and if called upon to do so, could testify truthfully to the facts contained herein.

2. Attached hereto as Exhibit A is a true and complete copy of a "Revised Flood Hazard Report for #MS 81-83 Johnson," the property identified as the Mayfield

property in the present litigation. The report was prepared by Taggart Engineering on July 18, 1984 for the then owner of the property, Don Johnson. It was provided to me as part of the purchase of interest related to the property. The report notes the 1960's levee construction, consisting of "pilings, cables and wire mesh installed along the levee were constructed along the Pinoleville Indian Reservation property and was built to the elevation of 631 feet more or less, being about one foot above the 1964 flood high water."

3. In my inquiries concerning the property over the last several years, I noted a number of abandoned automobiles along the levee with cables strung through them. The cars appear to be of an older vintage, perhaps in the 1940s and 1950s. In inquiries to the prior property owner and others, I was told that these automobiles had been placed there by the Pinoleville Pomo Nation ("PPN") in order to protect the levees, as part of the flood control project referred to in this report. Anecdotal information provided to me also indicated that the seams in the car bodies were filled with lead in as part of the manufacturing process.

4. The line of automobiles buried in the creek exists from a point several hundred feet upgradient from the property identified as the Mayfield property to a point several hundred feet down gradient. At different times of the year, different parts of the auto bodies are showing, depending upon the level of flow in the creek and the amount of debris moving through the area.

5. I have always done everything requested by my neighbors to try to be a good and clean neighbor. Although I initially had nothing to do with owning this property, or being a part of this neighborhood, I have tried to fit in and be a good neighbor.

6. As an example, the document attached hereto as Exhibit B is a true, correct and complete copy of a letter I received from the California Regional Water Quality Control Board, North Coast Region ("RWQCB"). In the May 19, 2008, letter, the

1. Board notes that I have done more than what was required of me to comply with the Board's orders.

7. For example, on our behalf, we have: built an oil-water separator; redirected all water to flow around us, instead of through the yard; installed covered secondary fuel and oil containment area with concrete floor; repaved the work area; removed County of Mendocino Abatement Program cars from our property; built a covered equipment parking area with a concrete floor; installed a poly-lined oil separator at takes-all-work area water; and, covered all non-operating vehicles with tarps.

8. Further, on behalf of Ukiah Auto Dismantlers ("UAD"), my company installed containment ponds; constructed a new building for processing vehicles; removed approximately 450 yards of dirt around the wok area; and installed a paved area around a work building to redirect water to a filter before emptying into a pond.

9. Finally, on behalf of the PPN, my company helped clean up trash around members' housing and hauled the trash to the dump. We cleaned up the salvage yard on Plaintiff Leona Williams' property, including approximately 20 cars, motors, oil, paint, trash, batteries, fertilizer, acetone and antifreeze (the chemicals were in open drums with no lids). I was never paid in full for this work. We also paved the Pinoleville Headstart School area, for which I was not paid.

10. The Mayfield property has had no regular active industrial operations since the early 1990s (approximately 1991). The only use we have made of the property is the storage and minor maintenance of construction vehicles. The only other use of the property has been the temporary storage of salvaged automobiles on our property pending disposal.

11. In particular, at times the county has received grants for aggressive automobile abatement programs. At these times, the number of vehicles brought to UAD for recycling has expanded the capacity of UAD to process. On these occasions, we previously allowed the federal, state and local officials to use portions of our property to store vehicles being processed.

12. As soon as we were informed to stop the practice, we removed the stored vehicles from our property as promptly as reasonably possible.

13. In addition, when the officials of the RWQCB or the county came to our property to inspect, we always asked if there was anything more we should be doing to comply. To my knowledge, we have done everything we were asked to do.

14. As an example, although it was not related to the Cleanup and Abatement Order, the RWQCB noted a fuel facility on our property that could be upgraded with additional containment. We made the suggested improvement immediately.

15. Since the start of this process up until today, I have never been told of anything more that I should be doing to improve my compliance. The only thing I have not done is sign the property over to Leona Williams (which I cannot do because I do not currently own the property.)

16. In my discussions with the plaintiffs, I have said I would be happy to sell my portion of the property for just what I owe to others on it (well below market cost). The only response I received was that if I gave it to the PPN, I could keep my current operations exactly as is for a person's lifetime. I explained that I owed more and had no way to sell the property anyway, as I do not own it personally.

17. As soon as I refused to give my property to the plaintiffs, I was notified that I was now named in this motion. Prior to this time, I was told I was not part of the motion and that it only involved the UAD defendants.

18. Over the last several years, we have done several cleanup projects for the PPN. Usually, we had to wait for payment until the PPN was able to receive funding. As of today, there is approximately $10,000-15,000 in outstanding invoices for work we performed for the PPN but were never paid for by the PPN.

19. We also have been actively working to keep the entire rancheria property clean, as it is in our best interest to do so. We own our property and want it to be valuable. It is not valuable if the neighborhood is unkempt.

20. Although I have tried to be a good neighbor to the PPN, my efforts have not always been reciprocated. As an example, the PPN has allowed large amounts of waste to accumulate on its property. Further, it has allowed waste to run off its property and onto our property. Based on the presence of known leaking fuel tanks on the PPN property, it appears they are actually polluting our property.

21. I would like an opportunity to have an informal dispute resolution process to this claim as soon as possible. The harm and expense caused by the actions of the plaintiffs has caused me and my family significant emotional and financial distress.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of June, 2008, at Ukiah, California.

Rick Mayfield

CASE NO. C-07-2648 SI
DECLARATION OF RICK MAYFIELD IN OPPOSITION
TO MOTION FOR PRELIMINARY INJUNCTION

5