Hans W. Herb, Esq. SBN 136018
LAW OFFICES OF HANS W. HERB
P. O. Box 970
Santa Rosa, CA 95402
707/576-0757
707/575-0364 Fax
hans@tankman.com

Attorney for Defendant and
Cross-Claimant, Rick Mayfield

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINOLEVILLE POMO NATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UKIAH AUTO DISMANTLERS, et al., <br><br> Defendants. | Case No.: C-07-2648 SI <br><br> **DECLARATION OF HANS W. HERB IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| RICHARD MAYFIELD <br><br> Cross-Claimant, <br><br> v. <br><br> PINOLEVILLE POMO NATION; PINOLEVILLE POMO NATION ENVIRONMENTAL ASSOCIATION; LEONA WILLIAMS; and, UKIAH AUTO DISMANTLERS, <br><br> Cross-Defendants. | Date: June 25, 2008 <br> Time: 1:30 p.m. <br> Dept: C, 15th Floor <br><br> Hon, Susan Illston |

I, HANS W. HERB, declare:

1. I am attorney at law, duly licensed to practice before all state and federal courts in the State of California. I am competent to testify and, if called upon to do so, could testify truthfully to the facts contained herein.

2. I am counsel for defendant and cross-complainant Rick Mayfield.

3.     I noticed the deposition of the person most knowledgeable ("PMK") within the Pinoleville Pomo Nation Environmental Association ("PPNEA") via the true and correct copy of the notice attached hereto as Exhibit A. I noticed the deposition at the Law Offices of Christopher Neary in an effort to accommodate various parties' schedules.

4.     On April 7, 2008, approximately 30 individuals arrived, purporting to be the PMK regarding the issues in plaintiffs' complaint. After lengthy discussions, I eventually took the deposition of several of these individuals. (See Exhibit B, true and correct copies of portions of the deposition.)

5.     During the course of the deposition, I was informed that Donald Smith Williams is the brother of Leona Williams. (See Exhibit C, true and correct copies of portions of the deposition.) I was informed that Donald Smith Williams is the individual responsible for organizing and operating the PPNEA. *Id.*) It was represented that members of his immediate family are also members of the PPNEA. (*Id.*) I was also told no specific problems had been identified relative to alleged environmental contamination.

6.     The individual plaintiff in this case, Leona Williams, has represented to me, my clients, and the community at large, that she is the duly elected tribal chairperson of the Pinoleville Pomo Nation ("PPN"). In all of our dealings with the PPN, Ms. Williams has consistently been represented as being the tribal chairperson. All of my research in this matter has confirmed that she is the tribal chairperson. In all of our meetings, Leona Williams has represented herself as being the sole leader and party responsible for the management of the PPN. I have uncovered no evidence to suggest anyone other than Ms. Williams is the leader of this nation.

7.     In conducting my research for this opposition, I reviewed various publicly available sources of information. While searching the internet, I located a site described as "Pinoleville.org." It purports to be the official website of the PPN. True and correct copies of several pages of the website are attached hereto as Exhibit D. As can be

seen from the photos and commentary on page three, the PPN indicates that a levee was built when "tribal members sunk old automobiles tied together by cables that make the levees." It also notes, "It is not known if the automobiles were completely drained of fluids before they were used for the levee."

8. In further discussing this levee with other individuals, including my client, I am told that anecdotal reports suggest that the vehicles were sealed using lead and "bondo" in order to limit rusting and water intrusion.

9. The document attached hereto as Exhibit E is a true and correct copy of a report captioned, "Final Report Phase II Environmental Investigation for the Pinoleville Indian Reservation, Ukiah, California," prepared for the "Pinoleville Indian Reservation" by "Vector Engineering, Inc.," of Grass Valley, California. This report was contained in plaintiffs' exchange documents in the matter of *Pinoleville v. Ukiah Auto Dismantlers* ("UAD") at document 276, *et seq.*[1]

10. Attached hereto as Exhibit F is a true and correct copy of a letter from the California Regional Water Quality Control Board ("RWQCB") to my client dated May 19, 2008. The letter notes my client has performed improvements beyond those required to obtain compliance with the RWQCB's directives.

11. Since the inception of this case, it has always been represented to me, as counsel for Rick Mayfield, that Rick Mayfield's role in this case, if any, was de minimus. Immediately upon receipt of documentation confirming my involvement in the matter, I attempted to contact counsel for plaintiffs to determine what would be necessary to resolve the matter short of litigation. I was assured from that point forward that the real "bad actor" was UAD and that my client's involvement, if any, was minimal.

12. I attempted to meet with the plaintiffs on a number of occasions to find out what would be necessary to resolve the matter without the need for litigation. However, all efforts to do were thwarted by either people with a lack of authority being available to

resolve the matter, or because no specific demand was ever provided as to what we were supposed to do in order to resolve the matter.

13. As is documented in our cross-complaint, the only possible resolution, according to the plaintiffs, was for us to give our property to the plaintiffs (Leona Williams or her association or some other entity) and we would be allowed to continue a life estate on the property with our operations exactly as they are today. When we asked if there was something specific that needed to be done, rather than simply turning our property over to a private plaintiff, we were informed that there was nothing necessary for us to do since the "bad actor" was UAD.

14. As a result of the repeated assertions by plaintiffs that our client was not a meaningful target in the case (and perhaps should not even have been in the case at all), we withheld virtually all litigation efforts in order to allow the true "litigants" involved in the preliminary injunction to conduct the necessary discovery. I made it clear at the depositions in this matter that we were reserving the right to proceed with our discovery following the discovery related to the injunctive action.[2]

15. At no point in the process of dealing with the Court or counsel was it ever suggested that our client would be involved in this preliminary injunction motion process. Instead, it was always represented that our client's role, if any, would simply be as a neighbor and observer in the cleanup process. Our client was never identified as even a participant in the motions related to any cleanup at the PPN.

16. I have no reason for knowing why the plaintiffs have refused to serve Ross Mayfield, Jr. According to the information provided by plaintiffs, Ross Mayfield, Jr., is the only individual currently on title at the Mayfield property. Ross Mayfield, Jr., is a public figure and is well known throughout the Ukiah Valley.

---

[1] Although I have the report, I was never provided with any initial disclosures on behalf of plaintiffs, and I have never received any documents beyond the referenced report.

[2] The only reason I noticed any deposition (that of the PPNEA) was to try to determine who was a member of the association in order to see of some remedy could be achieved through them.

CASE NO. C-07-2648 SI
DECLARATION OF HANS W. HERB IN OPPOSITION                                                            4
TO MOTION FOR PRELIMINARY INJUNCTION

17. On May 31, 2008, I drove through Ukiah on my way to an engagement. Along the way, I noticed numerous "Ross Mayfield, Jr. for Supervisor" signs, including the true and correct copy of a picture of one of the signs, attached hereto as Exhibit G.

18. At one point several months ago, plaintiffs' counsel did tell me that he had been looking for Ross Mayfield, Jr., but had no way to know where to locate him. At that point, I faxed him the information we had, which indicated that Ross Mayfield, Jr.'s office address was listed prominently in public records. Notwithstanding the foregoing, as of today, I do not believe Ross Mayfield, Jr., has even been contacted, let alone served (or even has knowledge of) this lawsuit.

19. On April 7, 2008, I took the deposition of the PPNEA PMK regarding the health and safety issues in this lawsuit. True and correct portions of the deposition are attached hereto as Exhibit H. When I asked the deponent if he knew of anyone who had ever complained of being harmed from alleged environmental contamination at the site, he indicated, "No."

20. I am registered with the State of California Environmental Protection Agency as a Registered Environmental Assessor. I obtained my registration in March of 1995 as REA No. 06175. I have been continuously registered since that time.

21. I have worked on environmental cases since the mid-1980s. I first worked on environmental cases in Florida in 1987. I was admitted to the California Bar in 1988. I have practiced environmental law since that time. I have also worked on environmental cases in Arizona (admitted to the Arizona Bar in 1989) and Washington State (admitted to the Washington Bar in 1990).

22. Over the past 20 years, I have been involved in numerous aspects involving the regulation and cleanup of sites similar to those involved in this matter.

23. In my experience, this case stands out as an example of positive, pro-active activities being undertaken by the responsible parties. Nothing I have seen suggests any urgency other than to take my client's property.

24. Rick Mayfield has always been willing to do what he can to comply with environmental mandates. He has also been a good neighbor to all of his neighbors, If there is some specific activity that Rick Mayfield has been asked to complete and has not completed, I do not know of it. Rick Mayfield has always been ready, willing and able to do whatever he can to resolve this matter amicably.

25. I request the Court hold an initial Case Management Conference, order all parties to be served and order this matter to some court-ordered alternative dispute resolution. I believe the matter could easily be resolved without further court process if a little judicial attention were focused on the management of this process.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Santa Rosa, California, this 10 day of June, 2008.

/s/
_____
Hans W. Herb