EXHIBIT C

*PINOLEVILLE POMO NATION, et al.   vs.   UKIAH AUTO DISMANTLERS, et al.*
Deposition of PMK--Pinoleville Pomo Nation Environmental Association
April 7, 2008

| | |
|---|---|
| 1  UNITED STATES DISTRICT COURT<br>2  NORTHERN DISTRICT OF CALIFORNIA<br>3  ---oOo---<br>4  PINOLEVILLE POMO NATION,   )<br>   et al.,               )<br>5                          )<br>       Plaintiffs,       )<br>6                          )<br>   vs.        ) Case No. C-07-2648 SI<br>7                          )<br>UKIAH AUTO DISMANTLERS,   )<br>8  et al.,               )<br>                         )<br>9      Defendants.     )<br>   _____)<br>10<br>11<br>12<br>13<br>14      DEPOSITION OF ALICIA WEBB<br>15      Monday, April 7, 2008<br>16          1:32 p.m.<br>17<br>18<br>19<br>20  Reported by:<br>21  LUEL J. SIMSON, CSR No. 4720<br>22<br>23  _____<br>          **SIMSON REPORTING**<br>24    **Certified Shorthand Reporters**<br>       **2200 Range Avenue, Suite 102**<br>25     **Santa Rosa, California  95403**<br>            **(707) 578-7580**<br><br>                                    57 | 1  A P P E A R A N C E S--(Cont'd.)<br>2<br>3  For the Defendant, RICHARD MAYFIELD:<br>4    Law Offices of HANS W. HERB<br>     Post Office Box 970<br>5    Santa Rosa, California  95402<br>6    By:  HANS W. HERB, Esq.<br>7<br>8  Also Present:<br>9    MARCY BARRY<br>     DAVID EDMUNDS<br>10   WAYNE HUNT<br>     RYAN MAYFIELD<br>11   GEORGE PROVENCHER<br>     HALEY WEBB<br>12   HANNAH WEBB<br>     LEONA WILLIAMS<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br><br>                                    59 |
| 1  BE IT REMEMBERED THAT, pursuant to Notice of<br>2  Taking Deposition of Person Most Knowledgeable and Demand<br>3  for Documents, on Monday, April 7, 2008, commencing at the<br>4  hour of 1:32 p.m., thereof, at the Law Offices of<br>5  CHRISTOPHER J. NEARY, 110 South Main Street, Suite C,<br>6  Willits, California, before me, LUEL J. SIMSON, CSR<br>7  No. 4720, State of California, personally appeared:<br>8<br>9         ALICIA WEBB,<br>10  called as a witness by the Defendant RICHARD MAYFIELD; who,<br>11  having been duly sworn by me, was thereupon examined and<br>12  testified as is hereinafter set forth:<br>13         ---oOo---<br>14      A P P E A R A N C E S<br>15  For the Plaintiffs:<br>16    BIGGS LAW, PC<br>      Post Office Box 454<br>17    Petaluma, California  94953<br>18    By:  MICHAEL S. BIGGS, Esq.<br>19<br>20  For the Defendant, UKIAH AUTO DISMANTLERS, WAYNE HUNT and<br>    U.S. ALCHEMY CORPORATION:<br>21<br>      Law Offices of CHRISTOPHER J. NEARY<br>22    110 South Main Street, Suite C<br>      Willits, California  95490<br>23<br>      By:  CHRISTOPHER J. NEARY, Esq.<br>24<br>25  (Continued....)<br><br>                                    58 | 1        I N D E X<br>2<br>3  WITNESS:                    PAGE<br>4  ALICIA WEBB<br>5    Examination by Mr. Herb        62<br>6    Examination by Mr. Neary       83<br>7    Further Examination by Mr. Herb   99<br>8    Examination by Mr. Biggs      105<br>9    Further Examination by Mr. Neary  107<br>10   Further Examination by Mr. Biggs  111<br>11<br>12<br>13  DEFENDANTS' EXHIBITS:<br>14  1  Four-page Notice of Taking       61<br>       Deposition of Person Most<br>15     Knowledgeable and Demand<br>       for Documents<br>16<br>17  2  One-page handwritten list of     79<br>       names<br>18  3  Six pages of Environmental       83<br>       Commission Meeting Minutes<br>19     dated July 2007, August 2007,<br>       November 2007 and January 2008<br>20<br>21<br>22<br>23<br>24<br>25<br><br>                                    60 |

*PINOLEVILLE POMO NATION, et al.   vs.   UKIAH AUTO DISMANTLERS, et al.*

Deposition of PMK--Pinoleville Pomo Nation Environmental Association

April 7, 2008

| | |
|---|---|
| 1    (Defendants' Exhibit No. 1 was | 1   asking for the most knowledgable person to appear here for |
|      marked for identification.) | 2   the Association. |
| 2  | 3        Have you reviewed the Notice of Taking a |
| 3  | 4   Deposition? |
| 4        MR. HERB:  The first thing we have to do, before | 5        A.   What's that? |
| 5   we swear the witness, is the court reporter is required to | 6        Q.   I'm going to show you what we've marked as |
| 6   record the name of everybody who is present.  So if we | 7   Defendants' Exhibit No. 1, which is the Notice of Taking of |
| 7   could go around the room and identify ourselves so that we | 8   Deposition. |
| 8   can put it on the record. | 9        Have you seen that document before? |
| 9        MR. NEARY:  Starting with me, I'm Christopher | 10        A.   No. |
| 10  Neary, appearing for Ukiah Auto Dismantlers and Wayne Hunt. | 11        MR. BIGGS:  By the way, if I may jump in.  Could |
| 11        MR. HERB:  And I'm Hans Herb; I'm here on behalf | 12   you please speak in a very loud voice. |
| 12  of Rick Mayfield. | 13        THE WITNESS:  Okay. |
| 13        DAVID EDMUNDS:  David Edmunds, Environmental | 14        MR. BIGGS:  Because this is the Certified |
| 14  Director of Pinoleville Pomo Nation. | 15   Shorthand Reporter and she has to take down every word you |
| 15        GEORGE PROVENCHER:  George Provencher, Director of | 16   say and she has to hear you precisely. |
| 16  Tribal Operations. | 17        THE WITNESS:  Okay. |
| 17        LEONA WILLIAMS:  Leona Williams, Tribal | 18        MR. BIGGS:  Thank you. |
| 18  Chairperson of Pinoleville Pomo Nation. | 19        Thank you, Mr. Herb. |
| 19        ALICIA WEBB:  Alicia Webb, Environmental | 20        THE WITNESS:  No, I've never seen it. |
| 20  Association. | 21   BY MR. HERB: |
| 21        RYAN MAYFIELD:  Ryan Mayfield. | 22        Q.   You understand you're here because there's a |
| 22        MR. BIGGS:  Michael Biggs, attorney for | 23   lawsuit filed by an association that you're a part of? |
| 23  plaintiffs, et al. | 24        A.   Yes. |
| 24        WAYNE HUNT:  Wayne Hunt. | 25        Q.   Have you read the lawsuit? |
| 25        MARCY BARRY:  Marcy Barry. | |
| 61 | 63 |
| 1        MR. HERB:  I'm sorry, but we have to have the -- | 1        A.   Yes. |
| 2        ALICIA WEBB:  Okay.  Hannah Webb; H-a-n-n-a-h. | 2        Q.   Is there anything that's contained in the papers |
| 3        MR. NEARY:  What's her age? | 3   that have been filed for the lawsuit that's inaccurate or |
| 4        ALICIA WEBB:  Six. | 4   incorrect? |
| 5        MR. NEARY:  Hi, Hannah. | 5        A.   That is inaccurate or -- what did you say? |
| 6        ALICIA WEBB:  And Haley, H-a-l-e-y.  She's two and | 6        Q.   Inaccurate or incorrect. |
| 7   a half. | 7        A.   Not that I'm aware of. |
| 8        MR. NEARY:  Haley.  You're the one we're going to | 8        Q.   So everything in the Complaint that your |
| 9   want to question. | 9   association has filed is true? |
| 10        MR. HERB:  Okay.  I guess we're ready to swear the | 10        A.   Yes. |
| 11   witness. | 11        Q.   Before I get to the specific allegations, what I'd |
| 12  | 12   like to do is take a few minutes to go over the ground |
| 13        ALICIA WEBB, | 13   rules of this deposition with you and then to go over a |
| 14        having been first duly sworn, was | 14   little of your background so we can understand your ability |
| 15        examined and testified as follows: | 15   to give us testimony here today. |
| 16  | 16        What is your age? |
| 17        EXAMINATION | 17        A.   Thirty-one. |
| 18   BY MR. HERB: | 18        Q.   What is your educational background, beginning |
| 19        Q.   Could you state your name, please. | 19   with high school? |
| 20        A.   Alicia Webb. | 20        A.   A graduate from high school, graduate of two-year |
| 21        Q.   Ms. Webb, have you ever had your deposition taken | 21   college. |
| 22   before? | 22        Q.   Which two-year college? |
| 23        A.   No. | 23        A.   Western Institute of Science and Health, in |
| 24        Q.   You are appearing in this case pursuant to a | 24   Rohnert Park. |
| 25   Notice of Deposition that I filed on behalf of my client | 25        Q.   When was that? |
| 62 | 64 |

*PINOLEVILLE POMO NATION, et al. vs. UKIAH AUTO DISMANTLERS, et al.*
Deposition of PMK--Pinoleville Pomo Nation Environmental Association
April 7, 2008

| | |
|---|---|
| 1   A.   I graduated -- I believe it's '98. | 1   Q.   Well, if you haven't had your deposition taken |
| 2   Q.   Have you been to any other schools? | 2   before, let me just tell you a little bit about the |
| 3   A.   Just Santa Rosa J.C., for a semester. | 3   process. We're all here in a conference room in |
| 4   Q.   So other than high school and the schools you've | 4   Mr. Neary's office, but the testimony you're giving today |
| 5   referred to, you haven't been to any other special | 5   is the same as if you were giving it in court. |
| 6   training? | 6       There's no judge here to rule on any kind of |
| 7   A.   No. | 7   motions or objections, so what we'll do is, if there's |
| 8   Q.   Have you ever been employed? | 8   something that's disagreeable, one or more of these lawyers |
| 9   A.   Yes. | 9   may impose an objection, say, "I object to that." But |
| 10  Q.   Where was your employment, starting from your | 10  since there's no one here to answer the objection, what |
| 11  first employment? | 11  will happen is then you'll answer the question and later |
| 12  A.   Let's see. High school, I worked for Healdsburg | 12  on, if the judge rules that the objection should be |
| 13  Physical Therapy as an aide. And then, after high | 13  sustained, then the testimony will be stricken. |
| 14  school -- because I did that through high school -- I also | 14  A.   Uh-huh. |
| 15  worked as a bellhop at Madrona Manor for a short period. | 15  Q.   Our purpose in taking the deposition today is to |
| 16  And then I worked after high school for Sanderson Ford just | 16  try to find out information regarding the lawsuit that |
| 17  shortly. I worked at the Healdsburg Animal Shelter. And | 17  you've filed against my client. |
| 18  that's it. | 18  A.   Uh-huh. |
| 19  Q.   Have you ever worked for the Pinoleville Tribe | 19  Q.   I am going to ask you questions and, when you |
| 20  before? | 20  respond, as you just did by an "Uh-huh" or an "Huh-uh" -- |
| 21  A.   Not worked. Just volunteer or.... | 21  A.   Uh-huh. |
| 22  Q.   Okay. So other than the jobs you've described, is | 22  Q.   -- it's hard for the court reporter to take that |
| 23  there anywhere else that you've worked? | 23  down, so I'm going to ask, if possible -- |
| 24  A.   And, you know, also when I graduated college, I | 24  A.   Okay. |
| 25  started my own business of home care for seniors so I was | 25  Q.   -- that you complete -- wait until I complete my |
| 65 | 67 |
| 1   self-employed. | 1   question and then answer outward affirmatively. |
| 2   Q.   Do you have any licenses other than a driver's | 2   A.   Okay. |
| 3   license? | 3   Q.   Sometimes it's hard to get used to it, but just |
| 4   A.   No. Business license. | 4   imagine if someone is writing down everything we're saying, |
| 5   Q.   What kind of business license? | 5   which is what's happening; if we're both talking at the |
| 6   A.   Just for what I -- my home care for seniors. | 6   same time, it's hard to get that recorded. |
| 7   Q.   And is that your current occupation? | 7       Also, it's natural for people to anticipate what |
| 8   A.   No; I'm a homemaker now. | 8   someone is saying and want to finish their statement and |
| 9   Q.   And I guess these are your children that are here? | 9   answer the question, but that creates a problem not only |
| 10  A.   Yes. | 10  for the record but can create a miscommunication as to what |
| 11  Q.   Is that all of them or is there more? | 11  my question is. |
| 12  A.   No; that's it. | 12      So what I'd like you to do is wait until I ask a |
| 13  Q.   Okay. Where do you live? | 13  question, find out what the answer to that question is and |
| 14  A.   Cloverdale, California. | 14  then respond to that question, like I said, out loud. |
| 15  Q.   Where else have you lived? | 15      And if you don't understand something I said, just |
| 16  A.   I grew up in Healdsburg. Born in Ukiah, I grew up | 16  ask me to repeat or rephrase the question. |
| 17  in Healdsburg, and now I live in Cloverdale. | 17  A.   Okay. |
| 18  Q.   Where in Ukiah did you live? | 18  Q.   When did you first have any contact or |
| 19  A.   North State -- north end of Ukiah. I don't | 19  communication with the Pinoleville Pomo Nation |
| 20  remember my address. North State Street, I think it was. | 20  Environmental Association? |
| 21  Q.   When was that? | 21  A.   When I was asked to be on the board. June, I |
| 22  A.   I was born here; I believe we moved to Healdsburg | 22  believe, of '06. |
| 23  when I was in the third grade. | 23  Q.   Who asked you to be on the board? |
| 24  Q.   Did you ever live in the Pinoleville reservation? | 24  A.   My dad asked if I wanted to be on the board with |
| 25  A.   No. | 25  him. |
| 66 | 68 |

*PINOLEVILLE POMO NATION, et al.  vs.   UKIAH AUTO DISMANTLERS, et al.*
Deposition of PMK--Pinoleville Pomo Nation Environmental Association
April 7, 2008

| | |
|---|---|
| 1  Q.  And who is your father? | 1  Q.  Okay.  So you agreed to become a member of the |
| 2  A.  **Don Williams.** | 2  Association? |
| 3  Q.  And is Don Williams also known as -- | 3  A.  **Yes, yes.** |
| 4  **Don Smith Williams.** | 4  Q.  And then what did you have to do to be a member of |
| 5  Q.  Yes.  And is Don Williams related to Leona | 5  the Association? |
| 6  Williams? | 6  A.  **Nothing.  Just come to our first meeting and....** |
| 7  A.  **Yes.** | 7  Q.  When was the first meeting? |
| 8  Q.  What is the relationship? | 8  A.  **I believe it was in June.** |
| 9  A.  **Brother, sister.** | 9  Q.  Of '06? |
| 10  Q.  So you're Chairperson Williams' brother's | 10  A.  **Yeah.  The month he asked me, I believe that's** |
| 11  daughter? | 11  **when it was.** |
| 12  A.  **Yes.** | 12  Q.  Where was the meeting? |
| 13  Q.  Do you have any other brothers or sisters? | 13  A.  **At the tribe, the tribal office.** |
| 14  A.  **Yes.** | 14  Q.  On Pinoleville Road? |
| 15  Q.  What are their names? | 15  A.  **Yes.** |
| 16  A.  **Donna Williams, Carrie Williams, Joseph Williams,** | 16  Q.  How many people were there? |
| 17  **Sheryl Dominguez and Theresa Williams.** | 17  A.  **Four.** |
| 18  Q.  Do you know if they're members of the Association, | 18  Q.  Who were they? |
| 19  too? | 19  A.  **David Edmunds, Erica, my dad, and I.** |
| 20  A.  **No.** | 20  Q.  How long did the meeting last? |
| 21  Q.  No, they're not? | 21  A.  **Probably about 45 minutes or so, I think.** |
| 22  A.  **They are not, no.** | 22  Q.  What was -- |
| 23  Q.  And when your father asked you to be a member of | 23  A.  **I think I can look at -- I think I have this in my** |
| 24  the Association, what did he say? | 24  **minutes, if you'd like me to look.** |
| 25  A.  **He just said do I want to be involved with the** | 25  Q.  Okay.  Let me ask you this, while you're looking |
| 69 | 71 |
| 1  tribe, and I said, "Yes."  And he said, you know, "We're | 1  at your notes there.  Did you look at any other documents |
| 2  starting an environmental board, committee, do you want to | 2  in preparation for today's deposition? |
| 3  be on it with me," and I said, "Yes." | 3  A.  **No.** |
| 4  Q.  And did he ask you if there was any -- or did you | 4  Q.  Other than your notes, those are the only ones? |
| 5  ask you or was there any discussion about any | 5  A.  **Yes.** |
| 6  qualifications for being on the board? | 6  Q.  And how many pages are those notes? |
| 7  A.  **No.** | 7  A.  **Just five.** |
| 8  Q.  You said this was in '06? | 8  Q.  When were those notes made? |
| 9  A.  **Yes, I believe so.** | 9  A.  **Well, we get them after every meeting, David** |
| 10  Q.  Did he mention the formation of the Association in | 10  **Edmunds E-mails them to me and I have them on my computer** |
| 11  conjunction with any other event or any other cause that | 11  **of what we went over in our meeting.** |
| 12  the Association was being formed for? | 12  Q.  Okay.  And are these documents that are going to |
| 13  A.  **No.** | 13  be produced in response to our document request, do you |
| 14  Q.  How long was your conversation with him about the | 14  know? |
| 15  Association, your first conversation? | 15  A.  **I don't know.  They're just -- they're my personal** |
| 16  A.  **Probably as long as it took to ask the question** | 16  **notes from the meeting.  I don't know.  I don't know, no** |
| 17  **and I said, "Yes."** | 17  **one has told me.** |
| 18  Q.  What was the next thing that happened? | 18  Q.  Okay.  But you're going to be relying on those |
| 19  A.  **I don't know.  Probably just regular conversation.** | 19  notes to give your testimony? |
| 20  Q.  Not the next thing that happened in your | 20  A.  **No.** |
| 21  conversation, the next thing that happened related to the | 21  Q.  Okay.  But you looked at those notes to give your |
| 22  Association. | 22  testimony. |
| 23  A.  **I don't know.  I don't remember.** | 23  A.  **No; I just brought them just for, I guess, to show** |
| 24  Q.  So -- | 24  **that we actually had meetings and....** |
| 25  A.  **I guess rephrase what you mean.** | 25  Q.  Okay.  So you're intending to produce those, then. |
| 70 | 72 |

*PINOLEVILLE POMO NATION, et al.   vs.   UKIAH AUTO DISMANTLERS, et al.*
Deposition of PMK--Pinoleville Pomo Nation Environmental Association
April 7, 2008

| | |
|---|---|
| 1   I'm not trying to trick you with any of these | 1   That's what we discussed. |
| 2   questions -- | 2   Q.   Okay. A couple of things you said. "Near our |
| 3   A.   Yeah, yeah. | 3   reservation." Are you a member of the tribe? |
| 4   Q.   -- I'm just trying to find out -- we asked for | 4   A.   Yes. |
| 5   documents to be produced and you're bringing documents -- | 5   Q.   And then was there any discussion at that point |
| 6   MR. BIGGS: Mr. Herb, you can have copies of | 6   about existing environmental problems on the reservation? |
| 7   those. | 7   A.   Yes. |
| 8   MR. HERB: All right. | 8   Q.   What were those discussions? |
| 9   Q.   So what was discussed at the first meeting? | 9   A.   The wrecking yard right outside the offices where |
| 10   A.   Can I look, then? | 10   it was brought up -- the drums, the 50-gallon drums, I |
| 11   Q.   Sure. | 11   guess is how big it is, of hazardous material. |
| 12   A.   I don't know. | 12   Q.   What was the discussion about them? |
| 13   I believe -- I know that we -- we started talking | 13   A.   Just that they're near our premises and, if |
| 14   about hazardous materials. David had given my dad a | 14   anything ever happened, we would have somebody qualified |
| 15   resource book on hazardous materials handling equipment. | 15   to, you know, be there to help. You know, if it came |
| 16   He -- my dad also gave David some contacts for | 16   over -- if there was an accident, I guess, you know. |
| 17   Hazmat training for tribal members, and David Edmunds was | 17   Q.   You also mentioned the Army Corps of Engineers. |
| 18   going to follow up on that. | 18   Is that the first time you'd ever heard of the Army Corps |
| 19   And then my dad was going to go -- was told about | 19   of Engineers? |
| 20   the government reimbursement funding, he wanted -- let's | 20   A.   Myself, yes. |
| 21   see. | 21   Q.   Do you know if any members of the tribe have any |
| 22   And my dad, Don, just wanted David to look through | 22   contact with the Army Corps of Engineers? |
| 23   the catalog of Hazmat equipment, order the basics; masks, | 23   A.   No, I don't know. |
| 24   gloves, boots. | 24   Q.   In that first meeting, was there discussion about |
| 25   And my dad, Don, would like to come with the | 25   prior environmental efforts by the tribe? |
| 73 | 75 |
| 1   Pinoleville -- the tribe staff to walk on the creek with | 1   A.   Yes. My dad and I actually -- and I can't |
| 2   Fish and Wildlife on August 14th and 15th. He wants to | 2   remember what year it was. Probably -- it was before 2000, |
| 3   move ahead with contacts with the Army Corps on funding a | 3   I know that. We met with my cousin, actually. Her name is |
| 4   cleanup and rehabilitation project. | 4   Chris Childress, she was studying environmental in school, |
| 5   And Don, my dad, wanted to make sure we have fire | 5   and she actually -- we walked the creek with her. |
| 6   extinguishers ready for electrical fires. | 6   And we were just -- we just walked the property |
| 7   And our meeting was a half an hour. | 7   and, you know, just -- we were just -- that's kind of when |
| 8   Q.   Just so I understand. It was you, Dr. Edmunds, | 8   we kind of knew we're headed in that direction to get a |
| 9   your father -- and who was the...? | 9   committee together, but it was a while ago before that. |
| 10   A.   Erica. I don't know her last name. Erica. | 10   Q.   Now, I know the tribe got an environmental grant |
| 11   There's just a couple of Ericas, so I just know Erica by | 11   in '97 to investigate the creek. Could that have been |
| 12   her face. | 12   what -- |
| 13   Q.   Okay. And what -- I mean, what was the -- it | 13   A.   It might have been. I don't remember what year it |
| 14   sounds like what you were describing was a fire | 14   was. It might have been. |
| 15   organization. Is that what they were concerned about, was | 15   Q.   And was there discussion -- I know in those |
| 16   fires? | 16   environmental reports that the tribe said that the tribe |
| 17   A.   No. We -- all I can kind of remember about -- I | 17   had buried a number of automobiles in the creek. |
| 18   know that, from what I can remember, where the freeway | 18   MR. BIGGS: Objection; it calls for a conclusion, |
| 19   comes along our reservation, I know that trucks with | 19   leading. |
| 20   hazardous material can go past, and we wanted to be able to | 20   BY MR. HERB: |
| 21   have on staff here, on-call ready if something were to | 21   Q.   Okay. There's no one here to answer that |
| 22   happen near our reservation on -- you know, on the freeway. | 22   objection, but it's on the record, so if you can answer the |
| 23   So if something were to happen -- or even on the | 23   question. |
| 24   reservation itself, we would have somebody with hazardous | 24   A.   Can you say it again. |
| 25   material experience on hand, on-call ready to be there. | 25   Q.   Let me ask it a different way. |
| 74 | 76 |

*PINOLEVILLE POMO NATION, et al.   vs.   UKIAH AUTO DISMANTLERS, et al.*
Deposition of PMK--Pinoleville Pomo Nation Environmental Association
April 7, 2008

**Page 77**

1    In that '97 report that was -- the grant was given
2  for, the tribe made reference that there was -- the tribe
3  had buried a string of automobiles in the --
4    MR. BIGGS: Objection. Assumes facts in evidence.
5    MR. HERB: Okay.
6    Q.  At any rate, what I'm asking is, in that first
7  meeting of the Environmental Association in 2006, did they
8  refer to the work that had been done in 2007 [*sic*], that
9  had identified the problem that the tribe had reported in
10  1997?
11    MR. BIGGS: Objection; calls for hearsay as to
12  "they." They're not here today.
13  BY MR. HERB:
14    Q.  Okay. If you know.
15    A.  No, not -- no.  Not that I know of.
16    Q.  So no one at the 2006 meeting said, "We already
17  did a study in" --
18    A.  No, no.
19    Q.  Other than the auto dismantler and the trucks
20  going by on the freeway, what other kinds of environmental
21  concerns were identified?
22    A.  In our first meeting?
23    Q.  Yes.
24    A.  That was all that was discussed in our first
25  meeting.

**Page 78**

1    Q.  And then the notice that we received from your
2  lawyer said that you were being designated to tell us about
3  the Association's history, so I just want to make sure.
4  That was the very first meeting of the Environmental
5  Association?
6    A.  Yes.  In fact, it was on July of 2007.
7    Q.  July of 2007 or 2006?
8    A.  Seven.  Actually, our first -- when we started, it
9  was '06, June of '06.  But our meeting on this one is July
10  of '07, the one I read to you.
11    Q.  Okay.  So about three months after you filed this
12  lawsuit against my client, you had this meeting?
13    A.  I'm not sure when our very, very first actual
14  meeting was.  I just have '07 here.
15    Q.  Okay.  Well, the designation said you're the
16  expert on the Association history, so I'm just trying to
17  find out from you --
18    MR. BIGGS: Objection; it doesn't say she's the
19  expert.  In fact, I had said on the record that Dr. Edmunds
20  is the one who will give the, if you want to call it,
21  expert testimony on the history.
22    I think that you may want to direct questions to
23  Dr. Edmunds, you know, for the total history.  I think you
24  may find that people have come and gone into the
25  Association.

**Page 79**

1    MR. HERB: Okay. I'm going to mark this as
2  Defendants' Exhibit 2, which is -- I'm going to represent
3  that this document is what was provided to me at the
4  beginning of this deposition as responsive to our earlier
5  discussions this morning, which were discussing my Notice,
6  and I asked for the specific people to be identified.
7    I'll leave it to the Court to determine what the
8  representations were.  But I just want that on the record,
9  that it was represented to me or my understanding of taking
10  this deponent's deposition was that she was going to give
11  me the history of the Association.
12    (Defendants' Exhibit No. 2 was
13    marked for identification.)
14  BY MR. HERB:
15    Q.  Is there someone you know, Ms. Webb, that's more
16  knowledgable than you about the Association's history?
17    A.  David Edmunds.
18    Q.  And do you know how your name came to be placed on
19  this list as being the most knowledgable person to the
20  Association's history?
21    A.  No.
22    Q.  Did you put it on there?
23    A.  No.
24    Q.  Did you ever represent to anyone that you were the
25  most knowledgable person as to the Association's history?

**Page 80**

1    MR. BIGGS: Objection as to definition of "most
2  knowledgable person."
3    MR. HERB: Well, our Deposition Notice was for the
4  most knowledgable person.
5    MR. BIGGS: We had a long conversation on the
6  record, and I also told you that, being that it took so
7  long to get this started, two individuals had to leave to
8  go tend to the Head Start School. So they would have been
9  on this list but they're not here because we started this
10  thing at 11:00 and we never got into the substance of it
11  until 15 minutes ago and now they had to go back to the
12  school.
13    MR. HERB: So --
14    MR. BIGGS: So we had -- at one time, we had 30
15  people outside; and, now that time has gone by, they're all
16  gone. She's one of the few people that remains.
17  BY MR. HERB:
18    Q.  So I guess what I'm asking is -- and maybe -- the
19  two people that your lawyer is talking about that aren't
20  here, they are the most knowledgable person, then, as to
21  the Association history. Is that right?
22    A.  I believe David Edmunds is the most knowledgable
23  person.
24    Q.  So do you know any reason that we couldn't get the
25  history of the Association from someone who is here now?

*PINOLEVILLE POMO NATION, et al.*  vs.   *UKIAH AUTO DISMANTLERS, et al.*

Deposition of PMK--Pinoleville Pomo Nation Environmental Association

April 7, 2008

1  A.  Can you rephrase.

2  Q.  Is somebody gone that we would need to have here

3  in order to get the history of the Association?

4  A.  No.

5  Q.  Is there someone more knowledgable than

6  Mr. Edmunds and you as to the --

7  A.  No.

8  Q.  So what I'm asking you is -- you know, at the

9  beginning of the deposition, you told me you hadn't

10  reviewed the Deposition Notice, and then you said your name

11  didn't -- you didn't put your name on as the most

12  knowledgable person, and I'm asking if you know how your

13  name was offered up as the most knowledgable person --

14      MR. BIGGS:  Objection.

15  BY MR. HERB:

16  Q.  -- regarding the Association.

17      MR. BIGGS:  There's nothing on Defendants'

18  Exhibit 1 that indicates that she is the most knowledgable

19  person.  You're assuming facts that aren't in evidence

20  here.

21      They're not here.  I don't see anywhere on this

22  where it says, "Alicia Webb."

23      It says, "Alicia Webb -- Association History."

24  She's telling you from the basis of her personal knowledge,

25  which is the foundation for her to give testimony today,

81

1  her perception of the history, which is what is in her own

2  personal knowledge.

3      MR. HERB:  Okay.

4      MR. BIGGS:  That's what she's doing.

5  BY MR. HERB:

6  Q.  I'm not trying to trick anyone.  I'm just trying

7  to get to the bottom of this.  And that's fine.  If you're

8  going to represent to me that you're not the most

9  knowledgable person here today to talk about the

10  Association history -- is that true?  You're not the most

11  knowledgable person?

12  A.  That's true.

13  Q.  And is someone more knowledgable than you here

14  right now?

15  A.  Yes.

16  Q.  Okay.  And so if I was to ask about the

17  Association's history, you believe I'd be better off to

18  talk to Dr. Edmunds.  Is that correct?

19  A.  Yes.

20  Q.  Okay.

21      I'm not sure if it makes sense for me to ask any

22  more questions of this deponent.  Do you have any

23  questions?

24      MR. NEARY:  Yes, I have a few questions.  First,

25  May I see your notes.

82

1      (Witness provides notes to Mr. Neary.)

2      MR. NEARY:  Is it all right if we have these

3  marked?

4      MR. BIGGS:  Yeah; if we could make copies and

5  such, fine.

6      THE REPORTER:  Is it all right to mark this or

7  would you prefer a copy be marked?

8      MR. BIGGS:  A copy marked.

9      Oh, wait.  I'm sorry.  If those -- it's fine to

10  mark those.  You don't have to mark a copy.  I'm just

11  saying we just need a copy that has been marked.

12          (Defendants' Exhibit No. 3 was

13              marked for identification.)

14

15              EXAMINATION

16  BY MR. NEARY:

17  Q.  Hi.  My name is Chris Neary, and I'm representing

18  Ukiah Auto Dismantlers and Wayne Hunt.

19      We've marked Exhibit 3, which you've brought here

20  with you today.  Let me understand.  Was it your

21  understanding that the meeting that you held in June of

22  2006 was the first meeting of the Association?

23  A.  I don't remember if that was our first meeting.

24  That's when we first agreed to start the Association.  I

25  don't remember when our exact first meeting was.  That's

83

1  just when we formed it; my dad asked me and I said, "Yes,"

2  I'd be on the --

3  Q.  So it was your understanding that there had been

4  no meetings prior to that June --

5  A.  Yes, that was my understanding.

6  Q.  Okay.  And when was the next meeting after the

7  June 2006 meeting?

8  A.  I don't remember.

9  Q.  Were minutes kept of all of the meetings?

10  A.  Yes.

11  Q.  Were minutes kept of the June 2006 meeting?

12  A.  I'm assuming so.

13  Q.  But you don't have those.

14  A.  I don't.

15  Q.  And this Exhibit 3, these are minutes that have

16  been sent to you by David?

17  A.  David Edmunds.

18  Q.  David Edmunds.  And they -- they represent all of

19  the -- first of all, they represent all of the meetings of

20  the Association?

21  A.  Those are not all of the meetings, I don't

22  believe.

23  Q.  Okay.  So you think there was other meetings.

24  A.  Yes.

25  Q.  Do you know when the first meeting occurred where

84