EXHIBIT H

# PINOLEVILLE POMO NATION, et al. vs. UKIAH AUTO DISMANTLERS, et al.
## Deposition of PMK—Pinoleville Pomo Nation Environmental Association
### April 7, 2008

```
                    INDEX

WITNESS:                                    PAGE
  DAVID PONTON
    Examination by Mr. Herb                  118
    Examination by Mr. Neary                 168
    Further Examination by Mr. Herb          186


DEFENDANTS' EXHIBITS:
  4    31 pages of miscellaneous             156
       documents produced by David
       Ponton consisting of bylaws,
       minutes, monthly reports and
       an ordinance
```
Page 117

```
 1   MR. HERB: Okay. We're back on the record.
 2   Would you swear the next witness, please.
 3
 4                  DAVID PONTON,
 5          having been first duly sworn, was
 6          examined and testified as follows:
 7
 8                  EXAMINATION
 9   BY MR. HERB:
10   Q.  Could you state your name and spell it, please.
11   A.  David Ponton; D-a-v-i-d, P-o-n-t-o-n.
12   Q.  Mr. Ponton you've been produced here today
13   pursuant to a Deposition Subpoena that I filed on behalf of
14   my clients, which are -- or my client, which is Mr. Rick
15   Mayfield. And I'd like to show you a document that's been
16   marked as Defendants' Exhibit 1 and ask you if you're
17   familiar with that document?
18   A.  Yes, I'm familiar with it.
19   Q.  When did you first see that document?
20   A.  The first time I had seen this document was
21   Saturday.
22   Q.  And who showed you that document?
23   A.  Mr. Biggs.
24   Q.  Did you review --
25   A.  I mean, I'd heard about it previous, but the
```
Page 118

```
 1   actual document itself, the first time I seen it was
 2   Saturday.
 3   Q.  Okay. And did you review it on Saturday?
 4   A.  Yes; I looked through it on Saturday.
 5   Q.  And, as you can see from the Notice, we were
 6   asking the Association, the Pinoleville Pomo Nation
 7   Environmental Association, to produce the most knowledgable
 8   person regarding certain allegations in the Association's
 9   Complaint.
10       Did you read that?
11   A.  Yes, I did.
12   Q.  And are you familiar with the Complaint that's
13   been filed by the Association in this case?
14   A.  Yes.
15   Q.  Have you read the Complaint?
16   A.  Yes, I read the Complaint.
17   Q.  Is everything in the Complaint true?
18   A.  Yes.
19   Q.  And you know on personal knowledge that there's
20   nothing wrong in the Complaint?
21   A.  Not as far as I know.
22   Q.  Okay. And one of the things we asked for is the
23   person that was most knowledgable as to certain aspects of
24   the Complaint, and then we were given a document earlier
25   today that indicated you were the most knowledgable person
```
Page 119

```
 1   in the Association with regard to health and safety. Is
 2   that correct?
 3   A.  Yes.
 4   Q.  So your involvement with the deponent -- in this
 5   case, the deponent being the Association -- is you are
 6   being produced as the most knowledgable person regarding
 7   the health and safety issues in the Complaint. Is that
 8   correct?
 9   A.  Yes.
10   Q.  All right. Have you ever had your deposition
11   taken before?
12   A.  No, I haven't.
13   Q.  Are you familiar with the deposition process?
14   A.  No, not really.
15   Q.  Okay. What's going to happen here is we're in an
16   informal setting in Mr. Neary's office, but the testimony
17   that you're taking here today is the same as if it was
18   being given in a court of law before a judge.
19   A.  Uh-huh.
20   Q.  The court reporter here is going to take down your
21   testimony and you've been sworn to tell the truth, just as
22   you would be --
23   A   Right.
24   Q.  -- in front of a judge or jury. Because the court
25   reporter is taking everything down, she can only take down
```
Page 120

property.

A. I'd like to consider being good neighbors and not being pollutants.

Q. But is that -- you consider that property to be within the reservation?

A. It is in the boundary of the reservation.

Q. That's your understanding. Is that correct?

A. Yes.

Q. So when you say that the intention of the Association or the goal or objective of the Association is to restore the property back to its natural condition, is that being --

A. Pollutant --

Q. ceasing the business activities on those parcels?

A. No.

Q. Okay. I just have a few more questions, and I thank you for your patience. I know it's probably not pleasant. But do you know of anyone who has claimed to have suffered any health benefit as a result of pollution anywhere on the reservation?

A. Personally, no.

Q. And you've not even heard of anyone complaining.

A. No.

Q. Have you ever heard of anyone being concerned about their health as a result of pollution located

184

```
 1  anywhere within the boundaries of the reservation?
 2      A.   Not firsthand, no.
 3      Q.   Have you heard it secondhand?
 4      A.   No.
 5      Q.   Okay.  Now, are you a member of the Pomo Nation?
 6      A.   No, just an employee.
 7      Q.   Okay.  And it's the same answer; you're not a
 8  member of a tribe.
 9      A.   No.
10      Q.   And are you a Native American?
11      A.   No.
         MR. HERB:  I do have two or three questions.
         MR. NEARY:  Okay.  I'm almost done here.
        Q.   Have you ever heard of there being concentrations
    of mercury anywhere within the boundaries of the
    Pinoleville reservation?
        A.   I've heard that there's mercury and lead.
        Q.   Where did you hear that?
        A.   From Mr. Biggs.
        Q.   Is that just today?
        A.   No.
        Q.   Okay.  You heard it earlier?
        A.   Yes.
        Q.   When is the first time you heard that?
        A.   Saturday.
```

185