CHRISTOPHER J. NEARY
Attorney at Law, #69220
110 South Main Street, Suite C
Willits, CA 95490

(707) 459-5551

Attorney for defendants, U.S. ALCHEMY CORPORATION,
dba UKIAH AUTO DISMANTLERS and WAYNE HUNT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| PINOLEVILLE POMO NATION, PINOLEVILLE POMO NATION ENVIRONMENTAL ASSOCIATION and LEONA WILLIAMS,<br><br>Plaintiffs,<br><br>v.<br><br>UKIAH AUTO DISMANTLERS, WAYNE HUNT, ISABEL LEWRIGHT, WARRIOR INDUSTRIES, INC., RICHARD MAYFIELD, ROSS JUNIOR MAYFIELD, PAULA MAYFIELD, KENNETH HUNT, U.S. ALCHEMY CORPORATION and DOES 1-50, Inclusive,<br><br>Defendants. | Case No. C 07-02648 EMC<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PRELIMINARY INJUNCTION<br><br>Accompanying Papers:<br>1. Objection to Declaration of George Provencher;<br>2. Declaration of Don McEdwards;<br>3. Declaration of Wayne Briley;<br>4. Declaration of James McCleary;<br>5. Declaration of Wayne Hunt;<br>6. Declaration of Christopher J. Neary; and<br>7. [Proposed] Order Denying Injunction.<br><br>Hearing:<br>Date: June 25, 2008<br>Time: 1:30 p.m.<br>Judge: The Honorable Susan Illston |
|---|---|

C. J. NEARY
ATTORNEY AT LAW
110 SOUTH MAIN STREET,
SUITE C
WILLITS, CALIFORNIA 95490
(707) 459-5551

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

I.   INTRODUCTION .................................................... 1

    A.   Parties ...................................................... 1

    B.   The Action. .................................................. 1

II.  FACTUAL RECITATION ............................................ 2

III. LEGAL ARGUMENT ................................................ 7

    A.   Plaintiff Has Not Established Irreparable Harm ................. 7

    B.   The Hardships, Once Balanced, Favor UAD ..................... 9

    C.   Plaintiff Seeks to Disrupt the *Status Quo* Rather
        Than Preserve It ............................................ 9

    D.   The Court Should Take Account of the Public Interest ........... 10

IV.  CONCLUSION .................................................... 11

C. J. NEARY
ATTORNEY AT LAW
110 SOUTH MAIN STREET,
SUITE C
WILLITS, CALIFORNIA 95490
(707) 459-5551

-i-   MEMORANDUM OF POINTS AND AUTHORITIES
      IN OPPOSITION TO PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. U.S.*
   612 F.2d 1112 (9th Cir. 1979) .................................................. 9

*Caribbean Marine Service, Inc. v. Baldridge*
   844 F.2d 688 (9th Cir. 1988) .................................................. 8

*Midgett v. Tri-County Metro Transportation District of Oregon*
   254 F.3d 846 (9th Cir. 1988) .................................................. 8,9

*United States v. First National City Bank*
   (1965) 379 U.S. 378 .......................................................... 10

**Statutes**

California Business and Professions Code
   § 17200 (Unfair Business Practices Act) ...................................... 2

California Government Code
   § 8550 ....................................................................... 3

Clean Water Act ................................................................. 1, 3

Resource Conservation Recovery Act .............................................. 1, 3

C. J. NEARY
ATTORNEY AT LAW
110 SOUTH MAIN STREET,
SUITE C
WILLITS, CALIFORNIA 95490
(707) 459-5551

-ii-   MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PRELIMINARY INJUNCTION

# I. INTRODUCTION

## A. Parties.

The three plaintiffs are related. PINOLEVILLE POMO NATION ("PPN") is a band of approximately 240 American Indians recognized as a sovereign Indian Tribe. Plaintiff PINOLEVILLE POMO NATION ENVIRONMENTAL ASSOCIATION ("PPNEA") is an unincorporated association comprised of the control group of PPN. Plaintiff LEONA WILLIAM, "Chairperson Williams," is the chairperson of PPN, and she sues in her individual capacity on various state claims.

Defendant WAYNE HUNT ("HUNT") is the owner of the auto recycling business sued as Defendant UKIAH AUTO DISMANTLING ("UAD"). The owners of an adjoining commercial property, Warrior Industries Inc., Rick Mayfield, and Ross Mayfield (who is unserved) are also sued and are collectively referred to herein as "MAYFIELD."

HUNT and MAYFIELD own their property comprising approximately 5 acres each, in fee simple ownership, although the PPN "Reservation" comprising approximately 100 acres overlaps the boundaries of the Hunt and Mayfield properties, the reservation having been formed in 1979. When the reservation was formed, some of the parcels, including those of Defendants HUNT and MAYFIELD were owned by non-members in PPN in fee ownership.

## B. The Action.

Plaintiffs as adjoining landowners oppose commercial operations by non-tribal members within the reservation. Furthermore, PPN aspires to terminate the fee ownership interests of non-tribal members, giving rise to much of the motivation for this lawsuit.

Plaintiffs' application seeks issuance of a preliminary injunction *pendente lite* requiring Defendants to "Cease and Desist from all industrial operations," to permit access to the properties for "over sixty days," and to perform certain tasks to the subjective satisfaction of the Plaintiffs.

The Complaint alleges violation of the Clean Water Act (Complaint, ¶¶ 23, *et seq.*); violation of the Resource Conservation Recovery Act (Complaint, ¶¶ 33 *et seq.*); violation of the Unfair Business Practices Act, California Business and Professions Code § 17200 et seq. (Complaint

C. J. NEARY
ATTORNEY AT LAW
110 SOUTH MAIN STREET.
SUITE C
WILLITS, CALIFORNIA 95490
(707) 459-5551

-1- MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PRELIMINARY INJUNCTION

¶¶ 48 *et seq.*); violation of statute, (Complaint, ¶¶ 54 *et seq.*); Negligence (Complaint ¶¶ 64 *et seq.*); Nuisance, (Complaint, ¶¶ 68, et seq.); Trespass (Complaint ¶¶ 90 et seq.).

Plaintiffs seek an order of this Court ordering Defendant UAD to cease all business operations pending trial. Although the UAD site is under active regulation by the North Coast Regional Water Quality Control Board ("Regional Water Board") Plaintiffs express self serving dissatisfaction with the Regional Water Board's regulation. In conclusionary manner Plaintiff's application essentially asserts that UAD has not responded to the May 2006 Cleanup and Abatement Order ("CAO") issued by the Regional Board prior to Plaintiffs' Notice of Intent sent in September 2006 and the May 2007 filing of this lawsuit. In contrast, the Declaration of Wayne Hunt at ¶¶ 10-13; and declaration of Don McEdwards at ¶¶ 11, 12 recount capital improvements made by UAD in response to the CAO. The existence of these capital improvements rebut the Plaintiff's impertinent and inaccurate characterizations that UAD has ignored the CAO.

The application falls well short of the standard for issuance of extraordinary relief because it fails to provide admissible evidence to support its relief; and fails to meet Rule 65 criteria for issuance of injunctive relief as a legal matter. Strikingly the requested relief would change rather than preserve the *status quo* by requiring Defendant UAD to cease its business activities.

Procedurally, the case was filed May 2007, based upon a Citizens Notice of Intent to Sue sent in September 2006. Plaintiff has vacated injunction hearing dates set by the Court in January 2008, March 2008 and April 2008. Trial is set for October 20, 2008. Plaintiff has not followed through with any effort for mediation.

## II.  FACTUAL RECITATION.

UAD operates an auto recycling facility on land owned by it in fee simple pursuant to a use permit issued by the County of Mendocino. (Hunt Dcl. ¶3). UAD receives wrecked and abandoned vehicles at its facility which are crushed onsite and transported as scrap metal for reprocessing. (Hunt Dcl. ¶3).

Hunt acquired UAD in 2001 after the facility had been in operation for approximately ten (10) years. (Hunt Dcl. ¶¶ 2,3). The UAD facility is downgradient from

C. J. NEARY
ATTORNEY AT LAW
110 SOUTH MAIN STREET,
SUITE C
WILLITS, CALIFORNIA 95490
(707) 459-5551

-2-  MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PRELIMINARY INJUNCTION

property owned by PPN. The upgradient PPN property was formerly operated as a lumber yard (Hunt Decl., ¶20). The Mayfield property is downgradient from the UAD facility. PPN also owns property downgradient from the Mayfield property.

On New Years' Day 2006 a 500 year storm hit Northern California causing widespread flooding and damage. On January 2, 2006, Governor Schwarzenegger declared seven Northern California counties, including Mendocino County, a Disaster Area pursuant to the California Emergency Services Act, (California Government Code §§ 8550, *et seq.*). Unprecedented flooding occurred on Plaintiff's property as well as Defendants' property. The pictures attached to the Complaint as Exhibit 20 thereto containing twenty photographs depict the immediate aftermath of this major flood.

Plaintiff Williams filed complaints with the Regional Board and the Environmental Protection Agency in January 2006 several days after this 500-year flood. The complaint led to an immediate response by the Regional Board and EPA which made several site visits to the UAD site in January 2006.

On March 30, 2006 the Regional Board issued a Cleanup and Abatement Order ("CAO") to UAD and MAYFIELD. The CAO required several short term abatement actions including installation of an on site stormwater runoff containment; general cleanup and temporary containment for auto crushing. The Order also contained development of a plan notably requiring construction of a permanent containment for auto crushing and a collection containment for rainfall runoff and various generalized improvements in operating procedures such as would typically be addressed in a Stormwater Pollution Prevention Plan.

In September 2006 Plaintiff served on UAD a Notice of Intent pursuant to the Clean Water Act (Complaint, Ex. A) and the Resource Conservation Recovery Act ("RCRA") (Complaint, Ex. B). Defendant UAD challenged the adequacy of the broadly stated and generalized notices by Motion to Dismiss which the Court denied.

C. J. NEARY
ATTORNEY AT LAW
110 SOUTH MAIN STREET,
SUITE C
WILLITS, CALIFORNIA 95490
(707) 459-5551

-3- MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PRELIMINARY INJUNCTION

In May 2007 after UAD had been actively responding to the CAO under the supervision of the Regional Board, and after a delay of eight months Plaintiffs filed this action.[1]

In response to the May 2006 CAO, UAD has substantially upgraded its facility. It has constructed two catchment basins which operate to eliminate stormwater discharge from its facility.[2]

It is noteworthy that Plaintiffs' main complaint with UAD appears to be that NEST Environmental Services which UAD retained to upgrade its Stormwater Pollution

---

[1] Plaintiffs who carry the burden of proof as to the urgency of circumstances supporting their application for extraordinary relief have delayed at every turn. Plaintiffs delayed in bringing this action after serving its Notice of Intent for seven months; delayed in serving defendants, and has indulged the patience of the Court and defendants by setting and then postponing its application for extraordinary relief in January 2008, again in March 2008 and again in April 2008. Indeed the belated application filed in May 2008, a year after filing the action, and on the virtual eve of the trial scheduled for October 2008 purports to describe conditions which Plaintiffs apparently did not feel as being so imminent and grave as to motivate a more crisp and jaunty schedule. Plaintiffs' self inflicted delays undermine their asserted requirement for extraordinary relief of this Court.

[2] In January 2008 Plaintiffs, in order to support their December 2007 announcement that they would seek an injunction, conducted an investigation in the vicinity in the midst of a major storm event. Although the application recounts their findings as to the characterization of the stormwater leaving the Mayfield property and the upgradient PPN property, the Plaintiff's application fatally fails to describe stormwater discharge from the UAD property. In keeping with its policy of filing numerous complaints with various agencies PPN filed a complaint with the Mendocino County Department of Environmental Health which responded during the height of the January 2008 storm. The Hazmat Field Inspector dispatched to the UAD property observed that the UAD catchment basins constructed by UAD prior to the filing of this suit were operating to prevent **all** stormwater discharge from the UAD property. (Briley Dcl., ¶7). The stormwater characterized in Plaintiffs application were taken downgradient from UAD's property mostly included discharge from PPN's upgradient property previously used as an industrial facility. See McEdwards Decl., ¶¶ 14-16.

C. J. NEARY
ATTORNEY AT LAW
110 SOUTH MAIN STREET,
SUITE C
WILLITS, CALIFORNIA 95490
(707) 459-5551

-4-   MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PRELIMINARY INJUNCTION

Prevention Plan is not a licensed engineer. To support its motion plaintiffs do not offer evidence from its consulting engineer, Joaquin Wright, but that of George Provencher, an employee of Plaintiff with no qualification whatsoever to offer conclusions as to site conditions. (See Objection to Decl. George Provencher).

Furthermore, Plaintiffs offer the testimony of Mr. Provencher to create the impression that there is "alarming" pollution on the UAD Property.

However, Mr. Provencher being inexperienced in the analysis of lab reports, mis-identifies the detection limit as being the "pollution quantity limits." (McEdwards Decl., ¶¶ 6,7). Therefore all of Mr. Provencher's analysis upon which Plaintiffs rely as to the existence of polluted stormwater emanating from UAD's facility is fatally flawed.

UAD in response to the CAO constructed a large metal building with secondary containment to conduct automobile crushing activities. (see Hunt Dcl.¶12) which is depicted as Exhibits 8-10 to the McEdward's Declaration.

UAD in response to the CAO excavated the soil where the crushing activities were previously conducted by UAD and its predecessor operators; (Hunt Dcl. ¶15); characterized the soil under the supervision of the Regional Board (Hunt Dcl. ¶15) and prepared the site for encapsulation by paving. Because the Regional Board wanted to conduct its own soil characterization at the site, the encapsulation was delayed in the Summer of 2007 to the dry season of 2008 (Hunt Decl., ¶15). Immediately upon the approval of the Regional Board the subject area will be encapsulated. Because the characterization was completed by the Regional Board by an action for which notice to the public was required to be given, (Hunt Dcl. ¶16), the encapsulation was delayed to the dry season of 2008. It is entirely possible that the encapsulation will have been completed by the time of this hearing on Plaintiff's Application, on the simple inertia of compliance with the CAO.

UAD in response to the CAO updated its Stormwater Pollution Prevention Plan

C. J. NEARY
ATTORNEY AT LAW
110 SOUTH MAIN STREET,
SUITE C
WILLITS, CALIFORNIA 95490
(707) 459-5551

-5-   MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PRELIMINARY INJUNCTION

("SWPP"). The Regional Board in furtherance of the iterative process has required additional soil testing and improvement of the SWPP. In response to the Regional Board's exercise of its regulatory prerogative, UAD has secured professional assistance in updating its SWPP, retaining an engineer, Don McEdwards, (McEdwards dcl. ¶5, and Fred Martin, the founder of NEST Environmental Services, Inc., a well recognized consulting firm providing environmental assistance to the California Auto Recyclers Industry. (see NEST website at www.environmental.com).

Contrary to Plaintiff's hyperbolic representations and characterizations to this Court in its application that UAD has "defied" the Regional Board; has engaged in a "cat and mouse game;" has moved in a "Great Big Circle," UAD has substantially upgraded its facility in response to the CAO. Plaintiff's belated and hyperbolic characterizations that UAD has essentially done nothing are supported only by its characterizations which it invites this Court to accept as a rhetorical substitute for evidence. Plaintiffs characterizations stand in contrast to the evidence in the record that UAD is not in violation of the CAO, has complied with the CAO; and has effectively eliminated all stormwater discharge from its property.

In short, the UAD performance indicates that there is no need for the intervention of this Court, or for the installation of the PPN as an overlapping regulatory body. This is particularly so as Plaintiffs have numerous conflicts of interest by which it would be impossible to determine whether its *ad hoc* regulation was furthering public or private purposes. Furthermore, there is no reason that the public health advanced as the purported justification for the Plaintiff's application will not be adequately protected by the regulatory oversight of the Regional Board.

In addition, it is apparent from the record that Plaintiff's interest in evicting non PPN members from reservation boundaries trumps Plaintiff's purported environmental fears and renders its motivations as suspect and prejudiced. Supporting the notion that

C. J. NEARY
ATTORNEY AT LAW
110 SOUTH MAIN STREET,
SUITE C
WILLITS, CALIFORNIA 95490
(707) 459-5551

-6-   MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PRELIMINARY INJUNCTION

Plaintiff aspires to acquire the UAD property is the fact that it conducted a Phase II investigation of the soil subsurface and groundwater of the UAD property in 2003 with grant money. (See Decl of Christopher Neary, Ex. 1, the "Vector Engineering Report"). Noteworthy is the fact that UAD cooperated with PPN by permitting access to UAD property to conduct substantial environmental investigation. Particularly noteworthy is the fact that the Vector Engineering Report found, at p.8, §5.1 as follows:

> "No evidence of subsurface contamination was observed during the field investigation, either within the drilling cuttings, soil samples, or within the groundwater samples. In addition, no evidence of surface contamination, such as significant fuel spills or obvious waste materials, was observed within the vicinity of the boring locations, although minor waste products were present in the area. On a larger scale, some fuel spills on the ground were observed in areas outside of the immediate drilling area, typical of the type of spill expected within an automobile dismantling yard. These spills, however, did not appear to represent large volume spills that would have resulting in long term ponding and possible infiltration of large quantities of liquid waste products."[3]

## III. LEGAL ARGUMENT

**A.     Plaintiff Has Not Established Irreparable Harm.**

In order to make a prima facie showing for entitlement for extraordinary relief Plaintiff it is axiomatic that the application must establish through admissible evidence irreparable harm. Plaintiff's application does not draw a causal connection between the requested relief and any articulated harm.

The only expert testimony supporting the application is that of Joaquin Wright whose declaration is silent as to the connection between the requested relief for the

---

[3] The report also found that all inorganics in the groundwater were below detection limits with the exception of cadimium, and that levels of chromium, nickel and zinc exceeded maximum contaminant levels or secondary drinking water standards. See ¶5.2.1. However, none of the conditions described in the quoted finding, *supra*, support a causal relationship between activities on the UAD site and groundwater conditions.

C. J. NEARY
ATTORNEY AT LAW
110 SOUTH MAIN STREET,
SUITE C
WILLITS, CALIFORNIA 95490
(707) 459-5551

-7-   MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PRELIMINARY INJUNCTION

immediate closing of Defendant UAD's business and any articulated harm which would be addressed. It would be fair to characterize the aggregate declarations as speculating that there is contamination upon the UAD property and that the contamination might reach the groundwater.

The aggregate declarations do not individualize Defendant UAD's property. In fact the Plaintiff's showing goes only so far as to establish that there was stormwater discharge from the Mayfield Property at the height of a storm. The defect of that showing is that it only documents the quality of stormwater originating on the property of Plaintiff and other commercial and industrial users in the vicinity. (See McEdwards Dcl ¶¶14-16 and Ex.3). Furthermore, it is likely that none of that stormwater tested by Plaintiff's expert originated on the UAD property, because UAD in response to the CAO installed collection ponds which operated to contain the UAD stormwater on site. (See Hunt Dcl. ¶13; Briley Decl.¶7).

Other than the unqualified testimony of George Provencher, Plaintiff rests its case upon its questionable speculation that the stormwater in question originates on UAD property, or speculation that conditions upon the UAD property might contaminate groundwater. In that the central requirement of "harm" is reached only through speculation, the applicant fails to meet its burden.

The application does not differentiate either the UAD Property or the Mayfield Property from any property where petroleum products are used or stored. Furthermore, the application does not "*demonstrate* immediate threatened harm." *Caribbean Marine Services Inc. v. Baldridge* 844 F2d 688, 674 (9th cir. 1988) (emphasis in the original) The establishment of even irreparable harm in the future is insufficient without a showing that the harm is imminent. *Midgett v. Tri-County Metro Transportation District of Oregon* 254 F3d 846, 850-851. (9th. Cir. 1988). Any question of imminency is dispelled by the simple fact that Plaintiff delayed bringing this application for over a year after filing its complaint, and

C. J. NEARY
ATTORNEY AT LAW
110 SOUTH MAIN STREET.
SUITE C
WILLITS, CALIFORNIA 95490
(707) 459-5551

-8-   MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PRELIMINARY INJUNCTION

now brings it on the virtual eve of trial. While a lack of quality evidence might be understandable for an application brought immediately on filing, Plaintiff initiated this litigation over a year ago and has no such excuse.

The application fails because it does not establish any harm, irreparable or otherwise. All it establishes is that there are pollutants originating from some source. It does not establish that the existence of these pollutants are harmful, in the past, present or future. It rests instead upon the unqualified opinion of an employee of Plaintiff who expresses "alarm" and confuses the detection limit with a safety level. (See generally the declaration of George Provencher and McEdwards Decl. ¶¶6,7.)

**B.    The Hardships, Once Balanced, Favor UAD.**

Plaintiff's Application seeks the immediate closure of Wayne Hunt's business which he operates as his livelihood. ( Hunt Dcl.¶5). That this would have a devastating impact upon Mr. Hunt need not be documented further.

In contrast, Plaintiff's failure to establish particularized harm demonstrates that the Plaintiff would gain nothing from the requested relief other than the upper hand in its neighborhood dispute with its neighbors. Furthermore, the application fails to draw a connection between the speculated harm and the relief. Would closing the business provide any benefit to anyone? In fact UAD's business revenues support UAD's compliance with the Regional Board regulatory effort. Closure of the business would disrupt the response to regulation. How would Plaintiff be benefitted?

**C.    Plaintiff Seeks to Disrupt the *Status Quo* Rather Than Preserve It.**

"Mandatory preliminary relief disrupting the status quo is disfavored and should be granted only when there is a strong showing of entitlement to relief." *Anderson v. U.S.* 612 F.2d 1112 (9th Cir., 1979). Here, without citation to authority, the Plaintiff also proposes that it should be excused from posting a bond. In that relief requested by Plaintiff would essentially destroy Wayne Hunt's self operated business the overreaching of the Plaintiff's

C. J. NEARY
ATTORNEY AT LAW
110 SOUTH MAIN STREET.
SUITE C
WILLITS, CALIFORNIA 95490
(707) 459 - 5551

-9-    MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PRELIMINARY INJUNCTION

application is revealed.

Plaintiff does not seek the Court's aid in stopping any identified practice, but rather seeks to disrupt the status quo, with all of the associated dislocation naturally flowing from a sudden closure of a business and interruption of its contracts and goodwill. Plaintiff asks this Court to require Wayne Hunt to immediately close his business and to superimpose the Plaintiff as the regulatory body in the place of the Regional Board. In its zeal to strike a death blow to Wayne Hunt and his small business, Plaintiff was unable to propose any relief which would prohibit some specific action.

The status quo is that an auto recycling business has been operated on Mr. Hunt's property since the early 1980's and has been operated by Mr Hunt since 2001. The status quo is that Mr. Hunt has been complying since 2006 with the Regional Board's CAO under the direction of the Regional Board trained staff. The status quo is that UAD provides a necessary service to the public in providing a disposal facility for motor vehicles which has the salutary effect of mitigating the unregulated disposal or abandonment of motor vehicles.

**D.      The Court Should Take Account of the Public Interest.**

It is recognized that when extraordinary relief is requested the court acting as a court of equity may withhold relief in furtherance of the public interest. *United States v. First National City Bank* (1965) 379 U.S. 378, 383.

Here, the business which Plaintiff seeks to close provides a service to the public by providing a disposal and recycling facility for most of Mendocino County, a county which has a larger land area than some states. (see McCleary Decl. ¶3). The establishment of a replacement facility for recycling vehicles, with the attendant delays in obtaining permits and constructing the necessary infrastructure would intuitively consume a great amount of time. During such time, the public would be without an economical alternative to the disposal and recycling of vehicles. The result will be greater costs to the public (see

McCleary Decl. ¶¶ 4,5). Furthermore, it is a given that there will be vehicles requiring disposal, and a great possibility that the sudden disappearance of the UAD services would lead to the unregulated disposal of vehicles (over the bank of back roads) or simple abandonment.

Plaintiff for the sake of acquiring a temporary advantage over Wayne Hunt seeks this Court's aid to impose a great burden on Mr. Hunt and the public in general. The pubic interest will not be served by the requested relief and should not be granted, even had Plaintiff come close to making a required showing of entitlement to relief.

## IV. CONCLUSION

The trial is set for October. After this action has been pending for over a year Plaintiff seeks to change the status quo on a skeleton showing of entitlement. It is noteworthy that the quantum of evidence offered in support of the application is absolutely insufficient to carry Plaintiff's burden upon the merits at trial. Plaintiff has established neither the discharge of pollutants to the nation waters by Wayne Hunt and his business, nor expert opinion that there has been or is a substantial and serious endangerment of the public health.

The Court should reject the application. With the trial just several months away, the Court could simply issue any necessary relief shown by Plaintiff at trial upon a full evidentiary showing.

DATED:   June 13, 2008

_____
CHRISTOPHER J. NEARY
Attorney for Defendants
U.S. ALCHEMY CORPORATION dba UKIAH
AUTO DISMANTLERS and WAYNE HUNT

C. J. NEARY
ATTORNEY AT LAW
110 SOUTH MAIN STREET,
SUITE C
WILLITS, CALIFORNIA 95490
(707) 459-5551

-11-   MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PRELIMINARY INJUNCTION