EXHIBIT B

Case 3:07-cv-02648-SI    Document 79-2    Filed 06/23/2008    Page 1 of 10

684 F. Supp. 1042, *; 1988 U.S. Dist. LEXIS 5536, **
Governing Council of Pinoleville Indian Community, Plaintiff, v. Mendocino County, Board of Supervisors of Mendocino County, Ross Mayfield, and Brent Mayfield, Defendants

No. C-87-4320 EFL

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

March 16, 1988, Decided
March 18, 1988, Filed

*684 F. Supp. 1042, \*; 1988 U.S. Dist. LEXIS 5536, \*\**

Governing Council Of Pinoleville Indian Community, Plaintiff, v. Mendocino County, Board of Supervisors of Mendocino County, Ross Mayfield, and Brent Mayfield, Defendants

No. C-87-4320 EFL

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

684 F. Supp. 1042; 1988 U.S. Dist. LEXIS 5536

March 16, 1988, Decided
March 18, 1988, Filed

**CORE TERMS:** rancheria, plant, ordinance, moratorium, reservation, non-indian, third party, purchaser, zoning, tribal, tribe, industrial uses, preliminary injunction, direct effect, regulation, notice, hardship, Rancheria Act, acres, restoration, termination, residential, federally, exemption, bond requirement, authorization, non-members, restoring, comprehensive zoning, irreparable injury

**JUDGES:** [\*\*1] Eugene F. Lynch, United States District Judge.

**OPINIONBY:** LYNCH

**OPINION:** [\*1043] ORDER GRANTING PRELIMINARY INJUNCTION

EUGENE F. LYNCH, United States District Judge

Plaintiff, an Indian tribal council (the "Council"), brings this motion for a preliminary injunction against the authorization and operation of an asphalt plant and a cement or concrete plant (the "plants") on property owned by the Mayfield defendants and located within the boundaries of an Indian rancheria (the "Pinoleville Rancheria" or "Rancheria"). n1 The Council claims that one of its ordinances, which imposes a moratorium on new industrial uses on the Rancheria, preempts application of the County's zoning authority, under which the Mayfields were granted a permit to operate the plants.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 "Rancherias are numerous small Indian reservations or communities in California, the lands for which were purchased by the Government (with Congressional authorization) for Indian use from time to time in the early years of this century--a program triggered by an inquiry (in 1905-06) into the landless, homeless or penurious state of many California Indians." *Duncan v. United States*, 229 Ct. Cl. 120, 667 F.2d 36, 38 (1981), *cert. denied*, 463 U.S. 1228, 77 L. Ed. 2d 1410, 103 S. Ct. 3569 (1983).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

BACKGROUND

As best they can be ascertained [\*\*2] on this motion, the relevant facts are as follows. In 1911, under appropriation acts passed by Congress in 1908, the United States purchased approximately 99.53 acres of land for the benefit of the Pomo Indians in the Pinoleville area of California. Pursuant to congressional legislation, Act

of August 18, 1958, Pub. L. 85-671, 72 Stat. 619, as amended by the Act of August 11, 1964, 78 Stat. 390 [hereinafter the Rancheria Act], numerous reservation areas including the Pinoleville Rancheria lost their status as Indian lands. At Pinoleville, individual members of the Rancheria received fee simple title to nineteen parcels of property. Some Indian owners thereafter sold or otherwise transferred all or portions of their parcels to non-members of the tribe. Both Indians and non-Indians now own property within the original boundaries of the Rancheria.

In 1979, Indians from the original Rancheria joined in a class action lawsuit to restore the reservation status of numerous lands including those at Pinoleville, alleging that they had been illegally terminated under the Rancheria Act. *Hardwick v. United States*, No. C-79-1710 SW (N.D. Cal. 1979). Pursuant to settlement stipulations [*1044] with [**3] defendants Mendocino County and the United States, judgments were entered against the federal government on December 22, 1983, and March 5, 1986, and against the County on November 18, 1985, restoring the Rancheria. The effect of the judgments was that all land within the Rancheria boundaries, as they existed immediately prior to the illegal termination, were declared to be "Indian Country," as defined by 18 U.S.C. § 1151, and the United States and the County agreed to treat the Rancheria like any other federally recognized Indian reservation.

On March 23, 1985, the Pinoleville Indian Community reorganized its tribal government, and it is currently governed by plaintiff Council under a provisional constitution apparently recognized as valid by the United States Bureau of Indian Affairs (the "B.I.A."). *See* plaintiff's Complaint, Exhibit B (Letter of B.I.A. Area Director, June 19, 1987) [hereinafter the B.I.A. Letter]. On or about May 18, 1987, the Council published notice in the local press and mailed notice to all property owners on the Rancheria announcing that it would hold hearings on a proposed ordinance imposing a moratorium on new industrial uses of property on the Rancheria. [**4] The stated purpose of the moratorium was to allow the Council to evaluate the impact of industrial uses on the restoration of the Rancheria as a residential community for its members and to allow the adoption of a comprehensive zoning ordinance for the Rancheria. After holding hearings, the Council adopted an ordinance on June 2, 1987, prohibiting for one year new industrial uses commenced after May 1, 1987, unless a hardship exemption was obtained.

On March 24, 1987, a few months before the Council began considering its moratorium, the Mayfields applied to the County for permission to begin operation of the new plants on the Rancheria. On April 23, 1987, the County approved operation of the plants with some conditions, and appeals were taken by both the Mayfields and the Council. On June 22, 1987, after enactment of the Council's ordinance and despite being informed of it, the County heard the appeals and approved operation of the plants. The Council subsequently filed the instant suit on August 20, 1987.

DISCUSSION

A. *The Power of Indians to Regulate Activities of Non-Indians on Reservation Land.*

To determine whether the Council has the power to regulate the land on the [**5] Rancheria held in fee by non-members of the tribe, the Court looks to the standard set forth in *Montana v. United States*, 450 U.S. 544, 67 L. Ed. 2d 493, 101 S. Ct. 1245 (1981). *See, e.g., Confederated Tribes and Bands of the Yakima Indian Nation v. Whiteside*, 828 F.2d 529, 533-34 & n.1 (9th Cir. 1987). Under the "tribal interest" test, the Council "retains inherent regulatory authority over the conduct of non-Indians on fee land when the conduct 'threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.'" *Id.* at 534 (quoting *Montana*, 450 U.S. at 566). Applying this test in *Yakima*, the Ninth Circuit found that:

> Zoning, in particular, traditionally has been considered an appropriate exercise of the police power of a local government, precisely because it is designed to promote the health and welfare of its citizens. By enacting zoning ordinances, a tribe attempts to protect against the damage caused by uncontrolled development, which can affect all of the residents and land of the reservation. Tribal zoning is particularly important because of the unique relationship of Indians to their lands.
>
> . . . Although the fee land owned [**6] by non-Indians is clustered primarily in one part of the reservation, the reservation still exhibits essentially a checkerboard pattern. If we were to deny Yakima Nation the right to regulate fee land owned by non-Indians, we would destroy their capacity to engage in comprehensive planning, so fundamental to a zoning scheme. This we are unwilling to do.

*Yakima*, 828 F.2d at 534-35 (citations and footnote omitted).

[*1045] The Council argues that under *Montana* and *Yakima* it clearly had authority to pass its moratorium on new industrial uses on the Rancheria, because such uses have a direct effect on the health and welfare of the tribe. Among the interests listed in the Council's ordinance are the need to regulate land use to protect "the peace, health, safety and general welfare of the Pinoleville Indian Community" through a "comprehensive zoning ordinance and development plan" that will ensure development that is "compatible with the predominantly residential and agricultural use of land." Plaintiff's Complaint, Exhibit H at 3-4. The ordinance also specifies the need to protect Ackerman Creek as a spawning ground for salmon and steelhead trout and as a habitat for other wildlife, [**7] as well as a water source.

In particular, the Council argues that the Mayfields' plants would have a direct effect on the health and welfare of the Pinoleville Indian community. In support of this contention the Council offers the declaration and report of an environmental expert, Wilson B. Goddard, Ph.D. He states that the plants would, inter alia, increase gravel extraction from Ackerman Creek and thus siltation and turbidity in the creek and the Russian River; produce particulate and gaseous emissions in violation of California Ambient Air Quality standards; result in storage and use of large quantities of oil and diesel fuel; produce strong and offensive odors from petroleum and combustion products detectable throughout the Rancheria; vastly increase heavy-truck traffic; and produce noise levels greatly in excess of federal and County standards for residential suburban areas.

Defendants offer no convincing response. The Court therefore finds that the Council has passed the tribal interest test, because the plants would be likely to have "some direct effect on . . . the health or welfare of the tribe." *Yakima*, 828 F.2d at 534. n2 Accordingly, the Council appears to have the [**8] authority to zone non-Indian fee land within the boundaries of the Rancheria.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n2 While *Yakima* might seem to be easily distinguishable because the reservation there was 1.3 million acres in size, 828 F.2d at 530, as opposed to about 100 acres here, the Court finds that in this case this factor heightens rather than undercuts the interests of the Council in careful management of its much more limited resources. The Court also notes that the Ninth Circuit has recently looked with favor on tribal

regulation of an apparently small area even where it conflicted with comprehensive ordinances of two municipalities. *Segundo v. City of Rancho Mirage*, 813 F.2d 1387 (9th Cir. 1987); *see also Santa Rosa Band of Indians v. Kings County*, 532 F.2d 655 (9th Cir. 1975), *cert. denied*, 429 U.S. 1038, 50 L. Ed. 2d 748, 97 S. Ct. 731 (1977).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

The Court must next consider whether the interests of the Council outweigh those of the County with respect to the moratorium ordinance. *See Yakima*, 828 F.2d at 532, 535-36. As discussed above, the Council asserts numerous, substantial interests in controlling industrial development, and provides detailed evidence that the plants threaten those interests. The County defendants [**9] assert a general interest in overseeing and regulating activities on non-Indian fee lands, arguing that those activities have a direct effect on the functions and services of the County. The defendants do not, however, point to any vital or specific interest that is harmed by the Council's moratorium on new industrial uses, as they might be able to if the Council were to adopt zoning less protective of the environment than the County's. Accordingly, the Court finds that the balance of interests tips in favor of the Council and its moratorium. Unless there is some other limitation on the Council's power, it thus appears that the moratorium should be effective.

B. *The Effect of the Hardwick Judgments on the Council's Power to Regulate.*

Defendants' other principal defense to this motion is that the terms of the stipulated judgments in *Hardwick* preclude application of the Council's moratorium to the Mayfields, because they are third party [*1046] purchasers for value. n3 This argument hinges on the meaning of the following paragraph contained in the stipulated judgment between the County and the Indian plaintiffs in *Hardwick*:

> B. 3) As a consequence this Court has authority as a [**10] court of equity to remedy the effects of the premature and unlawful termination of the Pinoleville and Redwood Valley Rancherias and the Plaintiffs to the extent that it can do so without adversely affecting the interests of third party purchasers for value of Rancheria Parcels.

Stipulation for Entry of Judgment, filed May 30, 1985, at 4 (emphasis omitted). Although paragraph B.3 at first blush might reasonably seem implicitly to have limited the court's jurisdiction and prevented the judgment from adversely affecting the interests of third party purchasers for value in any way, the paragraph must of course be read in combination with the provisions that immediately follow it:

> C. The original boundaries of the Pinoleville and Redwood Valley Rancherias, as they existed immediately prior to their purported termination under the Rancheria Act are hereby restored, and all land within these restored boundaries of the Pinoleville and Redwood Valley Rancherias are declared to be "Indian Country".
>
> D. The Pinoleville and Redwood Valley Rancherias shall be treated by the County of Mendocino as any other federally recognized Indian Reservation, and all of the laws of the United States [**11] that pertain to federally recognized Indian Tribes and Indians shall apply to the Pinoleville and Redwood Valley Rancherias and the Plaintiffs.

*Id.* at 4-5 (emphasis omitted).

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n3 The Court is of course well aware that the rights of third party purchasers should be considered and that other courts have attempted to protect them. *E.g., Duncan v. Andrus*, 517 F. Supp. 1, 6 (N.D. Cal. 1977), *connected case, Duncan v. United States*, 229 Ct. Cl. 120, 667 F.2d 36, 40 & n.4, 41 n.6 (1981), *cert. denied*, 463 U.S. 1228, 77 L. Ed. 2d 1410, 103 S. Ct. 3569 (1983). However, the Court has discovered no authority determining whether those rights include the right to be forever free from tribal regulation.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

Viewed in the context of the clear and fundamental intent of the judgment to restore *all* land within the original Rancheria as Indian Country and Mendocino County's express undertaking to treat the *entire* Rancheria as a reservation, paragraph B.3 appears to be somewhat ambiguous. Since the Court must presume that the provisions were intended to be consistent, paragraphs C and D cannot be read as violative of clause B.3. Accordingly, paragraph B.3 should apparently be understood as protecting interests other than [**12] those affected by restoring third party lands to Rancheria status.

While the issue is not free from doubt and further development of the facts in this case may lead to a different conclusion, the Court is inclined to view paragraph B.3 as referring to ownership rights to the land, and as merely having the effect of confirming that the restoration of the Rancheria would not disturb titles to Rancheria land held in fee by third party purchasers. The Court thus does not view paragraph B.3 as somehow excluding third party land from the regulatory reach of the Council.

The Court also understands defendants to argue that implicit in paragraph B.3 is the concept that a third party purchaser for value without notice of the possibility that the land would be subject to Indian regulation could never be subject to such regulation. While this argument seems sensible on its face, the Court must reject it for the reasons discussed above. Moreover, even if the Court accepted this argument, the Mayfields have not demonstrated that they qualify as purchasers without notice. n4 [*1047] Further, although the parties have not based their arguments on property law per se, the Court observes that property owners [**13] are generally not immune to changes in zoning or the governmental framework under which their land is regulated. *E.g., Avco Community Developers, Inc. v. South Coast Regional Comm.*, 17 Cal. 3d 785, 132 Cal. Rptr. 386, 553 P.2d 546 (1976).

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n4 The Mayfields apparently purchased the 6.4 acres upon which the plants are to be located in October 1986, roughly one year after notice of the proposed restoration of the Rancheria had been published in the local press and posted on the Rancheria itself and after judgment had in fact been entered against the County. Although the Mayfields purchased pursuant to an option they assert they acquired orally from a non-Indian as early as April 1983, it is thus far from clear that they did not have constructive if not actual notice, especially given that the status of the land had been the subject of dispute since at least 1979 when the *Hardwick* suit was brought in federal court.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Finally, the Court notes that the B.I.A. has apparently also reached the conclusion that the Council's ordinance is applicable to the Mayfields' plants:

> It is our opinion that the Pinoleville Indian Community has the authority to enact an ordinance which restricts land use by *anyone* within [**14] their exterior boundaries when such use has been deemed detrimental to the health or welfare of the Pinoleville Indian Community.

B.I.A. Letter at 1 (emphasis in original).

C. *Preliminary Injunction and Bond*.

To obtain a preliminary injunction, the moving party must ordinarily demonstrate either probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships is tipped sharply in the movant's favor. *E.g., Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987). Here, as discussed above, the Council has demonstrated probable success on the merits. Because the operation of the plants threatens injury to the land, water, and air, as well as the health and welfare of the Indians of the Rancheria, the Council has also demonstrated the possibility of irreparable injury. Accordingly, the Court finds that preliminary injunctive relief should be granted. n5

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n5 Because the Court finds that preliminary injunctive relief is appropriate under this standard, it is not necessary to consider plaintiff's argument that a lower standard should apply because the Council is seeking to enjoin a statutory violation.

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - [**15]

Defendants insist that the Council be required to post a bond before an injunction issues, citing Federal Rule of Civil Procedure 65(c), which provides in relevant part that:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Notwithstanding this literal language, courts have discretion to excuse the bond requirement under appropriate circumstances, such as where requiring security would deny access to judicial review, *e.g., People of California v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325-26 (9th Cir. 1985), or where suit is brought on behalf of a group of mostly indigent persons, *e.g., Walker v. Pierce*, 665 F. Supp. 831, 843-44 (N.D. Cal. 1987); *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 385 n.42 (C.D. Cal. 1982).

At the Court's request, the Council has provided additional documentation sufficient to satisfy the Court that neither the Council nor the Indians it represents have the financial capacity to post [**16] any significant bond. While the Court is sensitive to the costs and damages that may be caused by a wrongful injunction here, given the



*Id.* at 4-5 (emphasis omitted).

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n3 The Court is of course well aware that the rights of third party purchasers should be considered and that other courts have attempted to protect them. *E.g., Duncan v. Andrus*, 517 F. Supp. 1, 6 (N.D. Cal. 1977), *connected case, Duncan v. United States*, 229 Ct. Cl. 120, 667 F.2d 36, 40 & n.4, 41 n.6 (1981), *cert. denied*, 463 U.S. 1228, 77 L. Ed. 2d 1410, 103 S. Ct. 3569 (1983). However, the Court has discovered no authority determining whether those rights include the right to be forever free from tribal regulation.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Viewed in the context of the clear and fundamental intent of the judgment to restore *all* land within the original Rancheria as Indian Country and Mendocino County's express undertaking to treat the *entire* Rancheria as a reservation, paragraph B.3 appears to be somewhat ambiguous. Since the Court must presume that the provisions were intended to be consistent, paragraphs C and D cannot be read as violative of clause B.3. Accordingly, paragraph B.3 should apparently be understood as protecting interests other than [**12] those affected by restoring third party lands to Rancheria status.

While the issue is not free from doubt and further development of the facts in this case may lead to a different conclusion, the Court is inclined to view paragraph B.3 as referring to ownership rights to the land, and as merely having the effect of confirming that the restoration of the Rancheria would not disturb titles to Rancheria land held in fee by third party purchasers. The Court thus does not view paragraph B.3 as somehow excluding third party land from the regulatory reach of the Council.

The Court also understands defendants to argue that implicit in paragraph B.3 is the concept that a third party purchaser for value without notice of the possibility that the land would be subject to Indian regulation could never be subject to such regulation. While this argument seems sensible on its face, the Court must reject it for the reasons discussed above. Moreover, even if the Court accepted this argument, the Mayfields have not demonstrated that they qualify as purchasers without notice. n4
 [*1047] Further, although the parties have not based their arguments on property law per se, the Court observes that property owners [**13] are generally not immune to changes in zoning or the governmental framework under which their land is regulated. *E.g., Avco Community Developers, Inc. v. South Coast Regional Comm.*, 17 Cal. 3d 785, 132 Cal. Rptr. 386, 553 P.2d 546 (1976).

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n4 The Mayfields apparently purchased the 6.4 acres upon which the plants are to be located in October 1986, roughly one year after notice of the proposed restoration of the Rancheria had been published in the local press and posted on the Rancheria itself and after judgment had in fact been entered against the County. Although the Mayfields purchased pursuant to an option they assert they acquired orally from a non-Indian as early as April 1983, it is thus far from clear that they did not have constructive if not actual notice, especially given that the status of the land had been the subject of dispute since at least 1979 when the *Hardwick* suit was brought in federal court.

circumstances of this case the Court in its discretion hereby waives the bond requirement.

CONCLUSION

For the reasons stated above the Court hereby enjoins the Mayfield defendants from allowing operation of the plants. This preliminary injunction shall remain in effect until further order of the Court, until the Mayfields obtain a hardship exemption from the Council, or until the Council's moratorium expires on April 30, 1988, whichever occurs first. The Council is ordered to act promptly on the Mayfields' application for a hardship exemption.

[*1048] A status conference is hereby set for May 17, 1988, at 4:30 pm. By May 10, 1988, the parties shall file a statement regarding what issues they contend remain for determination by the Court and what further proceedings they contend are required.

IT IS SO ORDERED.

DATED: March 16, 1988.

> Service: LEXSEE®
> Citation: 684 f. supp. 1042
> View: FULL
> Date/Time: Friday, August 20, 1999 - 2:10 PM EDT

About LEXIS-NEXIS | Terms and Conditions



Copyright © 1999 LEXIS-NEXIS, a division of Reed Elsevier Inc. All rights reserved.