Michael S. Biggs, Esq.
Cal. Bar. No. 237640
Biggs Law P.C.
POST OFFICE BOX 454
PETALUMA, CA. 94953-0454
(707) 763-8000 Telephone
(707) 763-8010 Facsimile

Attorney for Plaintiffs,
PINOLEVILLE POMO NATION et al

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINOLEVILLE POMO NATION, PINOLEVILLE POMO NATION ENVIRONMENTAL ASSOCIATION LEONA WILLIAMS<br><br>Plaintiffs,<br><br>v.<br><br>UKIAH AUTO DISMANTLERS, et al.<br><br>Defendants.      / | Case No. C 07-2648 SI<br><br>POINTS & AUTHORITIES RE OBJECTION TO GEORGE PROVENCHER'S DECLARATIONS<br><br>Date:  June 25, 2008<br>Time:  1:30 p.m.<br>Dept.  C, 15th Floor<br><br>Hon. Susan Illston |

<u>ALL RELATED CROSS ACTIONS</u>

Plaintiffs' submit the following Points & Authorities addressing the objections to declarations by GEORGE PROVENCHER:

## I

## INTRODUCTION

Rick Mayfield's attorney, Hans Herb, has taken two positions that are contradictory. First, Mr. Herb is trying to qualify himself as an expert without detailing his credentials while challenging the expertise of a person whose credentials are impressive. Also, Mr. Herb's declaration is wanting as to having firsthand knowledge of the entire relevant circumstances that would put him in a position to render any meaningful opinion. In response to Plaintiffs'

challenge, Mr. Herb is quick to point out that the Federal Rules of Evidence do not apply to preliminary injunction hearings; therefore, his declaration should be considered as evidence for the truth of the matters that his asserts. But when it comes to George Provencher, Mr. Herb's response is "[b]ut at some point there are limits." This is a classic case of a party "wanting his cake and eating it too."

Now Mr. Herb has joined in with Mr. Neary's objection arguing that George Provencher is not a competent expert witness and he allegedly lacks firsthand knowledge of the pertinent facts. In response to their challenges, Plaintiffs have submitted a supplemental declaration by Mr. Provencher that shows that he is eminently qualified and his position as Tribal Director makes him the best possible witness to the defendants' activities on the reservation and render an expert opinion therefrom.

I

## GEORGE PROVENCHER PASSES THE TEST
## REQUIRED TO BE AN EXPERT WITNESS

Plaintiffs agree with Rick Mayfield's assertion the Federal Rules of Evidence do not apply to preliminary hearings but at some point there are limits. The plaintiffs contend that Mr. Herb's declaration has exceeded those limits but Mr. Provencher outstanding qualifications on the relevant subject matter to render expert, accurate, and scientifically based opinions and his work station and home on the reservation with regular contacts with tribal officials and members make him the best possible witness this court can have in assessing the situation occurring on PPN.

As cited in previous briefs, Rule 702 governs the admissibility of expert and scientific opinion testimony. For convenience to the court, it is quoted again below:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The relevant cases on the matter are *Daubert v. Merrell Dow Pharmaceuticals, Inc* (1993) 509 U.S. 579, 113 S.Ct. 2786, and *Kumho Tire Co., Ltd. v. Carmichael* (1999) 526 U.S. 137, 119 S.Ct. 1167.

As the Supreme Court in *Kumho Tire* succinctly states:

> "In *Daubert,* this Court held that Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to "ensure that any and all scientific testimony ... is not only relevant, but reliable." 509 U.S., at 589, 113 S.Ct. 2786. The initial question before us is whether this basic gatekeeping obligation applies only to "scientific" testimony or to all expert testimony. We, like the parties, believe that it applies to all expert testimony."

But the high court goes on further to note:

> "This language makes no relevant distinction between "scientific" knowledge and "technical" or "other specialized" knowledge. It makes clear that any such knowledge might become the subject of expert testimony. In *Daubert,* the Court specified that it is the Rule's word "knowledge," not the words (like "scientific") that modify that word, that "establishes a standard of evidentiary reliability." 509 U.S., at 589-590, 113 S.Ct. 2786. Hence, as a matter of language, the Rule applies its reliability standard to all "scientific," "technical," or "other specialized" matters within its scope."(*Kumho Tire, supra*)

As will be elaborated below, Mr. Provencher's qualifications, experience, education, and expertise as detailed in his supplemental declaration can stand alone. This makes Mr. Provencher as a qualified as an expert in his own right and can competently testify as these matters at a formal trial. Although it is not necessary for Mr. Provencher to go there but it bears mentioning that since this is a motion for preliminary injunction, the court can consider evidence that would not be technically inadmissible at trial:

> "We must be mindful, therefore, as the Supreme Court has cautioned, that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). A hearing for preliminary injunction is generally a restricted proceeding, often conducted under pressured time constraints, on limited evidence and expedited briefing schedules. The Federal Rules of Evidence do not apply to preliminary injunction hearings. *See, e.g., SEC v. Cherif,* 933 F.2d 403, 412 n. 8 (7th Cir.1991); *Asseo v. Pan Am. Grain Co.,* 805 F.2d 23, 25-26 (1st Cir.1986); *United States v. O'Brien,* 836 F.Supp. 438, 441 (S.D.Ohio 1993). Thus, as a prudential matter, it bears remembering the obvious: that when a

district court holds a hearing on a motion for preliminary injunction it is not conducting a trial on the merits." (*Heideman v. Salt Lake City* (10th Cir. 2003) 348 F.3d 1182, 1188)

*Flynt Dist. Co. Inc. v. Leon Harvey* (9th Cir. 1984) 734 F.2d 1389 is a case that demonstrates the absurdity of Defendants' challenge to Mr. Provencher's impeccable background for reliability. In *Flynt Dist. Co. Inc.* the publisher who is none other than the infamous Larry Flynt, the creator and publisher of Hustler Magazine, sued certain distributors for breach of their agreement. Mr. Flynt sought a preliminary injunction to prevent the other parties from secreting the assets. In support of his motion, Mr. Flynt submitted a declaration containing hearsay information from other sources. The defendants argued that Mr. Flynt's declaration contains hearsay and should be stricken. The court, however, ruled:

> "The Harveys argue that Flynt's evidence is hearsay. The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serve the purpose of preventing irreparable harm before trial. 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1973). See <u>Ross-Whitney Corp. v. Smith Kline & French Laboratories, 207 F.2d 190, 198 (9th Cir.1953)</u> (preliminary injunction may be granted on affidavits)."( 734 F.2d 1394)

If these lax evidentiary standards are applicable to acceptance of statements in a declaration by a pornographer, then certainly this court can accept the declarations of George Provencher, a proven professional, whose credentials to render relevant opinion and testimony are beyond criticism and his knowledge as to issues surrounding toxic waste and environmental and human health issues are beyond reproach.

Mr. Provencher's background includes employment for the United States Navy, Department of Defense, and Department of Energy. His duties for those agencies dealt with toxic wastes of the highest order: **Nuclear Waste Management.** It goes without saying that nuclear waste leaves no ground for mistakes made by the inexperience and that any person holding an administrative position in this area was carefully selected for competence and expertise on how to handle and the negative impacts of such deadly substances. These jobs require knowledge and

expertise as well as environmental impacts should the unfortunate happen. These are not jobs for amateurs. Mr. Provencher would not have been employed by these agencies if he had not demonstrated his knowledge of toxic substances and their environment impacts and human harm. Further, common sense dictates that a person holding such a high level of responsibility had to prove that he is a person who knows his business. And his business included managing nuclear waste and environmental remedial site investigation. Simply put, he is intimately familiar with the dangers hazardous waste and chemicals can have on the environment and human beings.

His credentials are such that he was hired as a project manager for a $30 million dollar nuclear waste treatment facility. To do this job, Mr. Provencher had to supervise the scientists and technocrats. In order to do this effectively, Mr. Provencher had to acquire knowledge of the technical aspects that would be encountered when toxic and hazardous materials conflict with the environment. He had to acquire the appropriate education such as HAZMAT Training, Nuclear Regulatory Compliance Training, and Radiological Safety and Health. The list goes on.

To fortify his impressive expertise and knowledge of hazardous chemical management and protecting the environment from negative impacts, Mr. Provencher also served numerous health care facilities in an administrative capacity. This experience required that he oversaw and worked with medical doctors and technicians. Knowledge of the subject matter is imperative to be an effective administrator in human health care services. Therefore, he is "head and shoulders" above Larry Flynt and experts tendered by the defense. His testimony by declaration should be accepted without question.

As to firsthand knowledge of the impact of the toxic waste issues on the reservation, the response needs only to be said in one sentence: He lives and works on the very same reservation and sees defendants' operation on an almost daily basis. PPN is a small tribe both in space (100 acres) and in population (approximately 280 members). He is in the best position to know the "goings on" both by what he sees and what tribal officials and members tell him. He is there during all seasons including inclement weather so he is the best person to assess the environmental harm caused to PPN by defendants' pollution causing enterprise. Further, he has demonstrated that he has the expert's eyes to see the impact and the mind to know the harmful

effects thereof. Further, he knows how defendants' wrecking yard business that include storage ponds of hazardous chemicals near a creek can harm the natural environment and conflict with the tribe's environmentally sensitive culture.

In closing, plaintiffs' agree with the statement in Richard Mayfield's objection that "at some point there are limits." But those limits do not apply to Mr. Provencher. Instead, they apply to the pseudo, self-proclaimed experts such as Hans Herb, Attorney at Law, when he tries to pass himself as an environmental expert.

For these reasons, plaintiffs' request that all of Mr. Provencher's declarations be accepted and the declaration of Mr. Herb on this subject are stricken.

Respectfully submitted.

Dated: June 22, 2008

/S/ Michael S. Biggs
Michael S. Biggs
Attorney for Plaintiffs